UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SILVERCREEK MANAGEMENT INC., *et al.*,

                          Plaintiffs,

     v.

CITIGROUP, INC., *et al.*,

                          Defendants

02-cv-08881-JPO

ORAL ARGUMENT REQUESTED

---

**THE FINANCIAL INSTITUTIONS' JOINT MEMORANDUM OF LAW IN SUPPORT
OF THEIR JOINT MOTION TO DISMISS THE SILVERCREEK PLAINTIFFS'
THIRD AMENDED COMPLAINT (ECF 10-115)**

**Table of Contents**

Table of Authorities ............................................................................................ iii

Citation Conventions ......................................................................................... viii

Causes of Action ................................................................................................. ix

Preliminary Statement ...........................................................................................1

Statement of Facts ..................................................................................................4

Legal Standard ........................................................................................................5

Argument ................................................................................................................8

I.    The Silvercreek Plaintiffs Fail Adequately To Plead Claims for Common
      Law Fraud and Deceit (Count Four) and Aiding and Abetting Fraud
      (Count One). ..................................................................................................8

      A.    The Silvercreek Plaintiffs' Claim for Fraud and Deceit Fails. ..................8

            1.    The Silvercreek Plaintiffs' Allegations Regarding Credit
                  Suisse and Merrill Lynch Brokers' Statements Do Not
                  Support a Claim for Fraud and Deceit. ...........................................9

            2.    The Silvercreek Plaintiffs' Allegations Regarding Credit
                  Suisse and Merrill Lynch Analyst Reports Do Not Support
                  a Claim for Fraud and Deceit. .......................................................12

      B.    The Silvercreek Plaintiffs' Claim for Aiding and Abetting Fraud
            and Deceit Fails. ..................................................................................18

II.   The Silvercreek Plaintiffs Fail Adequately To Plead a Claim for Common
      Law Conspiracy (Count Two). ...................................................................23

III.  The Silvercreek Plaintiffs Fail Adequately To Plead Their Section 11
      Claim (Count Six), Which Sounds in Fraud, with the Requisite
      Particularity. ...............................................................................................26

IV.   The Silvercreek Plaintiffs Fail To State a Claim for Negligent
      Misrepresentation (Count Five) and Aiding and Abetting Negligent
      Misrepresentation (Count Three). ..............................................................27

      A.    The Silvercreek Plaintiffs Fail To State a Claim for Negligent
            Misrepresentation. ..............................................................................28

      B.    The Silvercreek Plaintiffs Fail To State a Claim for Aiding and
            Abetting Negligent Misrepresentation. ...............................................31

V.      The Silvercreek Plaintiffs' Texas Securities Act Claim (Count Nine) Is
        Precluded by New York Law and, in Any Event, Fails To State a Claim............32

        A.      The Texas Securities Act Claim Is Precluded by New York Law.............32

        B.      Even if the Texas Securities Act Applied Here, the Silvercreek
                Plaintiffs Fail To State a Claim...............................................................33

VI.     This Court Should Dismiss the Third Amended Complaint with Prejudice
        and Without Leave To Amend...............................................................................34

Conclusion ...........................................................................................................................35

ii

## Table of Authorities

Page(s)

**Cases**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
  651 F. Supp. 2d 155 (S.D.N.Y. 2009).................................................................31

*ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.*,
  32 N.E.3d 921 (N.Y. 2015)...........................................................................15

*AIG Glob. Sec. Lending Corp. v. Banc of Am. Sec. LLC*,
  No. 01-CIV-11448, 2006 WL 1206333 (S.D.N.Y. May 2, 2006) .........................10

*Amusement Indus., Inc. v. Stern*,
  786 F. Supp. 2d 758 (S.D.N.Y. 2011)..............................................................29

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................6

*Atlanta Shipping Corp. v. Chem. Bank*,
  818 F.2d 240 (2d Cir. 1987)...........................................................................22

*Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*,
  57 F.3d 146 (2d Cir. 1995)............................................................................18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................6

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
  866 F. Supp. 2d 257 (S.D.N.Y. 2012)..............................................................30

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014)...........................................................................26

*Cosmas v. Hassett*,
  886 F.2d 8 (2d Cir. 1989)..............................................................................24

*Crigger v. Fahnestock & Co.*,
  443 F.3d 230 (2d Cir. 2006)............................................................................8

*Cromer Fin. Ltd. v. Berger*,
  137 F. Supp. 2d 452 (S.D.N.Y. 2001)...............................................7, 21, 22, 23

*de Kwiatkowski v. Bear, Stearns & Co., Inc.*,
  306 F.3d 1293 (2d Cir. 2002)..........................................................................30

*In re Enron Corp. Sec., Derivative & "ERISA" Litig. (ANICO v. Arthur Andersen, LLP)*,
762 F. Supp. 2d 942 (S.D. Tex. 2010) ................................................................33, 34

*In re Enron Corp. Sec., Derivative & "ERISA" Litig. (ANICO v. RBC)*,
540 F. Supp. 2d 759 (S.D. Tex. 2007) ..............................................................................5

*In re Enron Corp. Sec., Derivative & "ERISA" Litig. (CRAA)*,
511 F. Supp. 2d 742 (S.D. Tex. 2005) ..............................................................................7

*In re Enron Corp. Sec., Derivative & "ERISA" Litig. (Giancarlo v. UBS)*,
No. CV H-01-3624, 2016 WL 4095973 (S.D. Tex. Aug. 2, 2016) ............................6, 11, 12

*In re Enron Corp. Sec., Derivative & "ERISA" Litig. (Regents I)*,
235 F. Supp. 2d 549, 691-92 (S.D. Tex. 2002).................................................................3, 33

*In re Enron Corp. Sec., Derivative & "ERISA" Litig. (Regents II)*,
529 F. Supp. 2d 644 (S.D. Tex. 2006) ........................................................2, 11, 12, 14, 15

*In re Enron Corp. Sec., Derivative & "ERISA" Litig. (Silvercreek I)*,
Nos. MDL 1446, Civ. A. H-01-3624, H-02-3185, 2003 WL 23305555 (S.D. Tex. Dec. 11, 2003)............................................................................................................2, 7

*In re Enron Corp. Sec., Derivative & "ERISA" Litig. (Walker v. Arthur Andersen, LLP)*, Nos. MDL 1446, Civ. A. H-01-3624, Civ. A. H-03-2345, 2011 WL 3516292 (S.D. Tex. Aug. 11, 2011)............................................................................29

*In re Enron Corp. Sec., Derivative & "ERISA" Litig. (Westboro Props. I)*,
761 F. Supp. 2d 504 (S.D. Tex. 2011) .......................................................................... passim

*In re Enron Corp. Sec., Derivative & "ERISA" Litig. (Westboro Props. II)*,
Nos. MDL 1446, Civ. A. H-01-3624, Civ. A. H-03-1276, 2011 WL 3489599 (S.D. Tex. Aug. 9, 2011)............................................................................................19

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
375 F.3d 168 (2d Cir. 2004)................................................................................................8

*Fezzani v. Bear, Stearns & Co.*,
592 F. Supp. 2d 410 (S.D.N.Y. 2008)...............................................................................24

*First Equity Corp. v. Standard & Poor's Corp.*,
690 F. Supp. 256 (S.D.N.Y. 1988) ...................................................................................11

*Fitzgerald v. Field*,
No. 99 Civ. 3406, 1999 WL 1021568 (S.D.N.Y. Nov. 9, 1999) ...........................................25

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*,
479 F. Supp. 2d 349 (S.D.N.Y. 2007)...............................................................................21

*Gabriel Capital, L.P. v. NatWest Fin., Inc.*,
  94 F. Supp. 2d 491 (S.D.N.Y. 2000)....................................................................25

*Gen. Ret. Sys. of Detroit v. UBS, AG*,
  No. 10-CV-13920, 2011 WL 2601002 (E.D. Mich. June 30, 2011) ......................30

*Glob. Mins. & Metals Corp. v. Holme*,
  35 A.D.3d 93 (1st Dep't 2006) ............................................................................16

*Halebian v. Berv*,
  869 F. Supp. 2d 420 (S.D.N.Y. 2012)...................................................................35

*Herman & MacLean v. Huddleston*,
  459 U.S. 375 (1983)..............................................................................................27

*HSH Nordbank AG v UBS AG*,
  95 A.D.3d 185 (1st Dep't 2012) ...........................................................................16

*Hydro Investors, Inc. v. Trafalgar Power Inc.*,
  227 F.3d 8 (2d Cir. 2000)......................................................................................28

*Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*,
  157 F.3d 933 (2d Cir. 1998)..................................................................................30

*Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*,
  223 F. Supp. 2d 474 (S.D.N.Y. 2002)...................................................................24

*Intesa Sanpaolo, S.p.A. v. Credit Agricole Corp. & Inv. Bank*,
  No. 12 CIV. 2683 RWS, 2013 WL 4856199 (S.D.N.Y. Sept. 10, 2013) .........11, 35

*JP Morgan Chase Bank v. Winnick*,
  406 F. Supp. 2d 247 (S.D.N.Y. 2005)...................................................................24

*Kimmell v. Schaefer*,
  675 N.E.2d 450 (1996)..........................................................................................29

*King Cty., Wash. v. IKB Deutsche Industriebank AG*,
  863 F. Supp. 2d 288 (S.D.N.Y. 2012), *revised*, 2012 WL 11896326 (S.D.N.Y.
  Sept. 28, 2012) ......................................................................................................31

*Krys v. Pigott*,
  749 F.3d 117 (2d Cir. 2014)............................................................................20, 35

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
  108 F.3d 1531 (2d Cir. 1997)................................................................................17

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006)........................................................................6, 20, 22

*In re Merrill Lynch Auction Rate Sec. Litig.*,
    No. 09 MD 2030, 2011 WL 1330847 (S.D.N.Y. Mar. 30, 2011)...........................30

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993).............................................................................9

*In re Morgan Stanley Info. Fund Sec. Litig.*,
    592 F.3d 347 (2d Cir. 2010)......................................................................5, 26

*In re Nat. Gas Commodity Litig.*,
    337 F. Supp. 2d 498 (S.D.N.Y. 2004)..............................................................7

*In re Parmalat Sec. Litig.*,
    383 F. Supp. 2d 587 (S.D.N.Y. 2005)..............................................................7

*Patrick Carter Assocs., Inc. v. Rent Stabilization Ass'n of N.Y.C., Inc.*,
    No. 89 Civ. 7716, 1990 WL 195993 (S.D.N.Y. Nov. 28, 1990) ...........................16

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
    446 F. Supp. 2d 163 (S.D.N.Y. 2006)............................................................22

*Pinnacle Oil v. Triumph Okla. Ltd. P'ship*,
    No. 93 Civ. 3434, 1997 WL 362224 (S.D.N.Y. June 27, 1997)...........................32

*Pittman v. Grayson*,
    149 F.3d 111 (2d Cir. 1998)..........................................................................25

*Regents of Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.*,
    482 F.3d 372 (5th Cir. 2007) ........................................................................29

