**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |  |
|---|---|---|
| SILVERCREEK MANAGEMENT, INC., *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | 02-CV-8881 (JPO) |
| | : | |
| CITIGROUP, Inc., *et al.*, | : | |
| | : | |
| Defendants. | : | |

---

**THE DEUTSCHE BANK DEFENDANTS' SEPARATE MEMORANDUM OF LAW IN**
**SUPPORT OF THE FINANCIAL INSTITUTIONS' JOINT MOTION**
**TO DISMISS THE SILVERCREEK PLAINTIFFS' THIRD AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ........................................................................... 1

ARGUMENT ........................................................................................................ 4

I.  Plaintiffs' Claims About the Purported Aiding of an Enron Fraud Fail To
    Adequately Plead Actual Knowledge and Substantial Assistance of Any Such
    Fraud by DBAG or DBSI ............................................................................... 4

    A.  The TAC Contains No Factual Allegations That Show Actual Knowledge
        at DBAG or DBSI That Enron Was Committing a Fraud on Plaintiffs .................. 4

    B.  The TAC Fails To Allege Facts Showing That Deutsche Bank Interactions
        With Enron In Tax Transactions, Investments, or Otherwise Proximately
        Caused Plaintiffs' Losses From Enron's Registered Notes .................................. 8

II. Plaintiffs Do Not State Facts Sufficient To Show That DBSI or DBAG Was an
    Underwriter of the Registered Securities They Bought, and Therefore Their
    Section 11 Claim Fails ................................................................................. 12

CONCLUSION ..................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MD 1529, 2007 U.S. Dist. LEXIS 66911 (S.D.N.Y. Sept. 10, 2007).................................................14, 15

*In re Agape Litig.*, 773 F. Supp. 2d 298 (E.D.N.Y. 2011)...........................................7

*American High-Income Trust v. AlliedSignal*, 329 F. Supp. 2d 534 (S.D.N.Y. 2004).................14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).....................................................5, 12, 14, 15

*Berman v. Morgan Keegan & Co., Inc.*, No. 10 Civ. 5866, 2011 U.S. Dist. LEXIS 27867 (S.D.N.Y. March 14, 2011)..................................................................4, 5

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)....................................13

*Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452 (S.D.N.Y. 2001) ............................8, 9

*In re Enron Corp. Sec., Derivative & "ERISA" Litig. (Newby)*, 310 F. Supp. 2d 819 (S.D. Tex. 2004)....................................................................................10

*In re Enron Corp. Sec., Derivative & "ERISA" Litig. (Westboro I)*, 761 F. Supp. 2d 504 (S.D. Tex. 2011)..................................................................................6

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994)...................9

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349 (S.D.N.Y. 2007) ......................................................................................4

*Harbinger Capital Partners LLC v. Ergen*, 504 B.R. 321 (Bankr. S.D.N.Y. Nov. 21, 2013) ......................................................................................6

*Krys v. Pigott*, 749 F.3d 117 (2d Cir. 2014) ............................................4, 5

*In re Lehman Bros. Mortgage-Backed Sec. Litig.*, 650 F.3d 167 (2d Cir. 2011) .........................12

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006) ...........................................5

*In re Livent Noteholders Sec. Litig.*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001) ...............................13

*In re Morgan Stanley Information Fund Sec. Litig.*, 592 F.3d 347 (2d Cir. 2010)......................12

*Nathel v. Siegal*, 592 F. Supp. 2d 452 (S.D.N.Y. 2008) ...........................................7

*Naughright v. Weiss*, 826 F. Supp. 2d 676 (S.D.N.Y. 2011).......................................6

*In re Refco Sec. Litig.*, 503 F. Supp. 2d 611 (S.D.N.Y. 2007) ......................................................13

*Rosner v. Bank of China*, 349 F. App'x 637 (2d Cir. 2009) ...........................................................7

*In re Safety-Kleen*, No. C/A 3:00-1145-17, 2002 WL 32349819 (D.S.C. Mar. 27, 2002)............13

*SPV OSUS Ltd. v. AIA LLC*, No. 15-cv-619, 2016 U.S. Dist. LEXIS 69349 (S.D.N.Y. May 24, 2016) ....................................................................................................................8, 9, 11

*VTech Holdings, Ltd. v. PricewaterhouseCoopers, LLP*, 348 F. Supp. 2d 255 (S.D.N.Y. 2004) ...............................................................................................................................................7

## STATUTES & RULES

Fed. R. Civ. P. 8 ..................................................................................................................................12

Fed. R. Civ. P. 9(b) ................................................................................................................... passim

Fed. R. Civ. P. 12(b)(6)................................................................................................................3, 13

