UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SILVERCREEK MANAGEMENT INC., *et al.*,

                      Plaintiffs,

  v.

CITIGROUP, INC., *et al.*,

                      Defendants

02-cv-08881-JPO

**CREDIT SUISSE'S SEPARATE MEMORANDUM OF LAW IN SUPPORT OF THE FINANCIAL INSTITUTIONS' JOINT MOTION TO DISMISS THE SILVERCREEK PLAINTIFFS' THIRD AMENDED COMPLAINT (ECF 10-115)**

**Table of Contents**

Table of Authorities ................................................................................................................... ii

Citation Conventions ................................................................................................................ iv

Statement of Facts ......................................................................................................................1

Argument ....................................................................................................................................2

I.   The Silvercreek Plaintiffs' Section 11 Claim (Count Six) Should Be
     Dismissed Because They Fail Adequately To Plead that Credit Suisse Was
     a Statutory Underwriter of the Zero Notes. ...................................................................2

II.  The Silvercreek Plaintiffs' New Section 12(a)(2) Claim (Count Eight)
     Should Be Dismissed Because The Statute of Repose Has Lapsed and
     Because the Silvercreek Plaintiffs' Allegations Fail To State a Claim. ..................6

     A.   The Silvercreek Plaintiffs' New Section 12(a)(2) Claim Is Barred
          by the Statute of Repose. ...............................................................................6

     B.   The Silvercreek Plaintiffs Fail Adequately To Plead Their Section
          12(a)(2) Claim, Which Sounds in Fraud, with the Requisite
          Particularity. ..................................................................................................10

Conclusion ................................................................................................................................10

...

## Table of Authorities

**Page(s)**

**Cases**

*American Pipe & Construction Co. v. Utah*,
   414 U.S. 538 (1974) ......................................................................................................... 7

*Bensinger v. Denbury Res. Inc.*,
   31 F. Supp. 3d 503, 511 (E.D.N.Y. 2014) ....................................................................... 9

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
   Civ. A. No. H-04-0088, 2005 WL 3704688 (S.D. Tex. Dec. 5, 2005) ............................. 3

*In re Enron Corp. Sec., Derivative & "ERISA" Litig. (Regents I)*,
   529 F. Supp. 2d 644 (S.D. Tex. 2006) ............................................................................. 8

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
   501 U.S. 350 (1991) ......................................................................................................... 7

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*,
   650 F.3d 167 (2d Cir. 2011) ............................................................................................. 2

*In re Lehman Bros. Sec. & ERISA Litig.*,
   681 F. Supp. 2d 495 (S.D.N.Y. 2010) .............................................................................. 3

*In re Lehman Bros. Sec. & ERISA Litig.*,
   799 F. Supp. 2d 258 (S.D.N.Y. 2011) .............................................................................. 9

*Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   597 F.3d 84 (2d Cir. 2010) ............................................................................................... 6

*McFarland v. Memorex Corp.*,
   493 F. Supp. 631 (N.D. Cal. 1980) ............................................................................. 3, 4

*Neuwirth Inv. Fund, Ltd. v. Swanton*,
   422 F. Supp. 1187 (S.D.N.Y. 1975) ................................................................................. 5

*P. Stolz Family P'ship L.P. v. Daum*,
   355 F.3d 92 (2d Cir. 2004) ............................................................................................ 7, 9

*Police & Fire Retirement System of City of Detroit v. IndyMac MBS, Inc.*,
   721 F.3d 95 (2d Cir. 2013) ........................................................................................ 7, 8, 9

*Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
   714 F. Supp. 2d 475 (S.D.N.Y. 2010) .............................................................................. 3

*In re Refco, Inc. Sec. Litig.*,
   No. 05 Civ. 8626 (GEL), 2008 WL 3843343 (S.D.N.Y. Aug. 14, 2008) ......................... 3

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004) ................................................................................................. 10

*S.E.C. v. N. Am. Research & Dev. Corp.*,
  280 F. Supp. 106 (S.D.N.Y. 1968) ........................................................................................... 3

*SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos.*,
  No. 14-507-CV, 2016 WL 3769735 (2d Cir. July 14, 2016) ..................................................... 7

*In re WorldCom, Inc. Sec. Litig.*,
  346 F. Supp. 2d 628 (S.D.N.Y. 2004) ..................................................................................... 4

*In re Worldcom, Inc. Sec. Litig. (Alameda Cnty. Emps.' Ret. Ass'n v. Ebbers)*,
  308 F. Supp. 2d 338 (S.D.N.Y. 2004) ..................................................................................... 4

*In re WorldCom Sec. Litig.*,
  496 F.3d 245 (2d Cir. 2007) ................................................................................................... 8

**Statutes & Rules**

15 U.S.C. § 77b ............................................................................................................................. 2

15 U.S.C. § 77k ..................................................................................................................... passim

15 U.S.C. § 77*l* .................................................................................................................... passim

15 U.S.C. § 77m ........................................................................................................................ 6, 7

28 U.S.C.A. § 2072(a) ................................................................................................................... 9

Federal Rule of Civil Procedure 9(b) .......................................................................................... 10

Federal Rule of Civil Procedure 15(c) .......................................................................................... 9

Federal Rule of Civil Procedure 23 .............................................................................................. 8

Rules Enabling Act, 28 U.S.C. § 2072(b) .................................................................................. 8, 9

**Other Authorities**

17 C.F.R. § 229.508(a) .................................................................................................................. 6

17 C.F.R. § 229.508(e) .................................................................................................................. 5

H.R. Rep. No. 85, 73d Cong., 1st Sess. 5 (1933) .......................................................................... 3

# Citation Conventions

**Entities**

"Financial Institutions":  Defendants Merrill Lynch & Co., Inc., Deutsche Bank Alex. Brown Inc. (n/k/a/ Deutsche Bank Securities Inc.), Deutsche Bank AG, Credit Suisse First Boston (USA), Inc. (n/k/a Credit Suisse (USA), Inc.), Credit Suisse First Boston LLC (n/k/a Credit Suisse Securities (USA) LLC) and Pershing LLC (f/k/a Donaldson, Lufkin & Jenrette Securities Corporation)

"Credit Suisse":  Credit Suisse First Boston (USA), Inc. (n/k/a Credit Suisse (USA), Inc.), Credit Suisse First Boston LLC (n/k/a Credit Suisse Securities (USA) LLC) and Pershing LLC (f/k/a Donaldson, Lufkin & Jenrette Securities Corporation)

"Deutsche Bank":  Deutsche Bank Alex. Brown Inc. (n/k/a/ Deutsche Bank Securities Inc.) and Deutsche Bank AG

"Merrill Lynch":  Merrill Lynch & Co., Inc.

"Silvercreek Plaintiffs":  Silvercreek Management, Inc., Silvercreek Limited Partnership, Silvercreek II Limited, OIP Limited, and the Pebble Limited Partnership

**Pleadings and Court Submissions**

"TAC":  Third Amended Complaint, dated August 11, 2011 (Docket No. 10-115)

"Joint Mem.":  The Financial Institutions' Joint Memorandum of Law in Support of Their Joint Motion to Dismiss the Silvercreek Plaintiffs' Third Amended Complaint (Docket No. 10-115)

"Korn Decl.":  Declaration of David H. Korn in Support of the Financial Institutions' Joint Motion to Dismiss the Silvercreek Plaintiffs' Third Amended Complaint

**Other Terms**

"MDL Court":  United States District Court for the Southern District of Texas

Credit Suisse respectfully submits this separate memorandum in further support of the Financial Institutions' joint motion to dismiss the Silvercreek Plaintiffs' Third Amended Complaint. Credit Suisse writes separately to address unique issues regarding Credit Suisse as to the Section 11 claim (Count Six) and to address the new Section 12(a)(2) claim (Count Eight) that was not pleaded in any of the Plaintiffs' previous complaints. The arguments set forth herein, together with the arguments set forth in the Financial Institutions' Joint Memorandum of Law, dispose of all of the Silvercreek Plaintiffs' claims asserted against Credit Suisse and support the dismissal with prejudice of the Third Amended Complaint against Credit Suisse in its entirety.

