July 14, 2017

**VIA ECF**

Hon. J. Paul Oetken
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *Silvercreek Management Inc. et al. v. Citigroup, Inc. et al.*, No. 02-cv-08881-JPO
        (S.D.N.Y.) (the "*Silvercreek* action")

Dear Judge Oetken:

        We write jointly on behalf of the Silvercreek Plaintiffs[1], the remaining Financial
Institution Defendants—Credit Suisse,[2] Deutsche Bank[3] and Merrill Lynch[4]— and individual
defendants Jeff Skilling and Rick Causey in response to the Court's June 27, 2017 Order
directing the parties to submit a joint letter addressing the next phase of the litigation.  On June
30, 2017 and July 7, 2017, counsel for the Silvercreek Plaintiffs and the Financial Institution
Defendants met and conferred to discuss their respective positions on the "next phase of the
litigation."  (*See* SDNY ECF No. 92.)  Earlier today, counsel for Plaintiffs and the individual
defendants discussed certain discovery issues.  The parties' respective positions are set forth
below.

        Counsel for the individual defendants respectfully request leave to attend next
week's status conference by telephone, as their respective clients are of limited means and a
personal appearance would require air travel from Texas and California.  The Silvercreek
Plaintiffs and the Financial Institution Defendants do not oppose this request.

---

        [1] Silvercreek Management Inc., Silvercreek Limited Partnership, Silvercreek II Limited,
OIP Limited and Pebble Limited Partnership.

        [2] Credit Suisse First Boston LLC (n/k/a Credit Suisse Securities (USA) LLC), Credit
Suisse First Boston (USA), Inc. (n/k/a Credit Suisse (USA), Inc.) and Pershing LLC.

        [3] Deutsche Bank Alex. Brown, Inc. (n/k/a Deutsche Bank Securities Inc.) and Deutsche
Bank AG.

        [4] Merrill Lynch & Co., Inc. (n/k/a Bank of America Corporation).

## I.   Plaintiffs' Position on the Next Phase of the Litigation

As discussed in the parties' previous correspondence with the Court (SDNY ECF No. 27), the *Silvercreek* action was consolidated with the Enron securities class action ("*Newby* action") and the Enron ERISA action ("*Tittle* action"), which were designated as the Lead Plaintiffs in the MDL.  An initial scheduling order entered in the *Newby* and *Tittle* cases provided that all other suits, including the *Silvercreek* action, were stayed until motions for class certification were resolved but discovery "may proceed" according to the same schedule. (MDL ECF No.1561, Section B) Discovery propounded by the Lead Plaintiffs was, by Order, the "base line" and "presumptively adequate" for all Enron cases.  Counsel for coordinated cases like Silvercreek's were ordered to avoid duplicative or overlapping document requests and to limit requests for materials that were "new and/or unique to their claims." *Id*. at ¶ F. [5]  As a result, the Silvercreek Plaintiffs propounded only a single interrogatory request to Credit Suisse and Deutsche Bank specific to the Section 11 claims, none to Merrill Lynch, and joined a very limited set of document requests served by a group of plaintiffs.

A subsequent scheduling order established an "aggressive," 18-month fact and expert discovery schedule in the *Newby* and *Tittle* actions through summary judgment and trial. (MDL ECF No. 2019) Though the Silvercreek Plaintiffs participated in the fact and expert schedules, the *Silvercreek* action (like other coordinated cases) was stayed pending final resolution of the *Newby* action. As a result of the stay and limitations on its discovery, the Silvercreek Plaintiffs did not have the opportunity to initiate motion practice in its case with respect to discovery requests propounded by the Lead Plaintiffs, nor to challenge assertions of privilege identified on logs in those cases.  Notably, there were no motions challenging any of the Financial Institution Defendants' assertions of privilege at all and very limited motions to compel filed against the Financial Institution Defendants.  Because the MDL discovery schedule proceeded simultaneous with criminal and other investigations into individuals and institutions involved in the Enron fraud, there was sensitivity by the MDL Court to avoid interference in those then-ongoing (but now concluded) investigations.