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)..............................................................6,9, 14, 26

*Ross v. Bolton*,
    904 F.2d 819 (2d Cir. 1994)..........................................................................20

*San Diego Cnty. Emps.' Ret. Ass'n v. Maounis*,
    749 F. Supp. 2d 104 (S.D.N.Y. 2010)..............................................................7

*Sedona Corp. v. Ladenburg Thalmann & Co.*,
    No. 03 Civ. 3120, 2005 WL 1902780 (S.D.N.Y. Aug. 9, 2005) ...........................24

*Sharp Int'l Corp. v. State Street Bank & Trust Co.*,
    281 B.R. 506 (Bankr. E.D.N.Y. 2002)........................................................20, 23

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994)......................................................................6, 15

*Snyder v. Puente De Brooklyn Realty Corp.*,
   297 A.D.2d 432, 746 N.Y.S.2d 517 (3d Dep't 2002) ............................................25

*SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos.*,
   No. 14-507-cv, 2016 WL 3769735 (2d Cir. July 14, 2016)...............................15, 16

*In re Stac Elecs. Sec. Litig.*,
   89 F.3d 1399 (9th Cir. 1996) ...............................................................................26

*Stumpf v. Garvey (In re TyCom Ltd. Sec. Litig.)*,
   Case Nos. 02-MDL-1335-PB, 03-CV-1352-PB, 2005 WL 2127674 (D.N.H.
   Sept. 2, 2005) ...................................................................................................15

*Terra Sec. ASA Konkursbo v. Citigroup, Inc.*,
   740 F. Supp. 2d 441 (S.D.N.Y. 2010).................................................................17

*Weinstock v. Handler*,
   244 A.D.2d 273, 664 N.Y.S.2d 298 (1st Dep't 1997) ...........................................30

*Wight v. BankAmerica Corp.*,
   219 F.3d 79 (2d Cir. 2000) .................................................................................18

*Zanani v. Savad*,
   217 A.D.2d 696 (2d Dep't 1995) ........................................................................14

## Statutes & Rules

Fed. R. Civ. P. 9(b) .....................................................................................passim

Fed. R. Civ. P. 12(b)(6)..........................................................................2, 6, 20

N.Y. Gen. Bus. Law § 352-c.............................................................................32

Securities Act, 15 U.S.C. § 77k .....................................................................3, 27

Texas Securities Act, Article 581-33F(2) .........................................................33

## Citation Conventions

**Entities**

"Financial Institutions":  Defendants Merrill Lynch & Co., Inc., Deutsche Bank Alex. Brown Inc. (n/k/a/ Deutsche Bank Securities Inc.), Deutsche Bank AG, Credit Suisse First Boston (USA), Inc. (n/k/a Credit Suisse (USA), Inc.), Credit Suisse First Boston LLC (n/k/a Credit Suisse Securities (USA) LLC) and Pershing LLC (f/k/a Donaldson, Lufkin & Jenrette Securities Corporation)

"Credit Suisse":  Credit Suisse First Boston (USA), Inc. (n/k/a Credit Suisse (USA), Inc.), Credit Suisse First Boston LLC (n/k/a Credit Suisse Securities (USA) LLC) and Pershing LLC (f/k/a Donaldson, Lufkin & Jenrette Securities Corporation)

"Deutsche Bank":  Deutsche Bank Alex. Brown Inc. (n/k/a/ Deutsche Bank Securities Inc.) and Deutsche Bank AG

"Merrill Lynch":  Merrill Lynch & Co., Inc.

"Silvercreek Plaintiffs":  Silvercreek Management, Inc., Silvercreek Limited Partnership, Silvercreek II Limited, OIP Limited and the Pebble Limited Partnership

**Pleadings and Court Submissions**

"Second Amended Complaint":  Second Amended Complaint, dated August 18, 2006 (ECF 53)

"TAC":  Third Amended Complaint, dated August 11, 2011 (ECF 10-115)

"Pls.' Mot. to Amend":  Plaintiffs' Motion To Lift Stay, for Leave To File Third Amended Complaint, and for Status Hearing, dated June 25, 2010 (ECF 10-103)

"Credit Suisse Opp'n to Mot. to Amend":  The Credit Suisse Defendants' Separate Response to Plaintiffs' Motion To Lift Stay, for Leave To File Third Amended Complaint, and for Status Hearing, dated July 16, 2010 (ECF 10-104)

"Korn Decl.":  Declaration of David H. Korn in Support of the Financial Institutions' Joint Motion to Dismiss the Silvercreek Plaintiffs' Third Amended Complaint

**Causes of Action**

| Count No. | Count Description | Defendants |
|---|---|---|
| 1 | Aiding and Abetting Fraud | All Financial Institutions |
| 2 | Conspiracy To Commit Fraud | All Financial Institutions |
| 3 | Aiding and Abetting Negligent Misrepresentation | All Financial Institutions |
| 4 | Fraud and Deceit | Officer Defendants, Merrill Lynch and Credit Suisse |
| 5 | Negligent Misrepresentation | Officer Defendants, Merrill Lynch and Credit Suisse |
| 6 | Violations of Section 11 of the Securities Act | Deutsche Bank and Credit Suisse |
| 7 | Violations of Section 11 of the Securities Act | Officer Defendants |
| 8 | Violations of Section 12(a)(2) of the Securities Act | Credit Suisse |
| 9 | Violations of Article 581-1 *et seq.* of the Texas Securities Act | Officer Defendants, Deutsche Bank and Credit Suisse |
| 10 | Violations of Section 10(b) of the Securities Exchange Act and Rule 10(b)(5) | Officer Defendants |

The Financial Institutions respectfully submit this joint memorandum in support of their motion to dismiss all claims asserted in the Silvercreek Plaintiffs' Third Amended Complaint, filed on August 11, 2011, against any of the Financial Institutions.[1]

### Preliminary Statement

The Silvercreek Plaintiffs are large, sophisticated "vulture" funds. Their business is to seek out and acquire distressed debt of financially troubled issuers with the goal of obtaining high returns by purchasing risky debt at deep discounts. The Silvercreek Plaintiffs' purchase of the Enron notes at issue here was consistent with that business model. These sophisticated parties purchased Enron notes in late October 2001, *after* Enron announced a $1 billion charge to its third-quarter 2001 earnings (TAC ¶¶ 88, 159) and *after* the SEC announced an inquiry into Enron's accounting for related-party transactions (TAC ¶¶ 100, 159). The Silvercreek Plaintiffs' trading strategy is not without its risks, which the Silvercreek Plaintiffs knowingly took on when they acquired the notes at issue. But when Enron went into bankruptcy shortly thereafter, on December 2, 2001, and risks turned into losses, the Silvercreek Plaintiffs manufactured claims against a long list of defendants in an attempt to recover "damages" and statutory prejudgment interest as an insurance policy on their failed strategy. The law does not sanction such opportunistic behavior.

This case has been pending since 2002, and has been part of the coordinated proceedings overseen by the Enron MDL Court in the Southern District of Texas for the past 13

---

[1] This motion is filed on behalf of all remaining Financial Institution defendants: Credit Suisse, Deutsche Bank and Merrill Lynch. Certain Financial Institutions also are filing individual companion memoranda of law to address issues unique to those Financial Institutions. Certain terms used in this memorandum of law are defined in the "Citation Conventions" on Page viii. A chart of which claims are asserted against which defendants appears on Page ix for the Court's convenience; Counts Seven and Ten are not asserted against any of the Financial Institutions.

years.  As a result, the case has already been through fact and expert discovery.  The Silvercreek Plaintiffs have filed four versions of their complaint.  The operative Third Amended Complaint was filed in 2011, after the completion of fact and expert discovery; the Silvercreek Plaintiffs had ample opportunity to try to discover facts to support their claims.  If the Silvercreek Plaintiffs had facts sufficient to state a claim, they could have—and should have—included them in the Third Amended Complaint.  The Silvercreek Plaintiffs' failure adequately to plead their claims demonstrates that those claims are not legally viable.  For example, even now, the "who," "what," "when" and "where" still are missing for the knowledge and scienter requirements of their claims.  This is not a case where a complaint passes Rule 12(b)(6) muster because the plaintiff is given the benefit of the doubt that discovery will support its claims.  We are well past that here.

Moreover, the Third Amended Complaint fails to take into account the numerous decisions by the Enron MDL Court, and other developments in the law, which highlight the legal deficiencies of the Silvercreek Plaintiffs' allegations.

*First*, the Silvercreek Plaintiffs' fraud and deceit claim (Count Four) and aiding and abetting fraud claim (Count One) fail because they still do not satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires the Silvercreek Plaintiffs to plead with specificity any underlying fraud by Enron and knowledge or substantial assistance in the commission of any such fraud on the part of the Financial Institutions.  *In re Enron Corp. Sec., Derivative & "ERISA" Litig. (Westboro Props. I)*, 761 F. Supp. 2d 504, 575-76 (S.D. Tex. 2011); *In re Enron Corp. Sec., Derivative & "ERISA" Litig. (Regents II)*, 529 F. Supp. 2d 644, 775 (S.D. Tex. 2006); *In re Enron Corp. Sec., Derivative & "ERISA" Litig. (Silvercreek I)*, Nos. MDL 1446, Civ. A. H-01-3624, H-02-3185, 2003 WL 23305555, at *11

(S.D. Tex. Dec. 11, 2003); *In re Enron Corp. Sec., Derivative & "ERISA" Litig. (Regents I)*, 235 F. Supp. 2d 549, 692 (S.D. Tex. 2002).  (*See infra* Part I.)

  *Second*, the Silvercreek Plaintiffs' conspiracy to commit fraud claim (Count Two) fails because the Third Amended Complaint does not adequately allege an underlying fraud and because the Silvercreek Plaintiffs do not satisfy the heightened pleading requirements of Rule 9(b) to plead the requisite agreement between the Financial Institutions and Enron to commit a fraud.  (*See infra* Part II.)

  *Third*, the Silvercreek Plaintiffs' claim under Section 11 of the Securities Act of 1933 (Count Six), *see* 15 U.S.C. § 77k, fails to meet Rule 9(b)'s heightened pleading standards, which apply because the factual allegations sound in fraud.  (*See infra* Part III.)

  *Fourth*, the Silvercreek Plaintiffs' claims for negligent misrepresentation (Count Five) and aiding and abetting negligent misrepresentation (Count Three) fail because the Plaintiffs have not pleaded the existence of any special relationship with the Financial Institutions giving rise to a duty, and have failed to plead elements of negligent misrepresentation that also are elements of common law fraud, including the existence of a misrepresentation and reasonable reliance.  The Silvercreek Plaintiffs' aiding and abetting negligent misrepresentation claim also fails because New York law does not recognize any such claim.  (*See infra* Part IV.)

  *Fifth*, the Silvercreek Plaintiffs' claim under the Texas Securities Act (Count Nine) is preempted and barred by New York's Martin Act.  The Enron MDL Court previously dismissed Texas Securities Act claims like the one asserted here because New York law—not Texas law—governs.  *Westboro Props. I*, 761 F. Supp. 2d at 575-76.  Even if it were not barred, the Silvercreek Plaintiffs fail to state a Texas Securities Act claim.  (*See infra* Part V.)