15 U.S.C. § 77k(a)(5) .................................................................................................................13, 14

15 U.S.C. § 77b(a)(11) ......................................................................................................................14

Deutsche Bank AG ("DBAG") and Deutsche Bank Alex. Brown Inc. (now known as Deutsche Bank Securities Inc.) ("DBSI") submit this memorandum of law in further support of the Financial Institutions' joint motion to dismiss the Silvercreek Plaintiffs' Third Amended Complaint ("TAC"), and respectfully request dismissal of all counts alleged against the two Deutsche Bank defendants (together, "Deutsche Bank").[1]

In addition to participating in the Financial Institutions' joint filings, DBAG and DBSI provide this separate brief to focus on specific failures of Plaintiffs' pleading, with regard to the claims of aiding and abetting fraud (Count One) and purported liability as a statutory underwriter under Section 11 of the Securities Act (Count Six), that necessitate the Deutsche Bank parties' dismissal.  For the reasons explained in the Joint Memorandum, the claims of conspiracy (Count Two), aiding and abetting negligent misrepresentation (Count Three), and a Texas Securities Act violation (Count Nine) also should be dismissed as against each Deutsche Bank defendant.  The TAC's five other causes of action are not alleged against Deutsche Bank.

## INTRODUCTION AND SUMMARY

Almost 15 years have passed since Enron's bankruptcy filing, and in that intervening period of time numerous lengthy reports have been written, looking back on that event and examining with hindsight and exhaustive investigative efforts what may have happened.  *See* TAC at 1.  Some of the theories and accusations in the *post hoc* material about Enron have since been substantiated with fact, and others have not.  Similarly, the related demise of Arthur Andersen and other historical events since 2001 have provoked exhaustive, new examination of accounting practices and financial reporting.  Yet Plaintiffs' Third Amended

---

[1] Unless otherwise defined here, this brief uses the same definitions for capitalized terms as used in the Financial Institutions' Joint Memorandum of Law in Support of their Joint Motion to Dismiss the Silvercreek Plaintiffs' Third Amended Complaint ("Joint Memorandum" or "Joint Mem.").

Complaint, filed in 2011, tries to sidestep or reverse this historical timeline.  The TAC repeatedly takes an impermissible, after-the-fact perspective in trying to impose liability on Deutsche Bank and other third-party financial institutions for Enron's pre-bankruptcy accounting now that Enron and its accounting firm are both gone.

In particular, the TAC attempts to bypass the requirement that, in order to claim aiding and abetting by a financial institution that did business with Enron prior to its bankruptcy, Plaintiffs must allege specific facts to show that relevant individuals at that financial institution actually knew about a well-pled Enron fraud *then*, when the alleged fraud was occurring, and that the financial institution knowingly acted *then* to substantially advance that fraud to the detriment of Plaintiffs.  *See* Joint Mem. at 20-21.

First, despite its length and despite the fact that extensive fact discovery has long since been completed in this case, the TAC does not allege facts supporting the actual knowledge of Enron fraud in any individual at DBAG or DBSI.  All of Plaintiffs' knowledge-related allegations regarding "Deutsche Bank" are conclusory.  *See, e.g.,* TAC ¶¶ 363, 470.  Moreover, those conclusory allegations improperly lump together the two different Deutsche Bank corporate entities, and place knowledge in neither one.  In many instances, the TAC attempts to plead knowledge in that improper, undifferentiated fashion for an even larger group – all the "Bank Defendants," *see, e.g.,* TAC ¶¶ 269, 272.

Second, the TAC also fails to allege facts that satisfy the substantial assistance requirement – that is, that DBAG or DBSI proximately caused Plaintiffs' alleged losses by directly and foreseeably aiding Enron in committing fraud through erroneous Enron financial statements referenced in connection with Plaintiffs' Enron note purchases.  Plaintiffs' voluminous paragraphs describing tax transactions, investments, or share-trust offerings fail to

allege facts showing substantial assistance by either Deutsche Bank defendant, because the TAC does not factually and directly connect any Deutsche Bank actions to Plaintiffs' alleged losses.

Similarly, Plaintiffs rely on conclusory assertions, not backed by any sufficiently alleged facts, to make Section 11 claims against both Deutsche Bank defendants based on a purported role as a statutory underwriter for the registered Zero Coupon Notes that Plaintiffs purchased.  The TAC includes a bare assertion that "Deutsche Bank" sold notes in the public offering, *see* TAC ¶¶ 149, 922, to attempt to establish a necessary component of the claim, but there are no facts set forth to support that assertion.  DBSI did act as an initial purchaser in the separate, earlier *private placement offering* of the Zero Notes in February 2001, but it is not alleged to have sold (and did not sell) any of those private placement notes to Plaintiffs.  Only the later *public offering* was made pursuant to a registration statement, filed with the Securities and Exchange Commission ("SEC") in July 2001, and only the public offering and sales of the registered securities could give rise to Section 11 liability.  No facts alleged indicate that DBSI or DBAG sold any Zero Coupon Notes under Enron's Registration Statement to Plaintiffs or anyone else. The Section 11 claim lacks an essential factual predicate and should be dismissed.