### Statement of Facts[1]

Between October 18 and October 26, 2001, as Enron was collapsing, the Silvercreek Plaintiffs purchased about $30 million in Enron's Zero Coupon Notes (the "Zero Notes"). (TAC Ex. A at 2-5.) The Silvercreek Plaintiffs allege that the offering documents for the Zero Notes contained false and misleading statements. The Third Amended Complaint alleges that Credit Suisse acquired Zero Notes from the "initial underwriters", JPMorgan, Barclays and Deutsche Bank, in the initial private placement. (TAC ¶ 149.) It alleges further that Credit Suisse, along with a long list of other institutions, acquired the Zero Notes with the purpose of reselling them "in the public market". (TAC ¶ 152.) The Registration Statement referred to these institutions, including Credit Suisse, as "selling securityholders". (TAC ¶¶ 666, 671.) The Zero Notes Registration Statement incorporated Enron's subsequently-restated SEC filings. (TAC ¶ 668.) The Silvercreek Plaintiffs allege generally that the offering documents

---

[1] This factual summary relates only to the Section 11 and Section 12(a)(2) claims asserted against Credit Suisse. The complete factual recitation is set forth in the Joint Memorandum of Law. Counts Six and Eight relate solely to the Zero Coupon Notes.

1

were materially misleading with respect to Enron's financial condition. They also assert that the documents misstated the nature of Credit Suisse's relationship with Enron. (TAC ¶¶ 665, 671-672.) They assert a claim against Credit Suisse under Section 11, *see* 15 U.S.C. § 77k, and, nine years after their initial complaint (and after a change in counsel), the Silvercreek Plaintiffs also assert a new claim against Credit Suisse, under Section 12(a)(2) of the Securities Act of 1933, *see* 15 U.S.C. § 77*l*.

## Argument

I. **THE SILVERCREEK PLAINTIFFS' SECTION 11 CLAIM (COUNT SIX) SHOULD BE DISMISSED BECAUSE THEY FAIL ADEQUATELY TO PLEAD THAT CREDIT SUISSE WAS A STATUTORY UNDERWRITER OF THE ZERO NOTES.**

The Silvercreek Plaintiffs' Section 11 claim against Credit Suisse fails because they do not allege facts sufficient to show that Credit Suisse fits the definition of an underwriter of the Zero Notes pursuant to Section 2 of the Securities Act. Section 2 of the Securities Act defines an underwriter as:

> "any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking."

15 U.S.C. § 77b(a)(11). Here, the Silvercreek Plaintiffs do not adequately allege that Credit Suisse qualifies as a statutory underwriter of the Zero Notes.

*First*, the Silvercreek Plaintiffs do not allege that Credit Suisse purchased the Zero Notes *from an issuer*. The "participation" required by Section 2 refers to participation in purchasing securities *from the issuer*. *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 177 (2d Cir. 2011) ("[T]o qualify as an underwriter . . . a person must participate, directly or indirectly, in purchasing securities from an issuer with a view to distribution, in offering or selling securities for an issuer in connection with a distribution, or in the underwriting of such an

2

offering."); *see also Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 482 (S.D.N.Y. 2010) ("The 'participation' in question . . . is participation in the 'undertaking' referred to immediately before [in Section 2]: *that of purchasing securities from an issuer* with a view to their resale—that is, the underwriting of a securities offering as commonly understood." (emphasis added) (quoting *In re Lehman Bros. Sec. & ERISA Litig.*, 681 F. Supp. 2d 495, 499 (S.D.N.Y. 2010) (quoting *In re Refco, Inc. Sec. Litig.*, No. 05 Civ. 8626(GEL), 2008 WL 3843343, at *4 (S.D.N.Y. Aug. 14, 2008))). The "purchase from an 'issuer', or a control person, is a necessary element in the underwriter definition". *S.E.C. v. N. Am. Research & Dev. Corp.*, 280 F. Supp. 106, 122 (S.D.N.Y. 1968), *rev'd on other grounds*, 424 F.2d 63 (2d Cir. 1970). Here, the Silvercreek Plaintiffs do not allege that Credit Suisse purchased the Zero Notes "from an issuer"—in this case, Enron. Rather, they allege that Credit Suisse purchased the notes from the initial purchasers, JPMorgan, Deutsche Bank and Barclays. (TAC ¶ 149.) This is insufficient to state a claim against Credit Suisse under Section 11.