After conclusion of the *Newby* action, the Silvercreek Plaintiffs promptly moved to lift the stay and for leave to file a third amended complaint. After leave was granted (over Defendants' objections), the Silvercreek Plaintiffs filed their operative Third Amended Complaint in August 2011 (ECF 10-115).  Thereafter, the MDL Court set a briefing schedule on defendants' motions, which also contemplated that following ruling on the motions to dismiss, the parties could address unresolved discovery issues specific to the *Silvercreek* action.  (SDNY ECF 10-127)  Because the MDL Court did not rule on defendants' motions to dismiss on the contemplated schedule, motions for discovery were never filed or considered by the MDL Court.

Following this Court's Order relating to defendants' motions to dismiss, the Financial Institution Defendants filed answers and affirmative defenses to the Third Amended Complaint. Based on the substantial record amassed in the criminal cases and before the MDL

---

[5]   The Court expressly noted in the preamble: "In such a massive litigation as this, some otherwise valid arguments for expedited proceedings or individualized treatment necessarily must be trumped by the need for systematic, nonduplicative, coordinated discovery." (MDL ECF No. 1561, pg. 3)

Court, and as detailed in the complaint, the Silvercreek Plaintiffs have more than sufficient information and documents to try this case. Plaintiffs nonetheless believe there are a handful of discrete areas of discovery that should be completed before the matter proceeds to dispositive motions and trial, particularly because the criminal investigations are concluded.

    A.    Limited Additional Discovery Period.

        1.    Affirmative Defense Related Discovery.

Plaintiffs request leave of the Court to propound a limited number of document and interrogatory requests on each of the Financial Institution Defendants solely with respect to the factual bases of Defendants' recently asserted affirmative defenses. In their answers, Credit Suisse, Merrill Lynch and Deutsche Bank assert twenty-five, forty-nine, and forty-seven affirmative defenses respectively. Deutsche Bank never answered any of the MDL complaints and therefore no plaintiff propounded discovery in the MDL relating to its affirmative defenses. With respect to Credit Suisse and Merrill Lynch, the timing of defendants' answers in other cases precluded the plaintiffs in those cases from propounding discovery requests specifically addressed to the affirmative defenses. Indeed, Plaintiffs asked Defendants to identify any Enron case in which they responded to discovery requests specifically addressed to the affirmative defenses alleged and Defendants have identified none. Regardless, the Silvercreek Plaintiffs are entitled to have defendants set forth the specific factual bases to the affirmative defenses in the context of Silvercreek's claims and the subject transactions. This is particularly so given the rote allegations in support of the affirmative defenses presently alleged.

        2.    Party and Non-Party Witnesses who previously asserted Fifth Amendment Privileges against Incrimination.

During the MDL coordinated discovery period, there were dozens of Enron-related witnesses, including five Merrill Lynch employees, who faced criminal jeopardy resulting from their involvement in the Enron fraud. At least 48 witnesses asserted Fifth Amendment privileges against incrimination in response to every question at deposition (e.g., Merrill Lynch employees Brown, Bayly, Davis, Fuhs, and Furst, and Enron's Skilling) or avoided discovery in the entirety (e.g., Enron's Lay) because of the ongoing criminal investigation. Because these witnesses' criminal cases are now concluded, they no longer face criminal jeopardy from giving testimony related to Enron. Notably, in its September 17, 2003 plea agreement with the DOJ, Merrill Lynch accepted responsibility for the conduct of its employees in connection with the year-end 1999 transactions and further agreed that it would not contradict the acceptance of responsibility in any litigation. Therefore, Plaintiffs request leave to issue subpoenas or notices of deposition with respect to witnesses or parties who previously asserted the Fifth Amendment privilege or were otherwise protected from discovery during the *Newby* case.[6]

---

    [6] On July 7, Plaintiffs' counsel engaged counsel for Merrill Lynch in an attempt to meet and confer regarding the status of these employees and whether the Bank intended to call any of them as witnesses a trial. As of this writing, Merrill Lynch has taken no position. The fact that the MDL Court denied Lead Plaintiffs' motion for summary judgment against Merrill Lynch