3

Count Eight (violation of Section 12(a)(2) of the Securities Act) is alleged only against Credit Suisse and fails for the reasons addressed in the separate Credit Suisse memorandum of law.

The Silvercreek Plaintiffs have had more than ample opportunity to plead these claims with the benefit of discovery and years of guidance from the Enron MDL Court and others regarding the legal requirements to state a claim; their failure to do so on their fourth bite at the apple should be final.  Accordingly, the Financial Institutions respectfully urge this Court to dismiss all claims against them in the Third Amended Complaint with prejudice.  (*See infra* Part VI.)

**Statement of Facts**

In late October 2001, Silvercreek Limited Partnership, Silvercreek II Limited, OIP Limited and Pebble Limited Partnership purchased "over $100 million" of Enron debt securities—7% Exchangeable Notes (the "7% Notes") and Zero Coupon Exchangeable Notes (the "Zero Notes").  (TAC ¶ 1.)  Silvercreek Management, Inc. is the investment manager for the other Silvercreek entities (TAC ¶ 13), and does not allege that it made any purchases of the 7% Notes or the Zero Notes.

The 7% Notes and the Zero Notes were purchased *after* Enron announced a $1 billion charge to its third-quarter earnings (TAC ¶ 88) and *after* the revelation of the SEC's inquiry into Enron's accounting (TAC ¶ 100).  In early November 2001, Enron announced a restatement of its financial statements from 1997-2001, making a $1.2 billion reduction to shareholder's equity and consolidating previously off-balance-sheet entities with which Enron had engaged in related-party transactions.  (TAC ¶¶ 2, 117.)  The restatement swiftly was followed by a failed merger attempt, and, ultimately, Enron's filing for Chapter 11 bankruptcy on December 2, 2001.  (TAC ¶¶ 124-130.)

4

The registration statements for the 7% and Zero Notes, which were issued in 1999 and 2001, respectively, incorporated certain of the subsequently restated financial statements. (TAC ¶¶ 119, 135, 136, 150, 154.)  The Silvercreek Plaintiffs allege that the registration statements failed to disclose the extensive related-party transactions and off-balance-sheet debt that was discovered in the wake of Enron's restatement.[2]  (TAC ¶¶ 138, 155.)

The Silvercreek Plaintiffs allege violations of the federal securities law and the Texas Securities Act, and assert common law claims for fraud, aiding and abetting fraud, negligent misrepresentation, aiding and abetting negligent misrepresentation, and conspiracy to commit fraud on the part of some or all of the Financial Institutions.  (Count One (TAC ¶¶ 802-813), Count Two (TAC ¶¶ 814-829), Count Three (TAC ¶¶ 830-842), Count Four (TAC ¶¶ 843, 852-860), Count Five (TAC ¶¶ 861, 870-878), Count Six (TAC ¶¶ 879-891), Count Eight (TAC ¶¶ 901-912), Count Nine (TAC ¶¶ 913-924).)  These claims are based on general allegations that, as a result of their transactional and investment banking work for Enron over the years, the Financial Institutions somehow knowingly deceived the Silvercreek Plaintiffs as to Enron's true financial condition in late October 2001, but are each inadequately pled, as shown below.

## Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint must be dismissed where it fails to state a claim upon which relief can be granted.  As the Supreme Court

---

[2] The Financial Institutions submit the Declaration of David H. Korn ("Korn Decl.") in support of their Joint Motion to Dismiss the Silvercreek Plaintiffs' Third Amended Complaint, which attaches the Registration Statement for the Zero Coupon Notes filed with the SEC in July 2001 (Korn Decl. Ex. 1).  "Because the documents are matters of public record and not subject to reasonable dispute, judicial notice is proper."  *In re Enron Corp. Sec., Derivative & "ERISA" Litig.* (*ANICO v. RBC*), 540 F. Supp. 2d 759, 786 n.32 (S.D. Tex. 2007) (taking judicial notice of SEC-filed registration statements); *see also, e.g.*, *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 355 n.5 (2d Cir. 2010) (taking judicial notice of SEC filings as "a matter of public record").

has clarified, "only a complaint that states a plausible claim for relief survives a motion to

dismiss" under Rule 12(b)(6).  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In evaluating a Rule

12(b)(6) motion, the Court accepts well-pleaded factual allegations as true, but it should not

accept conclusions unsupported by the facts alleged, legal conclusions, bald assertions or

unwarranted inferences.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Dismissal is

appropriate where a plaintiff fails "to raise a right to relief above the speculative level".  *Id.*

   Claims sounding in fraud are subject to the even higher pleading requirements of

Federal Rule of Civil Procedure 9(b).  In order to meet this standard, plaintiffs must (1) specify

the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where

and when the statements were made and (4) explain why the statements were fraudulent.

*Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004); *see also In re Enron Corp. Sec.,*

*Derivative & "ERISA" Litig. (Giancarlo v. UBS)*, No. CV H-01-3624, 2016 WL 4095973, at *3

(S.D. Tex. Aug. 2, 2016).

   While Rule 9(b) provides that intent and knowledge "may be alleged generally",

the Second Circuit has emphasized that "we must not mistake the relaxation of Rule 9(b)'s

specificity requirement regarding condition of mind for a license to base claims of fraud on

speculation and conclusory allegations [because] plaintiffs must allege facts that give rise to a

strong inference of fraudulent intent."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir.

2006).  "The requisite 'strong inference' of fraud may be established either (a) by alleging facts

to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging

facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."

*Id.* at 290-91 (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)); *see*

*also Giancarlo v. UBS*, 2016 WL 4095973, at *3-4.  "[A] complaint can be long-winded, even

prolix, without pleading with particularity.  Indeed, such a garrulous style is not an uncommon

mask for an absence of detail." *In re Nat. Gas Commodity Litig.*, 337 F. Supp. 2d 498, 506

(S.D.N.Y. 2004) (internal citations and quotations omitted).

It is undisputed that New York law applies to the Silvercreek Plaintiffs' common

law claims.  In their Motion for Leave to Amend, for example, the Silvercreek Plaintiffs

represented to the Enron MDL Court that their negligent misrepresentation claim was brought

under New York law.  (*See* Pls.' Mot. to Amend ¶ 26, ECF 10-103.)  There is no basis to apply

any other state's law to the remaining common law claims, the factual allegations for which all

overlap.[3]  Indeed, the Silvercreek Plaintiffs emphasize the ties between their allegations and

New York, noting that several defendants have their principal places of business in New York

and are incorporated in New York, and alleging that the Silvercreek Plaintiffs' purchases and

sales of Enron notes took place in New York.[4]  (TAC ¶ 7.)

---

[3] In the previous *Silvercreek* action against Salomon Smith Barney, Goldman Sachs and
Banc of America concerning purchases of the same notes that are at issue here, New York law
applied.  The defendants applied New York law to the common law claims in their motions to
dismiss (*Silvercreek I*, No. Civ. A. H-02-3185, Docket Nos. 7, 10, 14); the Silvercreek Plaintiffs
admitted in their opposition briefing that New York law applied (*id.*, Docket Nos. 28, 30, 34);
and the Enron MDL Court applied New York law in its decision, *Silvercreek I*, 2003 WL
23305555, at *12-13.

[4] Even if the governing law were disputed, New York law would apply under New York's
choice of law analysis, which applies since this case was originally filed in the United States
District Court for the Southern District of New York.  *See In re Parmalat Sec. Litig.*, 383 F.
Supp. 2d 587, 593 (S.D.N.Y. 2005); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.
(CRAA)*, 511 F. Supp. 2d 742, 790-91 (S.D. Tex. 2005).  New York applies the "interest test",
which gives controlling effect to the law of the jurisdiction with the greatest interest in the
litigation.  Here, New York has the greatest interest because the alleged conduct that forms the
basis of the claims allegedly took place in New York and the Financial Institution defendants at
all relevant times were predominantly domiciled in New York.  *See San Diego Cnty. Emps.' Ret.
Ass'n v. Maounis*, 749 F. Supp. 2d 104, 124-25 (S.D.N.Y. 2010) (applying New York's interest
analysis, the law of the forum where the alleged conduct took place governed); *see also Cromer
Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 492 (S.D.N.Y. 2001) (applying New York law based on
New York choice of law rules because the alleged fraudulent activities took place in New York

**Argument**

I.     **THE SILVERCREEK PLAINTIFFS FAIL ADEQUATELY TO PLEAD CLAIMS FOR COMMON LAW FRAUD AND DECEIT (COUNT FOUR) AND AIDING AND ABETTING FRAUD (COUNT ONE).**

A.     **The Silvercreek Plaintiffs' Claim for Fraud and Deceit Fails.**

The Silvercreek Plaintiffs fail to plead with the requisite specificity their common law fraud and deceit claim.  To plead fraud and deceit under New York law, the Silvercreek Plaintiffs must allege:  (a) a material misrepresentation or omission of fact; (b) defendant's knowledge of the falsity of the statement; (c) intent to defraud; (d) reasonable reliance by the plaintiff; and (e) damage to the plaintiff.  *See Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006).  As discussed above, these claims are subject to the heightened pleading requirements of Rule 9(b).  (*See supra* pp. 6-7.)  Thus, in order to state a claim, the Silvercreek Plaintiffs must specify the statements they contend are fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent. *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004).

The Silvercreek Plaintiffs' common law fraud and deceit claim is based on allegations that material misrepresentations were communicated directly to Silvercreek by Credit Suisse and Merrill Lynch brokers and through analyst reports on which Silvercreek allegedly relied in purchasing the 7% Notes and the Zero Notes.  (TAC ¶ 852.)[5]  Each of these theories fails.

---

and the plaintiffs' domiciles had limited connection to the conduct at issue).  The Silvercreek Plaintiffs are all domiciled in Canada or the Cayman Islands.  (TAC ¶¶ 8-12.)

[5] Count Four is asserted only against Credit Suisse and Merrill Lynch (and the Officer Defendants), not Deutsche Bank.

1.      **The Silvercreek Plaintiffs' Allegations Regarding Credit Suisse and Merrill Lynch Brokers' Statements Do Not Support a Claim for Fraud and Deceit.**

The fraud allegations against Credit Suisse and Merrill Lynch are based largely on generalized allegations that Credit Suisse and Merrill Lynch employees "touted" Enron securities and allegedly encouraged the Silvercreek Plaintiffs to purchase the 7% and Zero Notes.  (TAC ¶ 640.)  The Silvercreek Plaintiffs allege that Sara Randell of Credit Suisse, and Haig Altoonian, Mike Nahill and Terry O'Connor of Merrill Lynch, communicated with the Silvercreek Plaintiffs.  (TAC ¶¶ 614, 794.)  Even accepting these allegations as true—although they are completely contradicted by the evidence already adduced in this case[6]—the Silvercreek Plaintiffs' fraud claim fails.