These missing facts for the aiding-fraud and Section 11 claims against DBAG and DBSI, like the other holes in Plaintiffs' pleading established in the Joint Memorandum, occur here (as noted above) after expansive discovery has already taken place in the Enron multi-district litigation before the Southern District of Texas ("MDL").  Plaintiffs have had every opportunity to ascertain facts to adequately plead their claims, and have not done so.  Under Rule 12(b)(6) and federal pleading standards, Plaintiffs should not be allowed to continue to attempt to hold DBAG and DBSI responsible for alleged losses in Enron's notes based only on broad-

brushstroke, hindsight assertions in a prolix TAC that lacks the necessary specific facts.

Therefore, this Court should dismiss all claims against the Deutsche Bank parties with prejudice.

## ARGUMENT

I.    **PLAINTIFFS' CLAIMS ABOUT THE PURPORTED AIDING OF AN ENRON FRAUD FAIL TO ADEQUATELY PLEAD ACTUAL KNOWLEDGE AND SUBSTANTIAL ASSISTANCE OF ANY SUCH FRAUD BY DBAG OR DBSI**

A plaintiff asserting aiding and abetting fraud must plead each of the three

elements of that claim:  (1) the underlying fraud; (2) the defendant's knowledge of that fraud;

and (3) that the defendant provided substantial assistance to advance the fraud's commission.

*See Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014); Joint Mem. at 18-19.  Moreover, the

Silvercreek Plaintiffs' pleading of each element of the TAC's fraud, aiding and abetting fraud,

and other asserted claims sounding in fraud must all satisfy the rigorous pleading standard of

Rule 9(b).  *See* Joint Mem. at 2, 6.  As shown in the Joint Memorandum, the Plaintiffs have

failed to adequately allege an underlying Enron fraud.  Joint Mem. at 19-20.  Even if they had,

however, Plaintiffs' aiding-fraud allegations against the Deutsche Bank defendants are also

insufficient because they do not include facts that show actual knowledge of the fraud at, or its

substantial assistance by, either DBAG or DBSI.

### A.    The TAC Contains No Factual Allegations That Show Actual Knowledge At DBAG Or DBSI That Enron Was Committing A Fraud On Plaintiffs

The pleading "burden of demonstrating actual knowledge, although not

insurmountable, is nevertheless a heavy one."  *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt.,*

*LLC*, 479 F. Supp. 2d 349, 367 (S.D.N.Y. 2007) (citation omitted).  To satisfy the knowledge

element for aiding and abetting fraud, a plaintiff must allege "specific 'facts giving rise to a

strong inference of actual knowledge regarding the underlying fraud.'"  *Berman v. Morgan*

*Keegan & Co., Inc.*, No. 10 Civ. 5866, 2011 U.S. Dist. LEXIS 27867, at *27 (S.D.N.Y.  March

14, 2011) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 293 (2d Cir. 2006)).

   In the face of their heavy "actual knowledge" pleading burden, Plaintiffs offer an

extraordinary and wholly conclusory three-page chart in the TAC.  TAC ¶ 363.  The chart

purports to list numerous Deutsche Bank employees "who knew that the Tax Transactions

violated tax laws or GAAP."  *Id*.  The chart, however, simply lists each employee's participation

in work with respect to certain transactions.  *Id*.  Neither the chart, nor any of the TAC

paragraphs surrounding it, conveys any facts to support that DBAG, DBSI or their employees

knew about any tax law or accounting errors, including any purported violation of the "business

purpose rule," much less knew about purposeful wrongdoing under the tax laws or GAAP.  TAC

¶¶ 360-370.  Nor, beyond that, as is required for the knowledge element of Plaintiffs' aiding and

abetting claim, does the chart or do any other TAC paragraphs convey any facts that might show

knowledge at DBAG or DBSI of any Enron use of the Tax Transactions discussed in Plaintiffs'

TAC to commit accounting fraud on Enron note investors.  TAC ¶ 363.