*Second*, the Silvercreek Plaintiffs do not allege that Credit Suisse actually participated in the preparation of the Registration Statement for the Zero Notes. The purpose of Section 11 is to render those entities "responsible for" the disclosures contained in a registration statement liable for any material misstatements contained therein. H.R. Rep. No. 85, 73d Cong., 1st Sess. 5 (1933) ("The[] essential characteristic [underlying the imposition of Section 11 liability] consists of a requirement that all those responsible for statements upon the face of which the public is solicited to invest its money shall be held to standards like those imposed by law upon a fiduciary"); *McFarland v. Memorex Corp.*, 493 F. Supp. 631, 646 (N.D. Cal. 1980) ("Those who have control over the statements made in a registration statement are made liable for false statements or omissions"); *cf. In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,

3

Civ. A. No. H-04-0088, 2005 WL 3704688, at *16 (S.D. Tex. Dec. 5, 2005) (in passing Section 11, "Congress imposed a stringent standard of liability on underwriters and others playing a direct role in a registered offering to 'provide the necessary incentive to ensure their careful investigation of the offering' to protect investors by making the underwriters responsible for the truth of the registration statement and prospectus" (quoting *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 662 (S.D.N.Y. 2004))).  Here, the Silvercreek Plaintiffs have not alleged that Credit Suisse had any role in preparing the Registration Statement for the Zero Notes, or otherwise had any control over the statements in the Registration Statement. *See, e.g.*, *McFarland*, 493 F. Supp. at 646-647 (dismissing Section 11 claim because there was no allegation that the defendants had control over the registration statement).  They allege only that "any resellers" supposedly had a "right" to participate in the preparation of the Registration Statement and supposedly were given access to Enron's books and records.  (TAC ¶ 146.)  The failure to plead any direct role by Credit Suisse in the preparation of the Registration Statement is fatal to their Section 11 claim.  This is particularly true since discovery was completed prior to the filing of the Third Amended Complaint; if the Silvercreek Plaintiffs had any facts to plead, they should have done so.

    *Third*, the Silvercreek Plaintiffs do not allege that Credit Suisse performed any underwriting activities with respect to the Zero Notes offering.  Whether a party is a statutory underwriter depends not on "the particular person's general business but on the basis of his relationship to the particular offering".  *In re Worldcom, Inc. Sec. Litig. (Alameda Cnty. Emps.' Ret. Ass'n v. Ebbers)*, 308 F. Supp. 2d 338, 344 (S.D.N.Y. 2004) (emphasis omitted).  "Given this statutory emphasis on an entity's 'participation' in the underwriting, courts have determined whether a defendant was an underwriter by analyzing its role in the underwriting process." *Id.*

4

The Silvercreek Plaintiffs do not allege that Credit Suisse's conduct carried any of the hallmarks of an underwriter with respect to the Zero Notes offering.[2]

The Third Amended Complaint does not allege, for example, that Credit Suisse received any commission for its purported "underwriting" services other than its potential profit on any resale of the Zero Notes, which is the same potential profit any investor would receive who purchases and later sells any security. The Registration Statement does not suggest that Credit Suisse—or any of the dozens of selling securityholders identified therein—was involved in the offering in any capacity other than that of an institutional investor who purchased notes in the private placement for investment-related reasons.[3] (*See* July 2001 Registration Statement, Korn Decl. Ex. 1.) Rather, it indicates only that "[t]he selling securityholders may offer and sell, from time to time, any or all of their notes or common stock issued upon conversion of those notes". (*Id.* at 43.) This statement is not suggestive of an entity that has been retained to facilitate the public distribution of securities on behalf of an issuer. Federal regulations require the registration statement to "[s]tate briefly the nature of the obligation of the underwriter(s) to