    3.   Supplementing Prior Production of Documents and Discovery Responses
Pursuant to Fed.R.Civ.Pro 26(e).

Plaintiffs request that the Court order the parties to confirm that all document production
and discovery responses previously produced in the MDL proceedings are complete and
consistent with supplementation obligations under FRCP 26(e). There is nothing unusual or
onerous about requesting that the clients, rather than the lawyers, verify, under oath, that
production is complete. Specifically, Plaintiffs requested that Defendants verify that they have
produced or identified in a privilege log (a) post-2005 documents or testimony in defendants'
possession from Enron-related litigation or investigations (e.g., the criminal or bankruptcy cases,
or in connection with the Bank of America acquisition of Merrill) and (b) any communications
with Government officials in the United States or elsewhere related to Enron, including any
internal investigation reports or witness statements shared with such Government officials.
Defendants' contention that internal investigation reports and witness statements shared with the
Government were not previously requested is incorrect, but also indicative of why there is
concern about claims of discovery compliance.[7]

    4.   Defendants' Privilege Logs.

The Financial Institution Defendants informed the Silvercreek Plaintiffs that each
served privilege logs and supplements to those logs in response to the Newby Plaintiff's
discovery requests.  Two weeks ago, Plaintiffs' counsel requested that the Financial Institution
Defendants provide such logs and evidence of service but as of this letter, none of the
Defendants has done so.  Yesterday (July13), the Silvercreek Plaintiffs obtained from Lead
Plaintiffs' counsel copies of the 2000 plus pages of privilege logs propounded by these
defendants.

Plaintiffs request that the Court order Defendants to certify that none of the
documents on the logs have been voluntarily produced to any adverse third party (e.g., the DOJ,
SEC or other regulatory body) and allow a limited period of time for the parties to meet and

---

(which was premised on the convictions then on appeal) has no bearing on whether plaintiffs are
now entitled to depose ex-Merrill employees who may be beyond the subpoena power of this
Court to compel attendance at trial.

   [7] *See, e.g.*, Lead Pl.'s RFP No. 2(g) ("All communications between Deutsche Bank and
the SEC, OCC, FRB, New York State Department of Banking, DOJ, FBI, any Congressional
committee or subcommittee, or any other federal or state governmental agency or regulatory
body"); RFP No. 73 ("All documents and communications concerning any interview, meeting,
deposition, testimony, or transcripts or recordings in which Deutsche Bank participated,
concerning any anticipated or actual civil, criminal, regulatory, legislative, investigative, or
arbitration inquiry or investigation, or any legal proceeding or lawsuit, concerning Enron or any
of the SPEs, Trusts, or LJM Partnerships."); *see also* RFP No. 28 (documents relating to internal
or external audits or reviews of transaction with Enron).  Each of these requests was sent to
Defendants and each agreed subject to objections to produce non-privileged documents
responsive to these requests.

confer regarding any disputed assertions of privilege. The privilege logs propounded by Defendants in response to the *Newby* discovery requests were not subject to challenge nor motion practice by the *Newby* plaintiffs. It is noteworthy that the caselaw in this Circuit and elsewhere concerning waiver of privileges resulting from voluntary production to an adverse governmental entity is substantially more developed than at the time of the MDL. *See, e.g., Gruss v. Zwirn*, 2013 WL 3481350, at *8 (S.D.N.Y. July 10, 2013) (compelling production of interview notes and summaries, rejecting selective waiver despite "fig leaf" confidentiality agreement); *Allied Irish Banks, p.l.c. v. Bank of America, NA,* 240 F.R.D. 96, 99 (S.D.N.Y. 2007) (internal investigation report created for business purpose, not work product); *see also* Fed.R.Evid. 502 (passed 11/28/2007) (waiver by production to federal office or agency).