*First*, the Silvercreek Plaintiffs' complete failure to specify the date, time and place of the alleged misrepresentations is fatal to their fraud claim.  *Rombach*, 355 F.3d at 170 (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).  With respect to Merrill Lynch, the Silvercreek Plaintiffs do not specifically allege that Merrill Lynch brokers made any affirmative statements with respect to the Zero Notes, let alone a false or misleading statement.  And the only allegation related to the 7% Notes is the Silvercreek Plaintiffs' vague

---

[6] None of the three Silvercreek employees deposed during discovery—Louise Morwick, Robert Kittel and Bryn Joynt—testified about any direct communication with Merrill Lynch.  In the six days of testimony in those three depositions, Merrill Lynch was mentioned only three times, and none of that testimony supports the Silvercreek Plaintiffs' allegations regarding communications with Merrill Lynch.  Similarly, none of the three Silvercreek employees deposed suggested that Credit Suisse had any role whatsoever in recommending Silvercreek's purchase of the 7% Notes.  (*See* Credit Suisse's Opp'n to Mot. to Amend (ECF 10-104), Part II.)  With respect to the Zero Notes, Messrs. Kittel and Joynt likewise had no recollection of receiving any recommendation from Credit Suisse (*id.*), and Ms. Morwick recalled only an initial conversation with Ms. Randell, the specifics of which she could not recall.  (*See* Morwick Dep. Tr. 400:7-12; 543:22-544:15.)  In the event any portion of the Third Amended Complaint survives dismissal on this motion, defendants may seek some limited additional discovery to the extent plaintiffs added new allegations in their most recent amendment.

claim that "Mr. Altooninan [sic] contacted Silvercreek and encouraged Silvercreek to buy

Enron's 7% Notes." (TAC ¶ 797.)  Absent from the Third Amended Complaint are any

allegations that show *what* Mr. Altoonian said or *how* or *why* his statement was false.  Indeed,

Plaintiffs do not even allege *when* that conversation purportedly took place, which is especially

relevant here because the Silvercreek Plaintiffs allege claims in connection with some, but not

all, of their purchases of 7% Notes.  (TAC ¶ 159 (describing earlier purchases)).  With respect to

Credit Suisse, the Silvercreek Plaintiffs also do not specify *any* date, time or place of the alleged

misrepresentations concerning the 7% Notes.  With respect to the Zero Notes, the bare allegation

that "in October 2001, Sara Randall [sic] of CSFB contacted Louise Morwick, President of

Plaintiff SMI, with the specific 'opportunity' for Plaintiffs to purchase the Zero Notes" with

statements of "attractive yield" and "good credit" (TAC ¶ 678) is not sufficiently specific to meet

the pleading standards of Rule 9(b).  The Silvercreek Plaintiffs do not point to *any* specific

statements communicated to Ms. Morwick by Ms. Randell, nor do they allege *how* or *why* those

alleged statements were false or misleading.  With discovery complete, including the depositions

of all the mentioned Silvercreek witnesses, as well as Ms. Randell, the Silvercreek Plaintiffs'

utter failure to satisfy their pleading obligations with any specificity whatsoever underscores the

complete lack of factual support for their fraud claim.

   *Second*, the Silvercreek Plaintiffs have not alleged knowledge, let alone scienter,

on the part of any individual they claim encouraged them to purchase Enron securities.  Instead,

they allege only "collective scienter", which is impermissible and grounds for dismissal:  "in

assessing the scienter of a corporate seller of securities, a fact finder does not consider the

knowledge or intent of employees not connected to the sale."  *AIG Glob. Sec. Lending Corp. v.*

*Banc of Am. Sec. LLC*, No. 01-CIV-11448, 2006 WL 1206333, at *3 (S.D.N.Y. May 2, 2006);

*see also Intesa Sanpaolo, S.p.A. v. Credit Agricole Corp. & Inv. Bank*, No. 12 CIV. 2683 RWS, 2013 WL 4856199, at *5 (S.D.N.Y. Sept. 10, 2013); *First Equity Corp. v. Standard & Poor's Corp.*, 690 F. Supp. 256, 260 (S.D.N.Y. 1988) ("A corporation can be held to have a particular state of mind only when that state of mind is possessed by a single individual."); *see also Giancarlo v. UBS*, 2016 WL 4095973, at *5 ("To determine whether a statement made by a corporation was made with the requisite intent, it is appropriate to look into the state of mind of the corporate official who made the statement rather than to the collective knowledge of all of the corporation's officers and employees acquired in the course of their employment.").  The Enron MDL Court rejected similar allegations against Credit Suisse and Merrill Lynch with respect to analysts in the lead case in that MDL (the *Newby* litigation), explaining that discovery was "largely over", "analysts . . . have been deposed" and "Plaintiffs have not identified nor provided the necessary facts to make such a showing about specific analysts."  *Regents II*, 529 F. Supp. 2d at 742 (granting summary judgment).  The Enron MDL Court's prior decision on this issue applies with equal force to the Silvercreek Plaintiffs' allegations concerning the Credit Suisse and Merrill Lynch brokers.  The Third Amended Complaint contains no allegations that Sara Randell, Haig Altoonian, Terry O'Connor or Mike Nahill—the alleged speakers—knew, or were reckless in not knowing, the nature of Enron's structured transactions or Enron's true financial status.  *See also Westboro Props. I*, 761 F. Supp. 2d at 575-77 (dismissing claims against Deutsche Bank where there were no allegations that Deutsche Bank representatives knew their statements were misrepresentations); *Giancarlo v. UBS*, 2016 WL 4095973, at *40 (dismissing claims against UBS where there were no allegations of "facts that demonstrate [the defendants' brokers] had an intent to deceive, manipulate or defraud or acted with severe recklessness").  The Silvercreek Plaintiffs' total failure to identify any Credit Suisse or Merrill

Lynch employee "as a statement maker with the requisite level of knowledge and intent" is fatal to their fraud claim. *See id.* at 537.

The Silvercreek Plaintiffs' conclusory allegation that Credit Suisse and Merrill Lynch "functioned as a unified entity without an effective Chinese wall" (TAC ¶¶ 589, 698) is insufficient as a matter of law. There are no facts alleged that Randell, Altoonian, O'Connor or Nahill—the alleged speakers—or any other employee breached Credit Suisse's and Merrill Lynch's respective information barriers and somehow gained knowledge of Enron's alleged true financial state from walled-off sources within Credit Suisse or Merrill Lynch. And the Enron MDL Court already held the vague allegation that Credit Suisse and Merrill Lynch "may have . . . ignored the Chinese wall" to be legally insufficient to establish the level of scienter necessary to support a claim of fraud. *Regents II*, 529 F. Supp. 2d at 774. Because the Silvercreek Plaintiffs fail to plead fraud with particularity, and because they fail to plead knowledge or scienter on the part of any named Credit Suisse or Merrill Lynch representative, the fraud and deceit claim must fail.

**2. The Silvercreek Plaintiffs' Allegations Regarding Credit Suisse and Merrill Lynch Analyst Reports Do Not Support a Claim for Fraud and Deceit.**

The Silvercreek Plaintiffs' common law fraud allegations with respect to Credit Suisse's and Merrill Lynch's research analyst reports similarly are deficient.

*First*, the Silvercreek Plaintiffs vaguely assert that 17 separate Credit Suisse analyst reports issued between July 6, 1999 and October 23, 2001, "misleadingly touted Enron's financial strength and performance, and recommended that investors purchase Enron securities."[7]

---

[7] The specific dates identified in the complaint are:  July 6, 1999; July 13, 1999; September 2, 1999; September 22, 1999; October 12, 1999; November 30, 1999; January 18, 2000; January 21, 2000; February 28, 2000; April 13, 2000; October 18, 2000; February 20, 2001; April 17,

(TAC ¶ 640.)  The Silvercreek Plaintiffs also allege in conclusory fashion that Merrill Lynch

issued 20 separate favorable analyst reports between January 20, 1999 and October 17, 2001

with "direct knowledge that Enron's financial statements were fraudulently misrepresented".[8]

(TAC ¶ 789.)  These general and conclusory allegations do not satisfy Rule 9(b)'s heightened

pleading requirement because they do not identify any specific statements or state why the

statements were false or misleading.  Tellingly, in a complaint of over 900 paragraphs and 275

pages, the Silvercreek Plaintiffs point to only a few specific Credit Suisse or Merrill Lynch

analyst reports.[9]  (TAC ¶¶ 642, 782-84, 796.)  With the exception of a single statement in a

Credit Suisse report published in October 2001 (TAC ¶ 642), however, the Silvercreek Plaintiffs

do not identify any specific statement contained in these analyst reports that they claim is false,

much less explain why it is false.[10]  Instead, they resort to vague and conclusory allegations.

---

2001; August 14, 2001; August 17, 2001; October 19, 2001; and October 23, 2001.  (TAC
¶ 640.)  Since the Silvercreek Plaintiffs made the purchases on which they sue in late October
2001, after substantial negative news regarding Enron (TAC ¶¶ 88, 100, 159), all but two of the
reports are plainly too stale to support an allegation of reasonable reliance.  In addition, the
Silvercreek Plaintiffs identify reports issued on November 5, 2001 and November 20, 2001, in
which they allege Credit Suisse continued to recommend Enron with a "Strong Buy" rating
(TAC ¶¶ 115, 126), but the Silvercreek Plaintiffs do not directly allege these reports to be
false.  Moreover, all of the Silvercreek Plaintiffs' purchases at issue took place prior to the
issuance of these two reports, so no allegation of reasonable reliance can be made.

[8] The specific dates identified in the complaint are:  January 20, 1999; March 31, 1999;
April 13, 1999; April 15, 1999; July 14, 1999; October 2, 1999; January 18, 2000; January 21,
2000; January 24, 2000; April 12, 2000; April 13, 2000; July 24, 2000; July 25, 2000; October
17, 2000; January 22, 2001; January 23, 2001; April 18, 2001; May 24, 2001; October 9, 2001;
and October 17, 2001.  (TAC ¶ 781.)

[9] The Silvercreek Plaintiffs also allege that a specific Credit Suisse analyst continued to rate
Enron securities favorably in November 2001, but again with no detail as to what was allegedly
false or what knowledge, if any, the analysts had about Enron's alleged fraud, much less how
that allegation relates to purchases the prior month.  (TAC ¶ 644.)

[10] The Silvercreek Plaintiffs allege that they "[were] provided with a copy of Merrill
Lynch's Enron 'model' and 'forecasts'—none of which hinted at the dire financial situation at

(TAC ¶¶ 782-84, 796.)  This deficiency is fatal to their claim.  *See Rombach*, 355 F.3d at 170 (2d Cir. 2004) (plaintiffs must specify the statements, identify the speaker, state where and when the statements were made and explain why they were fraudulent).  And with respect to the one statement in the one Credit Suisse report (TAC ¶ 642), the Silvercreek Plaintiffs' claim still fails because they fail to identify the author of the statement and fail to plead the author's actual knowledge of the falsity of the statement.