   In any complaint, this Court does not accept as true "a legal conclusion couched

as a factual allegation," nor does it accept as true "allegations that are wholly conclusory," and

that requirement of non-conclusory pleading is even more stringent in the context of Rule 9(b)

and efforts to hold a third-party responsible for another's fraud.  *See Krys*, 749 F.3d at 128 & n.4

(citing, *inter alia*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).  An alleged aider and abettor

"'should not be called to account for the intentional tort of another unless the circumstances of

his connection therewith can be alleged in detail from the outset.'"  *Id.* at 127-128 (citation

omitted).  This case is well beyond the "outset," after multiple pleading attempts and wide

discovery.  Yet, in the TAC's chart and its similar repeated incantations that "Deutsche Bank had

direct knowledge," Plaintiffs have not set forth any facts – as distinguished from bare assertions and conclusions – that support actual knowledge at DBAG or DBSI, at the time it worked with Enron pre-bankruptcy, that Enron was using its financial statements to commit fraud on its note investors. *See* TAC ¶¶ 363, 470, 473.

Plaintiffs' efforts to avoid that requirement and to substitute some lesser pleading are each unavailing. First, the Court must set aside each one of the global allegations that all of "the Bank Defendants" knew, or "the Bank Defendants" acted in a certain fashion according to Plaintiffs' allegations. *See, e.g.,* TAC ¶¶ 267-275. Such pleading against the "Bank Defendants" collectively lacks the particularity required by Rule 9(b) and presents sweeping conclusions that Plaintiffs do not support with facts as to DBAG or DBSI anywhere in the TAC.[2]

Second, conclusory language or opinions from *post hoc* Congressional investigations, the Enron bankruptcy examiner, or other observers also cannot substitute for facts regarding the relevant time and each defendant. *See, e.g.,* TAC ¶¶ 267, 269. As the MDL Court underscored, "it is irrelevant what … any other authority said in another suit or a report about the collapse of Enron." *In re Enron Corp. (Westboro I)*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011). What is at issue here is whether the TAC alleges enough non-conclusory and particularized facts to adequately state the Silvercreek Plaintiffs' claims against DBAG and DBSI. It does not.

Third, Plaintiffs cannot properly substitute – for the necessary, defendant-specific facts showing actual knowledge of fraud – facts that instead show only that Deutsche Bank

---

[2] *See Naughright v. Weiss*, 826 F. Supp. 2d 676, 689 (S.D.N.Y. 2011) (Rule 9(b) requires plaintiff to differentiate his allegations as to each defendant); *Harbinger Capital Partners LLC v. Ergen*, 504 B.R. 321, 356 (Bankr. S.D.N.Y. Nov. 21, 2013) (the particularity requirement is not met by allegations against the "Ergen Defendants"). Indeed, as Plaintiffs concede, DBAG is incorporated under German law, headquartered in Frankfurt, Germany, and has many different subsidiaries. TAC ¶ 17. But Plaintiffs then ignore distinct corporate entities and attempt to place liability in DBAG without *any* specific allegations against it. Similarly, the TAC's only specific identification of DBSI is with regard to a private securities offering that cannot support any liability here. *See infra* Part II. Much more is required in a complaint that asserts involvement in fraud and follows exhaustive discovery.

personnel were aware, for example, that certain Enron tax or structured transactions were designed to achieve financial accounting benefits, or that Enron was relying on "aggressive" interpretations of tax law or accounting rules.  Knowledge of Enron's purpose of realizing financial accounting benefits, a common business goal, does not even establish knowledge that those accounting benefits were improper or that they adversely affected Enron note investors, much less that they were part of an intentional Enron fraud.  Here, Plaintiffs themselves portray Enron's approach to the Tax Transactions as merely "questionable," "risky," or "aggressive." TAC ¶¶ 367, 390, 408.  Such characterizations do not identify fraud, and certainly do not plead fraud known at the time by DBAG or DBSI.  *See Rosner v. Bank of China*, 349 F. App'x 637, 638-39 (2d Cir. 2009) (a questionable transaction is not sufficient to show actual knowledge of fraud).  Likewise, pointing to questions that Deutsche Bank posed to Enron, or a decision at one point to reduce Deutsche Bank credit exposure to Enron, TAC ¶¶ 462-468, references ordinary business activities or decisions, and is far from pleading actual knowledge of fraud.

Plaintiffs apparently string together such allegations in the TAC to attempt to imply suspicions at "Deutsche Bank," or that the Deutsche Bank entities "should have known" that Enron was committing a fraud on investors through Enron's accounting for tax or other transactions.  But it is well-established that constructive knowledge, or what a defendant should have known, is not enough for the knowledge element of aiding and abetting under New York law.  *Rosner*, 349 F. App'x at 639-40; *In re Agape Litig.*, 773 F. Supp. 2d 298, 308 (E.D.N.Y. 2011); *VTech Holdings, Ltd. v. PricewaterhouseCoopers, LLP*, 348 F. Supp. 2d 255, 269 (S.D.N.Y. 2004).  Allegations that a defendant ignored warning signs of fraud or notice of red flags are also not sufficient to adequately plead actual knowledge of fraud.  *In re Agape Litig.*, 773 F. Supp. 2d at 310; *Nathel v. Siegal*, 592 F. Supp. 2d 452, 469 (S.D.N.Y. 2008).