---

[2] The fact that Credit Suisse is included with many others on a list of selling securityholders in the Registration Statement and that the Registration Statement states generically that selling securityholders "*may* be deemed to be" underwriters under the Securities Act (*see* TAC ¶ 666 (emphasis added)) is not determinative. *See Neuwirth Inv. Fund, Ltd. v. Swanton*, 422 F. Supp. 1187, 1196 (S.D.N.Y. 1975) (the "mere fact" that the share certificates indicated that the "holder 'may be deemed to be an underwriter of such shares within the provisions and for purposes only of the Securities Act of 1933' should not be dispositive. The regulative scheme of the Securities Act would fall into disarray if parties to transactions could themselves specify how or when the Act was to be applied").

[3] If Credit Suisse or other selling securityholders had been considered an underwriter for this offering, the Registration Statement would have contained a "table that sets out the nature of the compensation and the amount of discounts and commissions to be paid to the underwriter for each security and in total" as required by 17 C.F.R. § 229.508(e). The Registration Statement for the Zero Notes contained no such table listing Credit Suisse. (*See* July 2001 Registration Statement, Korn Decl. Ex. 1.)

take the securities". 17 C.F.R. § 229.508(a).  Here, there was no "obligation" on Credit Suisse "to take securities"; the securities already had been taken by the initial purchasers in a private offering exempt from the Securities Act.  The examples of "obligation[s]" in the Regulation are whether the underwriter must take and pay for all the securities or whether the arrangement with the underwriter is a "best efforts" arrangement.  *Id.*  That these categories do not apply to Credit Suisse's purchase of securities in the private offering is further indication that Credit Suisse is not an underwriter of the Zero Notes.

For all these reasons, Credit Suisse as a matter of law cannot be held liable as an underwriter of the Zero Notes under Section 11.

## II.     THE SILVERCREEK PLAINTIFFS' NEW SECTION 12(A)(2) CLAIM (COUNT EIGHT) SHOULD BE DISMISSED BECAUSE THE STATUTE OF REPOSE HAS LAPSED AND BECAUSE THE SILVERCREEK PLAINTIFFS' ALLEGATIONS FAIL TO STATE A CLAIM.

### A.      The Silvercreek Plaintiffs' New Section 12(a)(2) Claim Is Barred by the Statute of Repose.

The Silvercreek Plaintiffs' Section 12(a)(2) claim was alleged for the first time in 2011 in the Third Amended Complaint.  Because it is based on their alleged purchases in October 2001 of the Zero Notes from Credit Suisse, that claim was extinguished as a matter of law in October 2004, when the Securities Act's three-year statute of repose expired.  *See* Section 13 of the Securities Act, 15 U.S.C. § 77m ("*In no event* shall any such action be brought to enforce a liability created . . . under [Section 12(a)(2)] of this title more than three years after the sale [of the security]." (emphasis added)).  The statute of repose operates as an absolute bar to the Section 12(a)(2) cause of action here; it represents a substantive right of Credit Suisse that cannot be abridged by notions of equity.  Unlike statutes of limitations, which are affirmative defenses subject to tolling (and waiver), statutes of repose by operation of law extinguish a plaintiff's cause of action upon expiration.  *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,

597 F.3d 84, 88 n.4 (2d Cir. 2010). "'Statutes of repose *create a substantive right* in those protected to be free from liability after a legislatively-determined period of time'". *SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos.*, No. 14-507-CV, 2016 WL 3769735, at *2 (2d Cir. July 14, 2016) (quoting *Police & Fire Retirement System of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 106 (2d Cir. 2013)(emphasis added).