5.   Supplemental Expert Disclosures or Stipulations.

Plaintiffs believe that some of their prior expert disclosures may need to be supplemented or updated to take into account or address post-2006 events and/or information. For example, after the close of fact and expert discovery in the *Newby* action, former Enron Chief Financial Officer Andrew Fastow was deposed by the parties over the course of several days, providing substantial additional support for Plaintiffs' claims against the remaining defendants, including each of the Financial Institution Defendants. This testimony further supports the opinions of Plaintiffs' experts and as such, Plaintiffs' expert disclosures need to be supplemented. In order to avoid further expert depositions and counter reports, the parties believe they may be able to avoid further expert discovery by way of stipulation. However, if stipulation is not possible, Plaintiffs contend that a limited expert supplementation period should be allowed to address events subsequent to the initial disclosures.

B.  Dispositive Motion Deadlines

Defendants have advised that they anticipate filing motions for summary judgment with respect to the Third Amended Complaint. Plaintiffs do not presently anticipate filing such motions but reserve the right to do so if appropriate. The timeline requested by Defendants for briefing dispositive motions is set forth in Section II.B. *infra*.

C.  Trial Date

A jury trial demand was included with Plaintiffs' Third Amended Complaint. Although Plaintiffs hope that stipulations will reduce the number of disputed issues of fact, Plaintiffs anticipate that their case in chief against the remaining defendants will require 3-4 weeks. Given how long this matter has been pending, Plaintiffs request that the Court set a firm trial date at this juncture in order to avoid a substantial delay between any dispositive motion ruling and the beginning of a trial in this matter. Because the trial is likely to require setting aside substantial Court time, Plaintiffs believe all parties will benefit from setting a firm trial date at this juncture, from which the parties can schedule appropriate pre-trial deadlines.

## II.      Defendants' Position on the Next Phase of the Litigation

A.  Plaintiffs' Request To Reopen Discovery

Fact and expert discovery closed in *Silvercreek* at the same time it closed in the Enron MDL proceedings.  The Financial Institution Defendants and the individual defendants oppose the Silvercreek Plaintiffs' request for leave to reopen discovery over a decade later. There is simply no good faith basis to grant that request.

By way of background, during discovery in the MDL proceedings, multiple parties—including the Financial Institution Defendants and the Silvercreek Plaintiffs—engaged in wide-ranging discovery.  Contrary to the Silvercreek Plaintiffs' assertion above, fact and expert discovery was completed over nearly *four* years (two years of document production plus nearly two years of fact depositions and expert discovery)—not 18 months.  By Court order, all documents and discovery responses in the MDL proceedings (*e.g.*, interrogatories, RFAs, privilege logs), as well as documents and discovery responses from the Enron bankruptcy action, were produced to a central repository in the MDL proceedings, and all parties had access to the discovery produced in every case.  Collectively, over 150 million pages of documents were produced during the MDL proceedings.  Under the MDL scheduling orders, the Silvercreek Plaintiffs were given the opportunity to participate in written discovery, and they used that opportunity.  The Silvercreek Plaintiffs served their own written discovery on certain of the Financial Institution Defendants, and served separate document requests on the Financial Institution Defendants (among others) for *additional* documents above and beyond what was produced in response to the document requests propounded by the *Newby* and *Tittle* Lead Plaintiffs.   The Financial Institution Defendants responded to those separate requests long ago.

There were hundreds of fact depositions taken in the MDL proceedings— including depositions of employees of the Financial Institution Defendants and depositions specifically noticed by the Silvercreek Plaintiffs—which spanned more than 1200 deposition days.  The Silvercreek Plaintiffs had the opportunity to participate fully in depositions.

The parties served numerous expert reports.  The Silvercreek Plaintiffs alone served reports from six experts, and the Financial Institution Defendants collectively put forward over twenty experts reports, many of which included opinions related specifically to the *Silvercreek* action.  Each of these experts was deposed, and the Silvercreek Plaintiffs participated in these depositions (and had the opportunity to participate in the other expert depositions).

The only aspect of the *Silvercreek* case that was stayed related to amending the pleadings and motions addressed to the pleadings.  All parties in all coordinated and consolidated cases, including *Silvercreek*, were expected to, and did, actively participate in the extensive MDL discovery programs.  Given the broad discovery record that was developed—including by the Silvercreek Plaintiffs' themselves—during the discovery period in the MDL proceedings, Defendants oppose each of the categories of discovery on which the Silvercreek Plaintiffs seek to reopen the record.