> *Second*, the Silvercreek Plaintiffs fail to allege knowledge of Enron's true financial state or scienter on the part of any analyst authoring the reports cited in the Third Amended Complaint.  There are no allegations that any specific Credit Suisse or Merrill Lynch analyst knew, or was severely reckless in not knowing, that his or her reports contained allegedly false and misleading statements.  Because the Silvercreek Plaintiffs do not allege these crucial facts, they cannot allege scienter on the part of Credit Suisse or Merrill Lynch, and their claim fails.  Indeed, the Enron MDL Court rejected virtually identical allegations against Credit Suisse and Merrill Lynch in the *Newby* litigation on the very same grounds.  *See Regents II*, 529 F. Supp. 2d at 742.  And as discussed above, the Silvercreek Plaintiffs' conclusory allegation that Credit Suisse and Merrill Lynch "had a complete disregard for the concept of 'Chinese walls' and the need for equity analysts to be independent of other business units within the firm" (TAC ¶ 647; *see also* TAC ¶¶ 589, 698) cannot remedy these deficiencies.  Even if these allegations were true (which they are not), they do "not give rise to a strong inference of scienter nor

---

the company", but they do not allege how or when they obtained this information, or whether it was obtained from Merrill Lynch.  (TAC ¶ 797.)  Even if the Silvercreek Plaintiffs had made that allegation with sufficient particularity, those forecasts are inactionable statements of opinion.  *Zanani v. Savad*, 217 A.D.2d 696, 697 (2d Dep't 1995) ("In general, a representation of opinion or a prediction of something which is hoped or expected to occur in the future will not sustain an action for fraud.").

demonstrate that [any analyst] knew or was reckless about whether [the] reports were accurate." *Regents II*, 529 F. Supp. 2d at 775.[11]

Because the Silvercreek Plaintiffs have not alleged any specific facts showing how, when, where, or by whom Credit Suisse's or Merrill Lynch's supposed knowledge about transactions with Enron was communicated to the analysts, the Silvercreek Plaintiffs' common law fraud claim with respect to Credit Suisse's and Merrill Lynch's analyst reports must fail. *See Shields*, 25 F.3d at 1128 ("[T]o serve the purposes of Rule 9(b), we require plaintiffs to allege facts that give rise to a strong inference of fraudulent intent.").

*Third*, the Silvercreek Plaintiffs fail adequately to plead reliance. "To plead a common law fraud claim under New York law, a 'plaintiff must allege facts to support the claim that it justifiably relied on the alleged misrepresentations.'" *SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos.*, No. 14-507-cv, 2016 WL 3769735, at *3 (2d Cir. July 14, 2016) (quoting *ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.*, 32 N.E.3d 921, 922 (N.Y. 2015)). For the most part, the Silvercreek Plaintiffs have not even attempted to plead direct reliance; there is no allegation that they relied on, or even read, the overwhelming majority of Credit Suisse's or Merrill Lynch's analyst reports—34 (of the 37 cited) of which pre-date Enron's October 16,

---

[11] The Silvercreek Plaintiffs' reliance on a single email in February 2002 from an employee at JPMorgan Chase to Andy DeVries, a junior research analyst at Credit Suisse (TAC ¶ 652), does not raise a strong inference of scienter. Not only is this not even a Credit Suisse document, there are no facts alleged concerning Mr. DeVries's state of mind or knowledge of any fraud at Enron at the time the email was received. *See Stumpf v. Garvey (In re TyCom Ltd. Sec. Litig.)*, Case Nos. 02-MDL-1335-PB, 03-CV-1352-PB, 2005 WL 2127674, at *16 (D.N.H. Sept. 2, 2005) (granting motion to dismiss where e-mails cited in complaint "reveal[] nothing about what [the research analyst] believed with respect to his TyCom recommendations and there is no indication that [the analyst] authorized, approved, agreed with . . . this communication"; "e-mails written by other SSB employees that purport to represent [the analyst's] true opinion about TyCom" are "insufficient under Rule 9(b) and the PSLRA"). In any event, the referenced email post-dates the Silvercreek Plaintiffs' purchase of Enron securities, and therefore cannot logically form the basis of any of the Silvercreek Plaintiffs' claims.

2001 write-down announcement, which rendered stale the prior reports.  (*See* TAC ¶¶ 640, 781.)

Instead, the Silvercreek Plaintiffs allege that they relied generally on "[r]epresentations made by

[Defendants'] research analysts . . . who all commented favorably on the October 2001

announced financial results of Enron and reiterated their 'Buy' ratings on the company."  (TAC

¶ 164(j).)  Where the Silvercreek Plaintiffs actually identify specific Credit Suisse or Merrill

Lynch reports (TAC ¶¶ 642, 795-800), they fail to allege specific reliance or that the report was

false or misleading.  Again, these allegations are insufficient to plead reliance with the requisite

particularity under Rule 9(b).  *See, e.g.*, *Patrick Carter Assocs., Inc. v. Rent Stabilization Ass'n of*

*N.Y.C., Inc.*, No. 89 Civ. 7716, 1990 WL 195993, at *7-10 (S.D.N.Y. Nov. 28, 1990) (general

allegation of reliance on six alleged misrepresentations, without more, does not suffice under

Rule 9(b) to plead the requisite specific reliance on individual misrepresentations).  As a result,

Plaintiffs' fraud claims must be dismissed because they failed to "specifically plead, as necessary

to [their] common law fraud claims, that [they] actually purchased or sold [securities] . . . in

reliance on the defendants' misrepresentations."  *SRM Glob. Master Fund Ltd. P'ship*, 2016 WL

3769735, at *3.

       Even if they had pleaded actual reliance, the Silvercreek Plaintiffs come nowhere

close to pleading *reasonable*, or justifiable, reliance on any analyst report.  "New York law

imposes an affirmative duty on sophisticated investors to protect themselves from

misrepresentations . . . by investigating the details of the[ir] transactions."  *Glob. Mins. & Metals*

*Corp. v. Holme*, 35 A.D.3d 93, 100 (1st Dep't 2006); *see also HSH Nordbank AG v UBS AG*, 95

A.D.3d 185, 194-195 (1st Dep't 2012) ("[A]s a matter of law, a sophisticated plaintiff cannot

establish that it entered into an arm's length transaction in justifiable reliance on alleged

misrepresentations if that plaintiff failed to make use of the means of verification that were

available to it").  Under New York law, an investor that fails to investigate is not entitled to a

finding of reasonable reliance.  *See Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 740 F. Supp.

2d 441, 448 (S.D.N.Y. 2010) (citing *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d

1531, 1542 (2d Cir. 1997)).  The question of reasonable reliance is a question of law that

properly is considered at the motion to dismiss stage.  *Id.* at 449.

           As sophisticated investment funds, the Silvercreek Plaintiffs had an affirmative

duty to protect themselves from any alleged misrepresentations by investigating the details of

their transactions.  *See id.* (finding that a "securities brokerage firm" and a "bank" were

sophisticated parties upon a motion to dismiss); *cf.* (TAC ¶ 13) ("Plaintiff SMI is an investment

manager, and manages, among other things, the investments of the other four plaintiffs.").  In

this case, the Silvercreek Plaintiffs willfully failed to investigate Enron's financial state and

ignored the red flags because their whole purpose was to buy distressed Enron debt at discount

prices—investing over $100 million in Enron debt securities days *after* Enron announced a $1

billion charge to its third-quarter 2001 earnings relating to its debt (TAC ¶ 88) and *after* the SEC

announced an inquiry into Enron's accounting for related-party transactions (TAC ¶ 100).  The

Silvercreek Plaintiffs were free to conduct their own investigation of Enron's financial and

business information.  The conclusory allegations that the Financial Institutions had "superior

access" (TAC ¶¶ 856, 874) to information about Enron's financial condition do not support a

finding that the Silvercreek Plaintiffs in any way were precluded from conducting a meaningful

investigation.  These sophisticated investors cannot plead reasonable reliance where they

purchased Enron securities at deep discounts knowing of—indeed, precisely because of—

17

Enron's unstable financial condition and where they failed to conduct an independent

investigation into the company's financial state.[12]

**B.      The Silvercreek Plaintiffs' Claim for Aiding and Abetting Fraud and Deceit
Fails.**

The Silvercreek Plaintiffs allege without basis that the Financial Institutions aided

and abetted Enron in the "commission of Enron's wrongful acts". (TAC ¶ 804.) To plead a

claim for aiding and abetting fraud under New York law, a plaintiff must "plead facts showing

the existence of a fraud, defendant's knowledge of the fraud, and that the defendant provided

substantial assistance to advance the fraud's commission". *Wight v. BankAmerica Corp.*, 219

F.3d 79, 91 (2d Cir. 2000) (quotation omitted); *see also Westboro Props. I*, 761 F. Supp. 2d at

539 (citing New York law). The Silvercreek Plaintiffs fail to meet this standard.

As a threshold matter, the Silvercreek Plaintiffs' aiding and abetting fraud claim

fails because it does not plead adequately the existence of a fraud by Enron. The Third Amended

Complaint's general allegations—that Enron misrepresented its financial state in registration

---

[12] To the extent the Silvercreek Plaintiffs attempt to base their common law fraud claim on
alleged material omissions by Credit Suisse and Merrill Lynch analysts or brokers, such a theory
fails as a matter of law. There are no allegations that any specific Credit Suisse or Merrill Lynch
analyst knew, or was severely reckless in not knowing, that his or her reports contained any
misleading omissions. In addition, where a plaintiff's fraud claim is for a fraudulent
concealment rather than a fraudulent misrepresentation, the "plaintiff must also prove that the
defendant had a duty to disclose the material information." *Banque Arabe et Internationale
D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995). The Silvercreek Plaintiffs'
unsupported and conclusory allegation that "[Credit Suisse] and Merrill Lynch owed Silvercreek
a duty of care in disseminating information about Enron and its financial condition to
Silvercreek" (TAC ¶ 873), without any facts showing that they enjoyed a confidential or
fiduciary relationship with Credit Suisse or Merrill Lynch, is insufficient. Indeed, the Enron
MDL Court already dismissed claims against Deutsche Bank for the same pleading failures.
*Westboro Props. I*, 761 F. Supp. 2d at 556 ("To the extent that Plaintiffs are contending they
relied on material omissions by Deutsche Bank, their claims fail because Plaintiffs do not allege
any relationship (fiduciary, confidential or contractual) that would give rise to a duty to disclose
under either New York or Texas law."). The same result applies here. (*See infra* Part IV.A.)

statements and prospectuses for the Zero Notes and the 7% Notes (TAC ¶¶ 136, 137, 154), and

that Enron failed to disclose certain "off-balance-sheet activities and resulting obligations" (TAC

¶¶ 138, 155; *see also* TAC ¶¶ 141, 156)—do not allege with particularity specific

misrepresentations in specific filings sufficient to support a claim for fraud under Rule 9(b).  In

*Westboro Properties I*, where the plaintiffs pled that Enron made material misrepresentations in

offering materials that incorporated by reference Enron's annual financial statements and that

Enron failed to disclose its true financial state (*see Westboro Props. I*, Second Amended

Complaint ¶¶ 135, 153, 154, 157-61, 748), the Enron MDL Court held that "[p]laintiffs have not

identified a specific misrepresentation in Enron's SEC-filed documents," *Westboro Props. I*, 761

F. Supp. 2d at 575, and, on a motion for reconsideration, held that plaintiffs failed to plead fraud

with particularity against Enron, *In re Enron Corp. Sec., Derivative & "ERISA" Litig. (Westboro

Props. II)*, Nos. MDL 1446, Civ. A. H-01-3624, Civ. A. H-03-1276, 2011 WL 3489599, at *4

(S.D. Tex. Aug. 9, 2011).  Moreover, the Silvercreek Plaintiffs also fail to plead with the

requisite particularity facts sufficient to show reasonable reliance on any such statements.  As

discussed above, the fact that the Silvercreek Plaintiffs purchased Enron securities shortly *after*

two major, negative announcements regarding Enron's economic decline and its financial

disclosures forecloses any argument that these sophisticated investors reasonably relied on

Enron's prior financial statements.  (*See supra* Part I.A.)  Because the Silvercreek Plaintiffs'

allegations of Enron's fraud are insufficient, specifying neither particular misstatements nor their

reasonable reliance on those statements, their claim against the Financial Institutions for aiding

and abetting such fraud fails on that ground alone.