The Silvercreek Plaintiffs thus have pled no facts regarding the tax transactions that allow those to be used to support a *knowing* state of mind at DBAG or DBSI.  Plaintiffs' allegations are even more sparse as to any purported DBAG or DBSI knowledge of an Enron fraud on the 7% Exchangeable or Zero Coupon note investors in connection with LJM2 or a role as initial purchaser in the share trust transactions.  Indeed, Plaintiffs' own pleading identifies an entity known as BT Investment Partners or Deutsche Bank individual "executives," and not either Deutsche Bank defendant, as the investors in LJM2, *see* TAC ¶¶ 356, 437, and the TAC never sets forth facts to show any LJM2-related knowledge of fraud in either those non-defendant investors or in DBAG or DBSI.  For Deutsche Bank's routine investment banking services in connection with Osprey, Marlin and similar transactions, Plaintiffs allege nothing more than conclusory assertions of "awareness" – typically, asserted awareness of Enron actions or goals that fall well short of fraud.  *See, e.g.,* TAC ¶ 454.  Such assertions are plainly insufficient under Rule 9(b) to plead the actual knowledge of Enron fraud in either DBAG or DBSI prior to the Silvercreek Plaintiffs' note purchases and Enron's bankruptcy.

**B.      The TAC Fails To Allege Facts Showing That Deutsche Bank Interactions With Enron In Tax Transactions, Investments, Or Otherwise Proximately Caused Plaintiffs' Losses From Enron's Registered Notes**

Plaintiffs' aiding and abetting fraud allegations against Deutsche Bank also fail because Plaintiffs have not pled facts that show that DBAG or DBSI provided any substantial assistance to Enron in any way that proximately caused Plaintiffs' alleged losses.  The element of "[s]ubstantial assistance requires the plaintiff to allege that the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated."  *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001); *see also SPV OSUS Ltd. v. AIA LLC*, No. 15-cv-619, 2016 U.S. Dist. LEXIS 69349, at *19 (S.D.N.Y. May 24, 2016).

To plead proximate cause, Plaintiffs cannot rely on "but for" causation; they must instead allege facts – with sufficient particularity under Rule 9(b) – to show that DBAG's or DBSI's alleged conduct directly and reasonably foreseeably caused their injuries.  *SPV OSUS Ltd.,* 2016 U.S. Dist. LEXIS 69349, at *19; *Cromer,* 137 F. Supp. 2d at 470; *see also First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 772 (2d Cir. 1994) (plaintiff's "claims fail because it has not adequately pled facts which, if proven, would show that its loss was caused by" the alleged transactions "as opposed to intervening events").

The TAC does not set forth any facts that might show proximate causation by DBAG or DBSI, rather than causation by separate intervening events.  Here, Plaintiffs themselves explain that shortly after their purchases in October 2001, Enron restated its financials (following on the heels of its $1 billion charge, which preceded Plaintiffs' purchases) and Enron's demise in bankruptcy "followed swiftly," TAC ¶¶ 2-3, with the effect that "Silvercreek lost substantially its entire investment in a matter of weeks," TAC  ¶ 471.  But other than conclusory statements of assistance and "responsibility," *see id.,* that must be set aside, Plaintiffs do not (and cannot) allege facts to support the notion that any knowing actions by Deutsche Bank to aid an alleged Enron fraud directly and foreseeably caused those quick losses.  For example, the TAC alleges no facts – as opposed to bare conclusions – that might show that Enron's Tax Transactions played any role in Enron entering bankruptcy or in causing low recoveries for Silvercreek on its Enron debt.

Indeed, the Tax Transactions have never been the subject of any Enron accounting restatements or after-the-fact disclosures about Enron's alleged past deception, in the fall of 2001 or otherwise.  And as Plaintiffs' own allegations show, the Tax Transactions were of a markedly different nature than the hidden debt and business failures that plunged Enron into insolvency, and instead involved the recognition of what Plaintiffs term "speculative" future tax deductions.  *See, e.g.,* TAC ¶ 399.  Moreover, as the MDL Court recognized and the TAC

underscores, the Tax Transactions were not even discussed publicly in any commentary on

Enron until May 2002.  TAC ¶ 260, *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*

*(Newby)*, 310 F. Supp. 2d 819, 838 (S.D. Tex. 2004).  And as the TAC reveals, Silvercreek had

sold all of its Zero Coupon Notes by January 2002.  TAC, Ex. A.  Silvercreek had sold most of

its 7% Exchangeable Notes by that date as well, and for those few Exchangeable Notes that were

sold after mid-2002, the price that Silvercreek received actually rose from levels earlier in 2002;

thus, as information about the Tax Transactions entered the marketplace, that information had no

negative effect on recoveries for Silvercreek.  *See* TAC, Ex. A (Plaintiffs' stated sales prices).