The Silvercreek Plaintiffs cannot avail themselves of any tolling or relation back doctrine to resuscitate this claim that was extinguished under the statute of repose. *See, e.g.*, *IndyMac*, 721 F.3d at 107 ("Courts have repeatedly recognized that the three-year limitations period in Section 13 is a statute of repose. In so doing, they have also emphasized that, as a statute of repose, the three-year period in Section 13 is said to be 'absolute' and not subject to equitable tolling." (citation omitted)).

*First*, the class action tolling doctrine established in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), is unavailable for the Securities Act statute of repose. Rather, statutes of repose "run without interruption once the necessary triggering event has occurred, even if equitable considerations would warrant tolling or even if the plaintiff has not yet, or could not yet have, discovered that she has a cause of action." *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 102 (2d Cir. 2004). Section 13 of the Securities Act is, by its terms, clear and inflexible: "[i]n no event" may a Section 12(a)(2) claim be brought "more than three years after the sale". 15 U.S.C. § 77m. As a result, "the three-year period in Section 13 is said to be 'absolute' and not subject to equitable tolling". *IndyMac*, 721 F.3d at 107. In particular, *American Pipe* class action tolling does not apply to extend the statute of repose in the Securities Act. *Id.* at 109 ("*American Pipe*'s tolling rule, whether grounded in equitable authority or on Rule 23, does not extend to the statute of repose in Section 13."); *see also, e.g.*, *Lampf, Pleva,*

*Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 362, 363 (1991) (the Securities Act's and the Exchange Act's "1-and-3-year structure" operates as a statute of limitations/statute of repose and the "3-year limit is a period of repose inconsistent with tolling").[4]

Even if *American Pipe* class action tolling were applicable (although *IndyMac* has made clear it is not), the Silvercreek Plaintiffs' Section 12(a)(2) claim still would be untimely. *American Pipe* tolling ceases, and "the limitation period begins to run again on [plaintiffs'] claims", when plaintiffs "cease to be members of the class—for instance, when they opt out". *In re WorldCom Sec. Litig.*, 496 F.3d 245, 255 (2d Cir. 2007). The Silvercreek Plaintiffs opted out of the *Newby* class action on July 17, 2006, after the MDL Court certified a class. (*Newby* ECF 5638.) Plaintiffs did not request leave to amend their complaint to add a Section 12(a)(2) claim until more than three years later, on June 25, 2010, and they did not file the Third Amended Complaint until August 11, 2011. By then, even applying *American Pipe* tolling up to the date Plaintiffs opted out, the three-year Securities Act statute of repose had expired.[5]

---

[4] Years before *IndyMac*, the Enron MDL Court ruled in another Enron case that *American Pipe* tolling was a form of legal, not equitable, tolling that could apply to a statute of repose. *See In re Enron Corp. Sec., Derivative & "ERISA" Litig. (Regents I)*, 529 F. Supp. 2d 644, 708 (S.D. Tex. 2006). The Second Circuit rejected this approach in *IndyMac*. Instead, whether *American Pipe* tolling is legal or equitable (an open question in the Second Circuit), it cannot toll the Securities Act statute of repose:

> "If [the *American Pipe*] tolling rule is properly classified as 'equitable,' then application of the rule to Section 13's three-year repose period is barred by *Lampf,* which states that equitable 'tolling principles do not apply to that period.' Even assuming, *arguendo,* that the *American Pipe* tolling rule is 'legal'—based upon Rule 23, which governs class actions—we nonetheless hold that its extension to the statute of repose in Section 13 would be barred by the Rules Enabling Act, 28 U.S.C. § 2072(b)."

*IndyMac*, 721 F.3d at 109 (citation omitted).