1.  Affirmative Defense Related Discovery

There is no basis for the Silvercreek Plaintiffs to seek discovery on the affirmative defenses asserted by the Financial Institution Defendants. The affirmative defenses contained in the Financial Institution Defendants' answers were, in large part, asserted in their answers in *Newby*.[8] The Financial Institution Defendants' answers in *Newby* and other coordinated and/or consolidated proceedings were filed before the fact discovery period in the MDL proceedings commenced, and the parties had ample time to take discovery on these affirmative defenses during the MDL proceedings. The factual underpinnings for the affirmative defenses on which Plaintiffs now seek discovery were covered by the full gamut of discovery (*e.g.*, documents, interrogatories, depositions and expert discovery) during the MDL proceedings, and the defenses asserted are supported by that discovery.

2.  Party and Non-Party Witnesses Who Previously Asserted Fifth Amendment Privileges.

Defendants oppose the Silvercreek Plaintiffs' request—not raised during the meet and confer sessions with the Financial Institution Defendants (except as to certain former Merrill Lynch employees) and not raised *at all* with counsel for the individual defendants—to re-serve subpoenas and deposition notices on "Enron-related witnesses" that were previously deposed (or that plaintiffs attempted to depose). The Court should not allow such a "fishing expedition," especially before the parties have had an opportunity to fully meet and confer on this issue.[9]

_____

[8] Merrill Lynch included three defenses specific to Silvercreek's claims that relate to (i) the inequity of awarding pre-judgment interest following substantial delay, and (ii) Silvercreek's claim for punitive damages, and attorneys' fees as damages. These additional defenses do not require any additional discovery. As for Mr. Causey and Mr. Skilling, their answers to the Silvercreek Plaintiffs' Third Amended Complaint was filed nearly six years ago in September 2011. (*See* SD Tex. Case No. 4:03-cv-00815, ECF Nos. 128, 136.) Although Deutsche Bank did not have to file an Answer in the *Newby* case, its defenses in this action overlap with those of the other Financial Institution Defendants, and are based entirely on the discovery provided in the MDL proceedings.

[9] Although some former Merrill Lynch employees were convicted based on their participation in a single transaction with Enron in December 1999, those convictions – except for one employee who was convicted of an obstruction of justice and perjury charge unrelated to any alleged conduct with respect to the underlying transaction – were vacated by the Fifth Circuit. *United States v. Brown*, 459 F.3d 509, 531 (5th Cir. 2006). The MDL district court already determined that these vacated convictions, even if admissible, are insufficient to establish Merrill Lynch's liability for alleged misrepresentations by Enron. *In re Enron Corp. Sec., Derivative & "ERISA'" Litig.*, 491 F. Supp. 2d 690, 702 (S.D. Tex. 2007) ("Plaintiffs cannot use the now vacated convictions of Daniel Bayly, James Brown, Robert Furst, and William Fuhs for wire fraud and conspiracy to prove Merrill Lynch is liable in this civil action for aiding and abetting securities fraud."). Merrill Lynch notes that the conduct covered by its 2003 deferred prosecution agreement with the DOJ – improperly referred to as a "plea agreement" by the Silvercreek Plaintiffs – relates to discrete transactions with Enron that occurred nearly two years prior to Plaintiffs' purchase of the Zero Coupon Notes and 7% Exchangeable Notes.

Plaintiffs do not have any basis to believe that witnesses who invoked the Fifth Amendment during their prior depositions, or who Plaintiffs did not seek to depose at all, will take a different approach now.  Plaintiffs have not demonstrated (nor can they) that they pursued testimony from any identified witnesses with diligence while discovery was open, nor can they say that any material benefit would accrue to offset the substantial burdens that would be imposed by seeking re-opened depositions so long after the relevant events occurred.  Enron entered bankruptcy on December 2, 2001, so any deposition taken now—more than 15 years later—will either be filled with lack of recollection or impose substantial burden on deponents (and the parties) that would be disproportionate to the parties' needs.