   Moreover, even if the Silvercreek Plaintiffs had sufficiently pled an underlying

Enron fraud, the Third Amended Complaint is devoid of sufficient, specific pleading of the

requisite elements of a claim for aiding and abetting fraud, namely knowledge, substantial assistance and causation on the part of the Financial Institutions.

       *First*, the Silvercreek Plaintiffs have not sufficiently alleged that the Financial Institutions *knew* of any Enron fraud that was being used to deceive these note investors. *See Westboro Props. I*, 761 F. Supp. 2d at 540, 577, 579. The Silvercreek Plaintiffs must allege actual knowledge of the fraud; recklessness in the absence of a fiduciary relationship will not suffice. *See Lerner*, 459 F.3d at 292-93; *Ross v. Bolton*, 904 F.2d 819, 824 (2d Cir. 1994). Even "suspicion and surmise" do not constitute the requisite "actual knowledge" for aiding and abetting liability. *Sharp Int'l Corp. v. State Street Bank & Trust Co.*, 281 B.R. 506, 515 (Bankr. E.D.N.Y. 2002). Instead, allegations of knowledge "are conclusory" and insufficient under New York law when a complaint "lacks any allegation that [defendants] had actual knowledge of certain key facts . . . that could give rise to a reasonable inference of such knowledge". *Krys v. Pigott*, 749 F.3d 117, 130 (2d Cir. 2014). The Silvercreek Plaintiffs offer nothing more than vague and conclusory allegations—mainly assorted third-party hindsight opinions from the court-appointed Bankruptcy Examiner Neal Batson and the press—with respect to the Financial Institutions' alleged intent and/or knowledge. (*See, e.g.*, TAC ¶ 322.) The Enron MDL Court already found essentially identical allegations insufficient to withstand a Rule 12(b)(6) motion in *Westboro Props. I.*, 761 F. Supp. 2d at 579, and this Court should reach the same result here. Similarly, conclusory allegations that analyst reports issued by the Financial Institutions (identified only by date on an extensive list) were misleading do not adequately allege the requisite actual knowledge of fraud on the part of any specific analyst, let alone identify any particular misleading statement in a particular report.

*Second*, there are no allegations with the required specificity stating that the Financial Institutions substantially assisted Enron in any fraud on the Silvercreek Plaintiffs. "Substantial assistance" is defined as "where a defendant affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed". *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001) (quotation omitted). However, "[i]naction is actionable participation only when the defendant owes a fiduciary duty directly to the plaintiff," *id.* (internal quotation marks and citation omitted), which the Silvercreek Plaintiffs nowhere allege against any of the Financial Institutions. Where, as here, the alleged primary violations consist of misrepresentations in a document, the defendant at a minimum "must be alleged to have given substantial assistance to the making and dissemination of that document". *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 371 (S.D.N.Y. 2007). This requirement "stems from the relationship between substantial assistance and proximate cause. If plaintiffs were to rely to their detriment on a misstatement, but the alleged aider and abettor did not assist in the making or dissemination of that statement, the plaintiffs, in most situations, could not say that their losses were proximately caused by the aider and abettor's actions." *Id.*

Here, the Silvercreek Plaintiffs' primary allegations concern alleged misrepresentations in certain of Enron's financial statements that Enron incorporated in the Zero Notes and the 7% Notes offering materials, but they do not sufficiently tie the Financial Institution to those financial statements. Rather, the Third Amended Complaint makes clear that Enron was the author and disseminator of the statements that the Silvercreek Plaintiffs contend were fraudulent. For example, the Third Amended Complaint alleges that "*Enron filed* the preliminary registration statement and prospectus with the SEC" in connection with the 7%

21

Notes offering.  (TAC ¶ 135 (emphasis added).)  Likewise, it alleges that "*Enron filed* the

preliminary registration statement and prospectus with the SEC" in connection with the Zero

Notes offering as well.  (TAC ¶ 150 (emphasis added).)[13]

    *Third*, the Silvercreek Plaintiffs fail to allege that the Financial Institutions'

transactions with Enron were the proximate cause of the Silvercreek Plaintiffs' alleged injuries.

To the extent that the Silvercreek Plaintiffs allege aiding and abetting liability on the ground that

the Financial Institutions participated in tax transactions, structured transactions or other

investment banking transactions with Enron for which *Enron* later fraudulently accounted in its

financials, such conduct does not rise to aiding and abetting liability under New York law.  A

plaintiff must also plead proximate causation; "'[b]ut-for' causation is insufficient." *Pension*

*Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163,

201 (S.D.N.Y. 2006); *see also Cromer*, 137 F. Supp. 2d at 472.  In addition, the heightened

pleading requirements of Rule 9(b) apply to the Silvercreek Plaintiffs' aiding and abetting

common law fraud claim.  *See Lerner*, 459 F.3d at 292-93.  Even taken as true, knowledge of a

borrower's commission of fraud in connection with the funds it was borrowing does not give rise

to a claim for aiding and abetting liability against a lender.  *See Atlanta Shipping Corp. v. Chem.*

*Bank*, 818 F.2d 240, 251 (2d Cir. 1987) (a bank's knowing acceptance of loan repayments from a

---

[13] The Financial Institutions are not identified as creators or disseminators of the
Registration Statement or Prospectus for the Zero Notes.  (*See generally* July 2001 Registration
Statement, Korn Decl. Ex. 1.)  Plaintiffs do not allege that Credit Suisse, Merrill Lynch, or
Deutsche Bank participated in any way in the preparation or dissemination of those offering
materials for the registered securities that Plaintiffs purchased.  (TAC ¶¶ 143-150.)  With respect
to the 7% Notes, the Silvercreek Plaintiffs likewise do not allege that any Financial Institution
played any role in drafting or disseminating those notes' offering documents.  Thus, for this
reason as well, the Silvercreek Plaintiffs fail to allege facts that sufficiently show knowing
participation in and proximate causation by each defendant with regard to the alleged aiding and
abetting of fraud by Enron in its financial statements.

debtor, even though it knew of wrongful activity by the debtor, did not amount to aiding and abetting the debtor in the commission of that wrongful activity).[14]

In essence, the Silvercreek Plaintiffs allege nothing more than that "but for" the Financial Institutions' participation in transactions with Enron, Enron's alleged Ponzi scheme would have been impossible.  Such allegations, however, do not state a claim for aiding and abetting fraud.  *See Cromer*, 137 F. Supp. 2d at 472 ("While the Ponzi scheme may only have been possible because of [the defendant's] actions, or inaction, [the defendant's] conduct was not a proximate cause of the Ponzi scheme," or of the plaintiff's injury.).  Indeed, these are the same allegations that failed in *Westboro Properties I*, 761 F. Supp. 2d at 540 ("Plaintiffs claim they were injured by asset transfers at inflated values from Enron to Whitewing, but they do not and cannot allege that Deutsche Bank, which participated only in the Osprey financing transaction, had anything to do with Enron's subsequent abuse of the Osprey/Whitewing structure.").  Thus, the Silvercreek Plaintiffs' claim for aiding and abetting fraud should be dismissed.

## II.  THE SILVERCREEK PLAINTIFFS FAIL ADEQUATELY TO PLEAD A CLAIM FOR COMMON LAW CONSPIRACY (COUNT TWO).

The Silvercreek Plaintiffs allege that the Financial Institutions conspired with Enron to defraud investors.  But as with their aiding and abetting fraud claim, the Silvercreek Plaintiffs fail to allege any facts concerning the Financial Institutions' transactions with Enron that would give rise to conspiracy liability.  "To adequately plead claims for conspiracy to

---

[14] *See also Sharp Int'l Corp.*, 281 B.R. at 523 ("The closest Sharp comes to pleading participation by State Street in a fraud against the Noteholders is the allegation that State Street consented to the transaction, and that under the State Street loan documents such consent was necessary in order for Sharp to close the transaction with the Noteholders.  However, providing consent to another transaction by the borrower under a loan agreement, even with actual or constructive knowledge that the borrower is engaging in fraud, does not constitute participation in the fraud so as to transform the subsequent repayment of the loan into an intentional fraudulent conveyance.").

commit fraud under New York law, in addition to pleading the underlying fraud, the [plaintiff] must allege the following with the required specificity as to each defendant:  (1) an agreement among two or more parties, (2) a common objective, (3) acts in furtherance of the objective, and (4) knowledge." *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 259 (S.D.N.Y. 2005) (quotation omitted).  As with a claim for aiding and abetting fraud, a claim for conspiracy to commit fraud is subject to the heightened pleading requirements of Rule 9(b).  *See Fezzani v. Bear, Stearns & Co.*, 592 F. Supp. 2d 410, 428-29 (S.D.N.Y. 2008) (dismissing conspiracy claims for failure to comply with Rule 9(b)).  "The party claiming fraud must specify the statements that were allegedly false or misleading, state when and where the statements were made, identify the people or groups that made the statements, and explain how the statements were fraudulent." *Id.* (citing *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989)).  The Third Amended Complaint does not come close to satisfying the elements required to plead conspiracy under New York law or to meeting the heightened pleading requirements of Rule 9(b).

As discussed above with respect to the aiding and abetting fraud claim, the Silvercreek Plaintiffs fail adequately to plead any underlying fraud against Enron.  (*See supra* Part I.B.)  Without a valid claim for the alleged underlying fraud, there can be no claim for conspiracy.  *See Sedona Corp. v. Ladenburg Thalmann & Co.*, No. 03 Civ. 3120, 2005 WL 1902780, at *17 (S.D.N.Y. Aug. 9, 2005) ("[A] plaintiff can bring suit for a civil conspiracy only if he has been injured by an act that was itself tortious." (quotation omitted)); *see also Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*, 223 F. Supp. 2d 474, 490 (S.D.N.Y. 2002) ("It is well-settled that New York law does not recognize an independent cause of action for civil conspiracy.").  Thus, the Silvercreek Plaintiffs' failure to plead an underlying fraud alone warrants the dismissal of the Silvercreek Plaintiffs' conspiracy claim.