   In addition, Plaintiffs' TAC not only lacks facts that might show direct causation,

but also fails to allege facts that might be sufficient to show that DBAG or DBSI could have

reasonably foreseen material fraudulent misstatements to investors by Enron regarding the Tax

Transactions, if indeed there were any, to investors' detriment.  As discussed above, the TAC is

devoid of facts showing that anyone at Deutsche Bank knew at the time of the Tax Transactions

or at any time before Enron's bankruptcy that those transactions failed to comply with

governing tax law and that Enron might have accounted for, or disclosed, their effects

improperly.  Plaintiffs fail to allege any basis to establish that fraud on investors was

foreseeable from these transactions, which were – as Plaintiffs' admit – supported by formal tax

opinions, *see, e.g.,* TAC ¶¶ 394, 426.  As all the above context from the TAC itself underscores,

Plaintiffs have not pled facts to show that the Tax Transactions proximately caused their harm,

and instead have alleged numerous facts that run contrary to that assertion.

   While the Tax Transactions are the centerpiece of Plaintiffs' attempt to plead

claims against the Deutsche Bank defendants, Plaintiffs also mention what they term "tax

accommodation transactions," which they admit did not have any significant effect on Enron,

TAC ¶ 433; an investment of $10 million by BT Investment Partners, *not* either named Deutsche Bank defendant, in LJM2, TAC ¶ 437; and "Deutsche Bank" participating in the private placement of securities for entities known as the Osprey and Marlin share trusts, TAC ¶¶ 444, 453.  With these allegations as well, Plaintiffs fail to set forth facts that might establish a direct, proximate connection between any activities of DBAG or DBSI related to these investments or private placement efforts for share trust securities and the causation of Plaintiffs' alleged losses on the Enron Zero Coupon and 7% Exchangeable Notes.  Plaintiffs bought all those notes from others, *not* from either DBAG or DBSI, and the TAC does not even attempt to allege otherwise.

At most, Plaintiffs' alleged case against "Deutsche Bank" presents "but for" causation, and the general notion that as a "Tier 1 Enron bank" that assisted with tax-related transactions, with investments, and as an initial purchaser in private offerings, Deutsche Bank helped keep Enron's complex operations going – and thus Enron could commit fraud.  TAC ¶ 462.  Such alleged "but for" causation, however, is legally insufficient.  *SPV OSUS Ltd.*, 2016 U.S. Dist. LEXIS 69349, at *19 (emphasizing that it is insufficient "but for" causation to plead that without the defendant's assistance, another party would not have been able to implement or continue a fraud, particularly where the defendant had no direct interaction with the plaintiff).

For all these reasons, Plaintiffs' TAC does not adequately allege facts that state an aiding and abetting fraud claim against either DBAG or DBSI.[3]  Nor is there any reason to allow Plaintiffs a fifth attempt at pleading, given that the TAC here followed Plaintiffs' full fact discovery and came a decade after the events that Plaintiffs invoke.

---

[3] Moreover, the same lack of knowledge of and lack of connection to Enron's alleged fraud on the Silvercreek Plaintiffs that defeat this aiding and abetting fraud claim also underscore that no conspiracy claim (nor any aiding negligent misrepresentation claim, if it existed under New York law) can proceed against either Deutsche Bank party.  *See* Joint Mem. at 24-26.

## II.   PLAINTIFFS DO NOT STATE FACTS SUFFICIENT TO SHOW THAT DBSI OR DBAG WAS AN UNDERWRITER OF THE REGISTERED SECURITIES THEY BOUGHT, AND THEREFORE THEIR SECTION 11 CLAIM FAILS

Plaintiffs also have failed to plead facts that could establish that DBAG or DBSI was a statutory underwriter subject to liability under Section 11 of the 1933 Securities Act in connection with Plaintiffs' purchases of the Zero Coupon registered notes.  Their allegations in the Third Amended Complaint are insufficient to state a Section 11 cause of action against either Deutsche Bank defendant, *first* because DBSI's role as an initial purchaser in an earlier private offering – exempt from registration and sold only to qualified institutional buyers, not the public – cannot be merged with the later public offering to invoke Section 11 against the Deutsche Bank defendants, and *second* because merely labeling Deutsche Bank "an underwriter of the Zero Notes," TAC ¶ 472, and claiming that Deutsche Bank "resold" notes in the public registered offering, TAC ¶ 149, without any facts alleged that might support those bare assertions, constitutes conclusory pleading invalid under Rules 8 and 9(b).[4]