[5] The Silvercreek Plaintiffs also cannot claim tolling of the statute of repose based on the MDL Court's temporary freezing of the pleadings prior to class certification in *Newby*. The

8

*Second*, for similar reasons, the Silvercreek Plaintiffs cannot invoke the Rule 15(c) principle of relation back to resuscitate claims extinguished by Section 13's statute of repose: "plaintiffs . . . cannot avoid the statute of repose on a 'relation back' theory under [Rule] 15(c) because the statute of repose by its terms allows no exceptions."  *In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 310 (S.D.N.Y. 2011); *see also Bensinger v. Denbury Res. Inc.*, 31 F. Supp. 3d 503, 510 (E.D.N.Y. 2014) ("[T]he relation back doctrine cannot save a claim that is brought outside the period specified in a statute of repose.").  Allowing Rule 15(c) relation back to revive a claim extinguished by the statute of repose would violate the Rules Enabling Act, 28 U.S.C. § 2072(b), because the statute of repose is a substantive right of the defendant. *See IndyMac*, 721 F.3d at 109.  The Rules Enabling Act disallows "general rules of practice and procedure" promulgated by the Supreme Court to "abridge, enlarge or modify any substantive right".  28 U.S.C. § 2072(a), (b); *see IndyMac*, 721 F.3d at 109; *In re Lehman*, 799 F. Supp. 2d at 310.

The Silvercreek Plaintiffs' putative Section 12(a)(2) claim was extinguished by the statute of repose long ago; any injury allegedly suffered is now a "wrong for which the law provides no redress".  *P. Stolz*, 355 F.3d at 103 (quotations omitted).  Accordingly, their Section 12(a)(2) claim must be dismissed.

---

statute of repose cannot be tolled, and cannot be modified by judicial litigation stays.  *See, e.g., Bensinger v. Denbury Res. Inc.*, 31 F. Supp. 3d 503, 511 (E.D.N.Y. 2014) (holding that a "stay of the case entered by [the court]" could not toll the Securities Exchange Act three-year statute of repose "because Supreme Court precedent makes clear that statutes of repose are not subject to equitable tolling").  In any event, the Silvercreek Plaintiffs had ample opportunity to bring this claim within the three-year period and simply failed to do so.

### B. The Silvercreek Plaintiffs Fail Adequately To Plead Their Section 12(a)(2) Claim, Which Sounds in Fraud, with the Requisite Particularity.

Even if the Silvercreek Plaintiffs' Section 12(a)(2) claim were not barred by the statute of repose (and it is), it still must be dismissed because the Silvercreek Plaintiffs fail to satisfy the particularity requirements of Rule 9(b).  Section 12(a)(2) claims, like Section 11 claims, are subject to Rule 9(b) pleading standards when the allegations in the complaint sound in fraud.  *See Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (holding that Rule 9(b)'s heightened pleading standard applies to claims under Section 12(a)(2) when those claims are premised on allegations of fraud); *see also* Joint Mem. Part I.  Thus, for the same reasons discussed in the Financial Institutions' Joint Memorandum of Law, the Silvercreek Plaintiffs fail to plead their Section 12(a)(2) claim with the requisite particularity because they do not allege specific facts that support an inference that Credit Suisse made fraudulent misstatements or omissions with respect to the Registration Statement for the Zero Notes.  (*See* Joint Mem. Part I.)

### Conclusion

For the reasons stated above and set forth in the Financial Institutions' Joint Memorandum of Law, the Silvercreek Plaintiffs' Third Amended Complaint should be dismissed as to Credit Suisse in its entirety, with prejudice.

August 5, 2016

                                              Respectfully submitted,

By:  /s/ Richard W. Clary
     Richard W. Clary
     David H. Korn
     CRAVATH, SWAINE & MOORE LLP
     Worldwide Plaza
     825 Eighth Avenue
     New York, New York 10019
     Telephone: (212) 474-1000
     Facsimile: (212) 474-3700
     Email: rclary@cravath.com

*Attorneys for Defendants*
*Credit Suisse First Boston (USA), Inc. (n/k/a Credit Suisse (USA), Inc.),*
*Credit Suisse First Boston LLC (n/k/a Credit Suisse Securities (USA) LLC) and*
*Pershing LLC (f/k/a Donaldson, Lufkin & Jenrette Securities Corp.)*

TO ALL COUNSEL OF RECORD

Via ECF

11