      3.  Supplementing Prior Production of Documents and Discovery Responses Pursuant to Federal Rule of Civil Procedure 26(e)[10]

      As counsel for the Silvercreek Plaintiffs explained during the June 30 and July 7 meet and confers, and as requested above, they seek an "affidavit of completion" from each defendant—a certification under oath from a corporate representative from each defendant stating that the defendant has complied with its discovery obligations.  This is nothing more than "discovery about discovery"—*i.e.*, an attempt to obtain wholly new discovery from each defendant about their prior discovery efforts and procedures.  Such a request is improper for at least two reasons.

      *First*, this request is incorrect as a matter of law.  Defendants are not aware of—and the Silvercreek Plaintiffs have not pointed to—any rule or case law that requires such a certification at all, let alone 11 years after fact discovery has closed.  In addition, the Silvercreek Plaintiffs do not—because they cannot—set forth a basis to question Defendants' compliance with their discovery obligations.  The Financial Institution Defendants informed Plaintiffs during the July 7 meet and confer that they had produced all documents during discovery in the MDL proceedings and that there are no additional documents being withheld from production.  There is no need for Court-ordered confirmation of the same.

      *Second*, Plaintiffs' request for the two particular categories of post-2005 documents or testimony "related to Enron" or "from Enron-related litigation or investigations" are outside the scope of the original discovery requests propounded, and hence may not now be sought 11 years after discovery closed.  Plaintiffs have not pointed to any previously-served discovery requests that cover the categories of documents they now seek—*i.e.*, documents specifically created *after* the close of fact discovery.  The document requests in the Silvercreek Plaintiffs' footnote 7 *supra* (which Plaintiffs provided for the first time today) were responded to during MDL discovery, but cannot be read to reach documents first created after the close of fact discovery.  In addition, Plaintiffs have not provided any basis to believe that such documents exist—particularly in light of the representations by counsel from the Financial Institution Defendants that no additional documents are being withheld from production.

---

[10] The Financial Institution Defendants reserve their right to obtain supplementation from the Silvercreek Plaintiffs with regard to damages, including supplementation regarding the allocation of settlement recoveries between claims relating to the Zero Coupon Notes and 7% Exchangeable Notes.

Accordingly, there is no basis for a Court order requiring the Financial Institution Defendants to provide "affidavits of completion" confirming that all document production and discovery responses are complete and consistent with Fed. R. Civ. P. 26(e).  The same would be true for the individual defendants.

### 4.  Defendants' Privilege Logs

During the MDL proceedings, each of the Financial Institution Defendants served privilege logs and supplements to those logs, including on the Silvercreek Plaintiffs, and made these privilege logs available in the central document depository in the MDL action.  As the Silvercreek Plaintiffs acknowledge above, the Financial Institution Defendants' privilege logs are extensive.  On the July 7 meet and confer, counsel for each of the Financial Institution Defendants informed the Silvercreek Plaintiffs that each defendant would provide copies of its respective privilege logs previously produced during the discovery period, since the Silvercreek Plaintiffs' current counsel was apparently unable to locate those privilege logs in their files.

The Silvercreek Plaintiffs' request for a separate certification stating that none of the documents on the Financial Institution Defendants' privilege logs were produced to "any adverse party" was raised for the first time this evening.  Timing aside, the request itself is without merit.  As stated above, the Financial Institution Defendants produced all documents during discovery in the MDL proceedings and are not aware of any additional documents that were produced to third-parties that were withheld from production.  That none of the parties in the MDL discovery proceedings—including the Silvercreek Plaintiffs—challenged the privilege logs does not provide a basis to allow the Silvercreek Plaintiffs to reopen the process now (indeed, it supports the premise that discovery closed when it closed in the MDL proceedings).  Nor does a purported "develop[ment]" in caselaw regarding waiver of privileges.

To the extent that the Silvercreek Plaintiffs purport to "reserve the right" to challenge entries on the Financial Institution Defendants' privilege logs, Defendants will oppose such a challenge.  All such challenges were to be made during the MDL proceedings, not 11 years later when the burdens of archival discovery that could have been timely pursued are overwhelmingly disproportionate to the needs of the case, all the more so in light of the extensive amount of discovery that has taken place.