24

In addition, the Silvercreek Plaintiffs' conspiracy allegations also fail because they have not been pleaded with the requisite particularity under Rule 9(b).  *See Gabriel Capital, L.P. v. NatWest Fin., Inc.*, 94 F. Supp. 2d 491, 511 (S.D.N.Y. 2000).  "'To survive a motion to dismiss, a complaint must contain more than general allegations in support of the conspiracy.  Rather, it must allege the specific times, facts, and circumstances of the alleged conspiracy.'"  *Id.* (quoting *Fitzgerald v. Field*, No. 99 Civ. 3406, 1999 WL 1021568, at *4 (S.D.N.Y. Nov. 9, 1999)).  In *Gabriel Capital*, the court dismissed conspiracy claims against the defendants because "the only mention of a conspiracy in the Amended Complaint comes on the penultimate page, in the claim itself."  *Id.*  The same is true in this case; the Third Amended Complaint's first mention of any agreement or conspiracy "comes . . . in the claim itself".  *Id.*  The Silvercreek Plaintiffs allege only generally that the Financial Institution Defendants participated in a series of transactions with Enron for which *Enron* then misaccounted in its financials.  They never once allege that the Financial Institutions entered into any agreement with Enron to effectuate the alleged scheme.  Instead, each of the Financial Institutions is alleged merely to have participated in certain tax, investment, or structured finance transactions that *Enron* may have later used to defraud investors.  Similarly, the Silvercreek Plaintiffs' allegations that the Financial Institutions issued misleading analyst reports merely list a series of dates on which these reports were issued, failing to allege any facts showing that any particular analyst entered into an agreement with Enron to perpetuate fraud.  Where, as here, "scienter is lacking, the mere fact that a defendant's otherwise lawful activities may have assisted another in pursuit of guileful objectives is not a sufficient basis for a finding that he or she conspired to defraud".  *Snyder v. Puente De Brooklyn Realty Corp.*, 297 A.D.2d 432, 435, 746 N.Y.S.2d 517, 521-22 (3d Dep't 2002) (quotation omitted); *see also Pittman v. Grayson*, 149 F.3d 111, 123 (2d Cir. 1998) (to be liable for civil

conspiracy "the defendant must know the wrongful nature of the primary actor's conduct"). The Silvercreek Plaintiffs' allegations that the Financial Institutions participated in certain transactions with Enron do not give rise to a claim for conspiracy. Accordingly, the conspiracy to commit fraud claim should be dismissed.

### III.   THE SILVERCREEK PLAINTIFFS FAIL ADEQUATELY TO PLEAD THEIR SECTION 11 CLAIM (COUNT SIX), WHICH SOUNDS IN FRAUD, WITH THE REQUISITE PARTICULARITY.

The Silvercreek Plaintiffs' Section 11 claim should be dismissed because they fail to satisfy the particularity requirements of Rule 9(b). Although fraud normally is not an element of a claim under Section 11 of the Securities Act, courts nonetheless have held plaintiffs to the heightened Rule 9(b) pleading standard where their claims are premised on allegations of fraud. *See, e.g.*, *Rombach*, 355 F.3d at 171; *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014); *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358 (2d Cir. 2010). In *Rombach*, the court noted that "the wording and imputations of the complaint are classically associated with fraud:  that the Registration statement was 'inaccurate and misleading;' that it contained 'untrue statements of material facts;' . . . and that 'materially false and misleading written statements' were issued". 355 F.3d at 172 (emphasis omitted). The court found efforts "to characterize claims by the label used in the pleading" unconvincing where allegations of fraud permeated the complaint. *Id.* (citing *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.2 (9th Cir. 1996)). Merely disavowing allegations that would trigger 9(b) is ineffective where plaintiffs make little effort to distinguish their fraud claims from their other claims. *See id.*

Here, the Third Amended Complaint is rife with generalized allegations of fraud relating to the registration statements that are the basis of the Silvercreek Plaintiffs' Section 11

26

claim against the Financial Institutions.[15]  (*See* TAC ¶¶ 5, 16, 20, 23, 31, 35, 77, 119-120, 155-157, 168, 170, 176, 253, 263, 273-274, 319, 332, 336-340, 354, 432, 471-473, 475-477, 506, 537, 586, 614, 665, 671, 673, 688, 886-889.)  The Silvercreek Plaintiffs' effort to disclaim allegations of fraud in their Section 11 count (*see* TAC ¶ 880) in the face of these repeated allegations of fraud throughout the TAC elevates form over substance and fails to avoid application of Rule 9(b).  As demonstrated above, Plaintiffs' allegations of fraud do not satisfy the heightened pleading requirements of Rule 9(b), and thus the Section 11 claim should be dismissed.  (*See supra* Part I.)

Moreover, Silvercreek Management, Inc.'s Section 11 claim should be dismissed for the separate and additional reason that the Third Amended Complaint does not allege that Silvercreek Management, Inc. actually purchased any securities.  (TAC ¶ 159.)  Section 11 provides a cause of action only for "person[s] acquiring such security"—not for non-purchasers. *See* 15 U.S.C. § 77k(a); *see also Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983) ("[A] Section 11 action must be brought by a purchaser of a registered security").  Therefore, Silvercreek Management, Inc.'s Section 11 claim should be dismissed with prejudice.[16]

## IV.   THE SILVERCREEK PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENT MISREPRESENTATION (COUNT FIVE) AND AIDING AND ABETTING NEGLIGENT MISREPRESENTATION (COUNT THREE).

The Silvercreek Plaintiffs base their negligent misrepresentation claim on the conclusory allegations that Credit Suisse and Merrill Lynch should have known the true nature of

---

[15] No Section 11 claim is alleged against Merrill Lynch.

[16] As addressed in the individual memoranda of law submitted by Credit Suisse and Deutsche Bank, the Section 11 claims against each of them fail for the additional reason that those institutions were not statutory underwriters of the Zero Notes at issue.  Credit Suisse's individual memorandum of law also addresses why the Silvercreek Plaintiffs' new Section 12 claim, alleged only against Credit Suisse, should be dismissed with prejudice.

Enron's financial state, and that Credit Suisse and Merrill Lynch communicated material misrepresentations concerning Enron's financial health to the Silvercreek Plaintiffs directly through Credit Suisse and Merrill Lynch brokers and through analyst reports.[17]  (TAC ¶¶ 873-874.)  This claim fails because, as explained above, the Silvercreek Plaintiffs fail to plead with requisite specificity the existence of any alleged misstatement; that any named broker or analyst should have known his or her statements were false or misleading; and their reasonable reliance on any alleged misstatements.  In addition, the Silvercreek Plaintiffs do not allege the "special relationship" required by New York law.  The Silvercreek Plaintiffs' aiding and abetting negligent misrepresentation claim also fails for the independent reasons that New York law does not recognize any such claim and that they have not stated any basis for aiding and abetting liability.

> **A.     The Silvercreek Plaintiffs Fail To State a Claim for Negligent Misrepresentation.**

Under New York law, a negligent misrepresentation claim requires that (a) the defendant had a duty, as a result of a special relationship, to give correct information; (b) the defendant made a false representation that he or she should have known was incorrect; (c) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (d) the plaintiff intended to rely and act upon it; and (e) the plaintiff reasonably relied on it to his or her detriment.  *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).  "Liability for negligent misrepresentation may be imposed 'only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent

---

[17] Count Five is asserted only against Credit Suisse and Merrill Lynch (and the Officer Defendants), not Deutsche Bank.

28

misrepresentation is justified.'"  *Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 778

(S.D.N.Y. 2011) (quoting *Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (1996)).  "While the

existence of a special relationship is a fact-intensive, case-by-case inquiry, courts have dismissed

pleadings that contain insufficient allegations on this point."  *In re Enron Corp. Sec., Derivative*

*& "ERISA" Litig. (Walker v. Arthur Andersen, LLP)*, Nos. MDL 1446, Civ. A. H-01-3624, Civ.

A. H-03-2345, 2011 WL 3516292, at *6 (S.D. Tex. Aug. 11, 2011) (citations omitted).  The

Silvercreek Plaintiffs' negligent misrepresentation claims are subject to Rule 9(b)'s heightened

pleading requirements—Rule 9(b) "applies to claims for negligent misrepresentation where the

factual allegations underlying it and a fraud claim are the same".[18]  *Id.* (citations omitted).

In other Enron MDL cases, the Fifth Circuit held (in the federal securities fraud

context) that Credit Suisse and Merrill Lynch "were not fiduciaries and were not otherwise

obligated to [securities purchaser] plaintiffs.  They did not owe plaintiffs any duty to disclose the

nature of the alleged transactions."  *See Regents of Univ. of Cal. v. Credit Suisse First Boston*

*(USA), Inc.*, 482 F.3d 372, 384 (5th Cir. 2007).  Likewise here, the Silvercreek Plaintiffs do not

allege facts that would give rise to a fiduciary or "special" relationship between the Silvercreek

Plaintiffs and either Credit Suisse or Merrill Lynch.  Neither Credit Suisse's nor Merrill Lynch's

provision of occasional brokerage services to the Silvercreek Plaintiffs (TAC ¶¶ 871-872)

created a special duty that gives rise to liability for negligent misrepresentation.  *See, e.g.,*

---

[18] Although the Silvercreek Plaintiffs attempt to disclaim fraud in connection with this claim
(TAC ¶ 861), it is clear that their fraud and deceit claim and their negligent misrepresentation
claim are "based on the same set of alleged facts".  *Walker v. Arthur Andersen, LLP*, 2011 WL
3516292, at *6.  Specifically, the Silvercreek Plaintiffs allege both their fraud claim and their
negligent misrepresentation claim conclusorily:  that "Merrill and CSFB each made material
misrepresentations and omissions to Plaintiffs" (TAC ¶¶ 852, 870); that both Financial
Institutions knew or should have known to be false; and that they did so with the intent to
defraud the Silvercreek Plaintiffs (TAC ¶¶ 855, 873).

*Weinstock v. Handler*, 244 A.D.2d 273, 273, 664 N.Y.S.2d 298, 298-99 (1st Dep't 1997) (finding that the duty to disclose requires an existing contractual or fiduciary relationship); *see also Gen. Ret. Sys. of Detroit v. UBS, AG*, No. 10-CV-13920, 2011 WL 2601002, at *14 (E.D. Mich. June 30, 2011) ("[N]egligent misrepresentation requires an allegation that defendants owed a duty of care under New York law to impart correct information.  Arms-length commercial relationships cannot alone give rise to such a duty of care." (citation omitted)); *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 866 F. Supp. 2d 257, 270 (S.D.N.Y. 2012); *In re Merrill Lynch Auction Rate Sec. Litig.*, No. 09 MD 2030, 2011 WL 1330847, at *12 (S.D.N.Y. Mar. 30, 2011) ("[T]here 'is no general fiduciary duty inherent in an ordinary broker/customer relationship, particularly where, as here, the account is nondiscretionary.'" (quoting *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940 (2d Cir. 1998))).[19]

Moreover, the Silvercreek Plaintiffs also fail to state a claim for negligent misrepresentation for many of the same reasons why they fail to state a claim for fraud and deceit, as discussed above.  For example, they do not identify with particularity which Credit Suisse or Merrill Lynch statements are alleged to be false and misleading.  They fail to allege that any named broker or analyst knew or should have known that their statements concerning Enron were false and misleading.  Nor do the Silvercreek Plaintiffs adequately plead reasonable reliance on any alleged misrepresentations.  (*See supra* Part I.A.)