As the Second Circuit has emphasized, Section 11 "was designed to impose its exacting standards regarding the provision of accurate and complete information only on the people (or entities) responsible for distributing securities to the public, that is, on those engaged in the public offering."  *In re Lehman Bros. Mortgage-Backed Sec. Litig.*, 650 F.3d 167, 181 & n.20 (2d Cir. 2011); *In re Morgan Stanley Information Fund Sec. Litig.*, 592 F.3d 347, 358 & n.4 (2d Cir. 2010) (Section 11 "imposes liability on certain participants in a registered securities

---

[4] As shown in the Joint Memorandum, Plaintiffs' fraud-based Section 11 claim, like the aiding and abetting claim addressed above, must satisfy the particularized pleading requirements of Rule 9(b).  Joint Mem. at 26-27.  The Section 11 claim against DBAG and DBSI cannot possibly do so because it does not even offer sufficient well-pleaded facts to satisfy Rule 8(a).  Any pleading that merely offers labels or conclusions, or "naked assertions devoid of further factual enhancement," does not suffice.  *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).  Likewise, pleading facts that are "merely consistent with a defendant's liability" is not enough.  *Id.*  Plaintiffs at a minimum must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

offering when the publicly filed documents used during the offering contain material

misstatements"). Section 11 requires a plaintiff to trace a purchased security to a registered

offering, and subjects those who fit within the statutory definition of underwriter "with respect to

such security" sold under a registration statement to stringent liability for errors in that

document.  15 U.S.C. § 77k(a)(5).

The Silvercreek Plaintiffs, while admitting in the TAC that the Zero Coupon notes

were offered in two transactions, initially as a private placement and then, later, pursuant to a

registration statement, TAC ¶¶ 143, 150, impermissibly try to ignore the differentiation between

those two events.  But Section 11 does not apply to or impose liability on actors in private

offerings.  *See In re Livent Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 430-432 (S.D.N.Y.

2001) (dismissing Section 11 claims against banks whose only role related to earlier private

offering and who did not solicit or sell to plaintiffs under the later registration statement).  Courts

repeatedly have recognized that an earlier private offering and a later public offering maintain

their distinct nature, and are not merged.[5]  Thus, Plaintiffs cannot state a Section 11 cause of

action by using DBSI's role as an initial purchaser (what Plaintiffs call – contrary to that

offering's documentation – an "initial underwriter") in the earlier private placement[6] and

_____

[5] *See In re Refco Sec. Litig.*, 503 F. Supp. 2d 611, 627 (S.D.N.Y. 2007) (holding that Section 11 applies by its terms to registered offerings only, and rejecting an argument that a Rule 144A private placement and registered offering should be treated as one transaction); *In re Safety-Kleen*, No.  C/A 3:00-1145-17, 2002 U.S. Dist. LEXIS 26735, at *2-3 (D.S.C.  Mar. 27, 2002) (dismissing Section 11 claim and reasoning that there was no basis on which the Rule 144A private offering could be validly exempted from registration, yet somehow deemed part of the registered transaction for purposes of Section 11).

[6] The private placement Offering Memorandum is attached to the accompanying Declaration of Linda Regis-Hallinan as Ex. A.  Plaintiffs' TAC references this document in attempting to plead the Section 11 claim, *see, e.g., TAC ¶¶ 148, 882.  See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (documents integral to plaintiffs' pleading may be considered on Rule 12(b)(6) motion).  The Court can readily contrast this confidential offering memorandum, and DBSI's role as an initial purchaser in the private offering, with the later Registration Statement, *cf.* Korn Decl., Ex. 1.  Neither DBSI nor DBAG are identified as an underwriter in that Registration Statement, nor do they appear in any table of underwriters, with their compensation, as would be legally required if either filled such a role for the registered offering.  The Deutsche Bank defendants join the additional arguments showing no Section 11 liability to Plaintiffs that are set forth in Credit Suisse's Separate

somehow merging that with the later, distinct SEC-registered public offering. Instead, participation in the distribution of the registered security is required to be a statutory underwriter of "such security" and thus subject to Section 11 liability. 15 U.S.C. §§ 77k(a)(5), 77b(a)(11).