### 5.  Supplemental Expert Disclosures or Stipulation

The Silvercreek Plaintiffs informed defendants that they seek to supplement their experts' reports with reliance on the deposition and declaration of Andrew Fastow, among other things.  The Financial Institution Defendants do not believe that the Fastow declaration and deposition are admissible given the circumstances under which they were created, nor do they support the Silvercreek Plaintiff's claims.  Nevertheless, counsel for the Financial Institution Defendants will work with counsel for the Silvercreek Plaintiffs to attempt to reach a stipulation on supplementing expert disclosures.  In the event that the parties do not reach a stipulation and the Court allows supplementation of the Silvercreek Plaintiffs' experts' reports, Defendants request the right to supplement their own experts' reports in response and/or to depose Plaintiffs' experts on any supplemental reports.

B.  Dispositive Motion Deadlines

Defendants request that the Court set the following schedule on briefing
dispositive motions:  90 days to file any dispositive motions; 60 days thereafter to file any
opposition; 45 days for any party to file a reply.  Defendants believe discovery is complete, and
therefore these deadlines could run from the status conference.  To the extent the Court allows
the Silvercreek Plaintiffs to reopen discovery, these deadlines would run from the close of
reopened discovery.

C.  Trial Date

Defendants believe that it is premature to set a trial date at this time and that a
trial schedule should be set only if any of Plaintiffs' claims survive the Financial Institution
Defendants' summary judgment motions.  If the Court is inclined to set a trial date at this time,
each defendant estimates requiring 2-3 weeks for its respective case-in-chief.


Respectfully submitted,

By:  ____ s/ Scott F. Hessell _____        By:  ____ /s/ Richard W. Clary _____
                                                 Richard W. Clary
Bruce S. Sperling                                CRAVATH, SWAINE & MOORE LLP
Eugene J. Frett                                  Worldwide Plaza
Scott F. Hessell                                 825 Eighth Avenue
SPERLING & SLATER, P.C.                          New York, New York 10019-7475
55 West Monroe, Suite 3200                       Telephone:  (212) 474-1227
Chicago, Illinois 60603
Telephone:  (312) 641-3200                       ATTORNEYS FOR DEFENDANTS CREDIT
                                                 SUISSE FIRST BOSTON (USA), INC. (N/K/A
                                                 CREDIT SUISSE (USA), INC.), CREDIT
Lyndon M. Tretter                                SUISSE FIRST BOSTON LLC (N/K/A CREDIT
WOLLMUTH MAHER & DEUTSCH LLP                      SUISSE SECURITIES (USA) LLC) AND
500 Fifth Avenue                                 PERSHING LLC (F/K/A DONALDSON,
New York, New York 10110                         LUFKIN & JENRETTE SECURITIES CORP.)
Telephone: (212) 382-3300

ATTORNEYS FOR PLAINTIFFS
SILVERCREEK MANAGEMENT INC.,
SILVERCREEK LIMITED PARTNERSHIP,
SILVERCREEK II LIMITED, OIP LIMITED,
PEBBLE LIMITED PARTNERSHIP

By:____/s/ Daniel Lewis_____

Adam S. Hakki
Daniel Lewis
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-7216

ATTORNEYS FOR DEFENDANT MERRILL
LYNCH & CO., INC. (N/K/A BANK OF
AMERICA CORPORATION)


By:____/s/ Owen C. Pell_____

Owen C. Pell
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020-1095
Telephone: (212) 819-8891

ATTORNEYS FOR DEFENDANTS
DEUTSCHE BANK AG AND DEUTSCHE
BANK ALEX. BROWN, INC. (N/K/A
DEUTSCHE BANK SECURITIES INC.)


By:____/s/ Jeffrey A. Barker_____
Daniel M. Petrocelli
Jeffrey A. Barker
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700

ATTORNEYS FOR JEFFREY K. SKILLING


By:_____/s/ C. Robert Mace_____
  C. Robert Mace
  Tekell Book et al.
  1221 McKinney, 43rd Floor
  Houston, TX 77010
  Telephone: (713) 222-9542

  ATTORNEY FOR RICK CAUSEY