---

[19] The Second Circuit's statement in *de Kwiatkowski v. Bear, Stearns & Co., Inc.*, 306 F.3d 1293, 1302 (2d Cir. 2002), that "the broker owes duties of diligence and competence in executing the client's trade orders, and is obliged to give honest and complete information when recommending a purchase or sale," is inapplicable here because the Silvercreek Plaintiffs fail to allege with particularity that any Credit Suisse or Merrill Lynch broker made any such recommendation (*see supra* Part I.A.1), let alone that they gave less than complete and truthful information when doing so.

**B.** **The Silvercreek Plaintiffs Fail To State a Claim for Aiding and Abetting Negligent Misrepresentation.**

"There is no cause of action for aiding and abetting negligence or negligent misrepresentation in New York." *King Cty., Wash. v. IKB Deutsche Industriebank AG,* 863 F. Supp. 2d 288, 315 (S.D.N.Y. 2012), *revised*, 2012 WL 11896326 (S.D.N.Y. Sept. 28, 2012).  No reported New York case has recognized a cause of action for aiding and abetting negligent misrepresentation.  As a result, like in *Kings County*, the aiding and abetting negligent misrepresentation claim must be dismissed.  863 F. Supp. 2d at 315.

In any event, the Silvercreek Plaintiffs fail to allege any facts that would give rise to the Financial Institutions' liability for aiding and abetting negligent misrepresentation.  "For an aiding and abetting claim to survive a motion to dismiss, a plaintiff must adequately plead the existence of a primary tort." *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 186 (S.D.N.Y. 2009).  For the reasons set forth above, the Silvercreek Plaintiffs have not alleged negligent misrepresentation on the part of any Financial Institution.  (*See supra* Part IV.A.)  In addition, if aiding and abetting negligent misrepresentation were a valid cause of action in New York, the elements of such a claim presumably would mirror those for aiding and abetting fraud, and the Silvercreek Plaintiffs' claim for aiding and abetting negligent misrepresentation would fail for the same reasons their claim for aiding and abetting fraud fails, as discussed above.  (*See supra* Part I.B.)

**V.    THE SILVERCREEK PLAINTIFFS' TEXAS SECURITIES ACT CLAIM (COUNT NINE) IS PRECLUDED BY NEW YORK LAW AND, IN ANY EVENT, FAILS TO STATE A CLAIM.**

**A.    The Texas Securities Act Claim Is Precluded by New York Law.**

Because the Silvercreek Plaintiffs' claims are governed by New York law, New York's Martin Act precludes their Texas Securities Act ("TSA") claim.[20]  In *Westboro Properties I*, the Enron MDL Court dismissed the TSA claim after determining that New York had the most significant relationship to the issues in dispute and that New York substantive law should govern plaintiffs' claims to the exclusion of the TSA because it conflicted with the Martin Act.  761 F. Supp. 2d at 574.  Likewise, under this Court's prior rulings, where there is no basis for the application of Texas law, a TSA claim should be dismissed.  *See Pinnacle Oil v. Triumph Okla. Ltd. P'ship*, No. 93 Civ. 3434, 1997 WL 362224, at *2 (S.D.N.Y. June 27, 1997) (dismissing TSA claim where injuries not incurred in Texas and New York law applies).

Here, the Silvercreek Plaintiffs themselves have acknowledged that New York law applies to their claims.  Moreover, there are no Texas plaintiffs, no allegations of any conduct by the Financial Institutions in Texas, and no allegations that any injury to the Silvercreek Plaintiffs occurred in Texas.  As such, the Court should dismiss the TSA claim as precluded by New York's Martin Act (N.Y. Gen. Bus. Law § 352-c), which provides no private right of action.  The Enron MDL Court recognized the inherent conflict between these two statutes and held that where New York law governs an action, it does so to the exclusion of the TSA.  *See Westboro Props. I*, 761 F. Supp. 2d at 521, 574 ("[B]ecause New York's Blue Sky Law, the Martin Act, does not permit private causes of action for securities fraud, it conflicts with the TSA, Texas' Blue Sky Law.").

---

[20] Count Nine is asserted against all defendants except Merrill Lynch.

**B.**     **Even if the Texas Securities Act Applied Here, the Silvercreek Plaintiffs Fail To State a Claim.**

Even if the TSA were available to the Silvercreek Plaintiffs here (which it is not), they also fail adequately to allege the facts the statute would require for a claim.  The Silvercreek Plaintiffs seek to hold Deutsche Bank and Credit Suisse liable for aiding and abetting under the TSA in connection with the sale of the Zero Notes in the public offering.  (TAC ¶¶ 920, 922-23.) Plaintiffs make the bare, conclusory assertion that Deutsche Bank and Credit Suisse sold the Zero Notes in that registered offering, but fail to allege any facts to support this explicit predicate for their alleged TSA claim.  (*Id.*)  Plaintiffs then proceed to fail to allege other facts that would also be necessary to support such a cause of action.  To establish aiding and abetting liability under Article 581-33F(2) of the TSA, a plaintiff must allege:  (a) the existence of a primary violation of the securities law; (b) that the aider has a general awareness of its role in the violation; (c) that the aider gave substantial assistance in the violation; and (d) that the aider intended to deceive the plaintiff or acted with reckless disregard for the truth of the representations made by the primary violator.  *Regents I*, 235 F. Supp. 2d at 568.

*First*, the Silvercreek Plaintiffs do not adequately allege the existence of a primary violation of the securities law.  "Under Article 581–33A(2) [of the TSA], a primary violator is a person who offers or sells a security . . . by means of an untrue statement of material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made not misleading."  *See In re Enron Corp. Sec., Derivative & "ERISA" Litig. (ANICO v. Arthur Andersen, LLP)*, 762 F. Supp. 2d 942, 974-75 (S.D. Tex. 2010).  As explained above, the Silvercreek Plaintiffs fail to allege the presence of any actionable misstatement by Enron in offering the registered Zero Notes to Plaintiffs.  (*See supra* Part I.A.)  Because the Silvercreek Plaintiffs do not state a primary claim under the TSA,

their aiding and abetting claim against Credit Suisse and Deutsche Bank must fail.  *See ANICO v. Arthur Andersen, LLP*, 762 F. Supp. 2d at 1021 (Enron MDL Court dismissing a claim against an alleged primary violator where the plaintiff failed to "point to specific misleading statements or identify material omissions").

  *Second*, the Silvercreek Plaintiffs do not (because they cannot) allege with particularity that Deutsche Bank or Credit Suisse substantially assisted Enron with any alleged misstatement in the public offering.  It is clear from the Third Amended Complaint that Enron— not the Financial Institutions—was responsible for preparing Enron's financial statements, with its accountants, and for drafting and disseminating the Registration Statement and Prospectus for the Zero Notes.[21]  (*See supra* Part I.B.)  The Silvercreek Plaintiffs' failure to allege substantial assistance in the registered offering with particularity by either Credit Suisse or Deutsche Bank is fatal to their TSA claim.

  *Third*, Plaintiffs have set forth no facts that show either Credit Suisse or Deutsche Bank had any "general awareness of its role in" a securities violation in connection with that public offering (they had none), or that show scienter for either of those alleged aiders and abettors under the TSA.  (*See supra* Part I.B.)  For each of these failings, the TSA claim for aiding and abetting should be dismissed.

## VI. THIS COURT SHOULD DISMISS THE THIRD AMENDED COMPLAINT WITH PREJUDICE AND WITHOUT LEAVE TO AMEND.

  The Silvercreek Plaintiffs' numerous pleading failures are particularly egregious in light of the fact that this is their fourth complaint against the Financial Institution Defendants

---

[21] Indeed, to the extent that the latter, registered offering documents incorporated Enron's financial statements by reference, as Plaintiffs allege (TAC ¶ 917), they merely referenced Enron information that Plaintiffs concede they obtained and considered separately.  (TAC ¶¶ 106, 110.)

and that the Silvercreek Plaintiffs' current pleading was drafted with the benefit of extensive discovery and years' worth of case law in the *Enron* litigation.  Thus, the Court should dismiss with prejudice the Complaint against the Financial Institution Defendants and deny further leave to amend.  *See, e.g.*, *Halebian v. Berv*, 869 F. Supp. 2d 420, 436-37 (S.D.N.Y. 2012); *Intesa Sanpaolo*, 2013 WL 4856199, at *6; *Krys*, 749 F.3d at 135.

## Conclusion

For the reasons set forth above, the Financial Institutions respectfully request that the Court dismiss with prejudice all claims against the Financial Institutions in the Silvercreek Plaintiffs' Third Amended Complaint.

August 5, 2016

Respectfully submitted,


By:   /s/ Richard W. Clary
        Richard W. Clary
        David H. Korn
        CRAVATH, SWAINE & MOORE LLP
        Worldwide Plaza
        825 Eighth Avenue
        New York, New York 10019
        Telephone: (212) 474-1000
        Facsimile: (212) 474-3700
        Email: rclary@cravath.com

        *Attorneys for Defendants*
        *Credit Suisse First Boston (USA), Inc. (n/k/a*
        *Credit Suisse (USA), Inc.),*
        *Credit Suisse First Boston LLC (n/k/a Credit*
        *Suisse Securities (USA) LLC) and*
        *Pershing LLC (f/k/a Donaldson, Lufkin &*
        *Jenrette Securities Corp.)*


By:   /s/ Adam S. Hakki (with consent)
        Adam S. Hakki
        Daniel Lewis
        James Lee
        SHEARMAN & STERLING LLP
        599 Lexington Avenue
        New York, New York 10022
        Telephone: (212) 848-7216
        Facsimile: (646) 858-7216
        Email: ahakki@shearman.com

        *Attorneys for Defendant*
        *Merrill Lynch & Co., Inc.*

By:    /s/ Ruth E. Harlow (with consent)
       Ruth E. Harlow
       Linda Regis-Hallinan
       PEPPER HAMILTON LLP
       620 Eighth Avenue, 37th Floor
       New York, New York 10018
       Telephone: (212) 808-2700
       Facsimile: (212) 286-9806
       Email: harlowr@pepperlaw.com

       *Attorneys for Defendants*
       *Deutsche Bank Alex. Brown, Inc.(n/k/a*
       *Deutsche Bank Securities Inc.) and*
       *Deutsche Bank AG*

TO ALL COUNSEL OF RECORD

Via ECF