In order for Plaintiffs' Section 11 claim against Deutsche Bank to proceed here, Plaintiffs would at a minimum be required to have alleged facts showing that one of the Deutsche Bank entities, after purchasing Zero Coupon Notes from Enron, sold or otherwise acted to distribute those notes *under the Registration Statement to public purchasers*. Plaintiffs, however, have not alleged any facts to show that Deutsche Bank sold or distributed any Zero Coupon Notes after registration to any public purchasers.[7] Plaintiffs' bald assertion that each of the investment banks who served as initial purchasers under the private note offering held some and later "resold [notes] in the stage two public offering, once the registration statement for these Notes had become effective," TAC ¶ 149, is a mere "legal conclusion couched as a factual allegation" that this Court should not credit. *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted); *see also In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No.

---

Memorandum in Support of the Financial Institutions' Joint Motion to Dismiss the Silvercreek Plaintiffs' Third Amended Complaint at 3-6.

[7] In fact, the proper application of Section 11 in situations like this one – to owners who bought a security exempt from registration and then later had the potential to sell under a registration statement – requires that the owner sell the security *to the plaintiff* pursuant to the registration statement to be held liable as an underwriter. *See American High-Income Trust v. AlliedSignal*, 329 F. Supp. 2d 534, 542 (S.D.N.Y. 2004) (dismissing complaint where there was no allegation "that any Plaintiff purchased registered Bonds from NationsBanc or Prudential," the defendants). That is because such a prior-owning seller participates as a statutory "underwriter" only in the distribution of those particular registered securities actually sold by it to the public, and does not fit the definition of "underwriter" for sales of registered securities by others.

It is telling in this regard that Plaintiffs do not claim that all of the 89 different listed potentially "selling securityholders" identified in the Registration Statement's Prospectus and four supplements are jointly and severally liable to them. *See, e.g.,* July 2001 Registration Statement, Korn Decl., Ex. 1, at 44-45. Plaintiffs have instead selectively targeted the Deutsche Bank defendants as "deep pockets" that may have participated in, or otherwise owned exempt securities after, the earlier private offering – but that separate private offering is irrelevant to the issues under Section 11, which regulates the public purchaser sphere. The Court here, however, need not reach whether sale under the Registration Statement to the specific plaintiff before the Court is necessary, because the Silvercreek Plaintiffs have not alleged facts that show that DBAG or DBSI sold under the Registration Statement to *any* public purchaser, much less to the Silvercreek Plaintiffs.

03 MD 1529, 2007 U.S. Dist. LEXIS 66911, at *26-27 (S.D.N.Y. Sept. 10, 2007) (rejecting "bare pleading" that banks participated in the distribution of registered securities).

Likewise, Plaintiffs parrot statutory language and try to rely on the naked statement that various defendants including Deutsche Bank "purchased the Zero Notes with a view to the distribution of [the registered securities] and were underwriters of this [registered] offering."  TAC ¶ 153.  But Plaintiffs have alleged no facts with regard to DBSI or DBAG that support that conclusion.  "[M]ere conclusory statements[] do not suffice" to plead such an essential factual predicate of Section 11 liability.  *Iqbal*, 556 U.S. at 678.  Nor does being listed as one of dozens of "selling securityholders" who *may* from time to time (if at all) sell pursuant to the Registration Statement establish any such sales or any public distribution role.  *See* TAC ¶ 153; Korn Decl., Ex. A, July 2001 Registration Statement at 43-45.  As that phrasing indicates, any owner who purchased in the initial private placement could sell in an exempt transaction, even after the Registration Statement took effect, and was under no obligation to participate in the public offering.  *Id.*

Plaintiffs have now had four opportunities to plead, and filed this TAC after discovery.  Because Plaintiffs have not adequately alleged any facts in the TAC to show that DBAG or DBSI sold any Zero Coupon Notes in the registered offering, they will never be able to do so.  This faulty Section 11 claim should proceed no further.

## CONCLUSION

For all the foregoing reasons, as well as those argued in the Joint Memorandum, DBAG and DBSI respectfully request that the Court dismiss each of the claims in Plaintiffs' Third Amended Complaint asserted against the Deutsche Bank defendants, with prejudice.

Dated: August 5, 2016                     Respectfully submitted,

                                          By:      /s/ Ruth E. Harlow

Ruth E. Harlow
Linda Regis-Hallinan
PEPPER HAMILTON LLP
620 Eighth Avenue, 37th Floor
New York, New York 10018
Telephone: (212) 808-2700
Facsimile: (212) 286-9806
Email: harlowr@pepperlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 5th day of August, 2016, a true and correct copy of the foregoing was served on all counsel of record through the Southern District of New York CM/ECF electronic filing system.

/s/ Ruth E. Harlow