UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SILVERCREEK MANAGEMENT INC., *et al.*,<br><br>                              Plaintiffs,<br><br>                   v.<br><br>CITIGROUP, INC., *et al.*,<br><br>                         Defendants. | 02-cv-08881-JPO<br><br>ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
CREDIT SUISSE'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

EXPLANATION OF CITATION FORMS.......................................................................... viii

TABLE TRACKING PRIMARY GROUNDS FOR SUMMARY JUDGMENT TO
    EACH REMAINING CLAIM ASSERTED AGAINST CREDIT SUISSE .................... ix

ARGUMENT ........................................................................................................................1

I.     PLAINTIFFS FAIL TO MEET THE LEGAL STANDARDS GOVERNING
     SUMMARY JUDGMENT AND VIOLATE LOCAL RULE 56.1....................................1

II.    PLAINTIFFS CANNOT SHOW A SPECIAL RELATIONSHIP BETWEEN
     SILVERCREEK AND CREDIT SUISSE (COUNT FIVE).................................................3

III.   PLAINTIFFS CANNOT SHOW THAT SILVERCREEK REASONABLY
     RELIED ON STATEMENTS BY CREDIT SUISSE (COUNT FIVE)...........................7

     A.    Silvercreek Did Not Rely on Purported Statements by Ms. Randell About
         the Zero Notes.........................................................................................................8

     B.    Silvercreek Did Not Rely on Credit Suisse Analyst Reports................................10

IV.   PLAINTIFFS CANNOT SHOW THAT SILVERCREEK REASONABLY
     RELIED ON ENRON'S FINANCIAL STATEMENTS (COUNTS ONE, TWO,
     THREE). ........................................................................................................................11

V.    PLAINTIFFS CANNOT PROVE CREDIT SUISSE'S ACTUAL KNOWLEDGE
     (COUNTS ONE, TWO, THREE, NINE). ...........................................................................14

     A.    The Material Facts Are Undisputed.....................................................................14

     B.    Unable To Dispute the Material Facts, Plaintiffs Double Down on
         Inadmissible Evidence. .........................................................................................17

     C.    Plaintiffs Mischaracterize the Law and the Evidence..........................................22

VI.   PLAINTIFFS CANNOT SHOW THAT CREDIT SUISSE WAS A
     STATUTORY UNDERWRITER (COUNT SIX).........................................................24

     A.    Credit Suisse Was Not "Essential" in the Distribution of the Zero Notes.............24

     B.    Plaintiffs' Attempts To Broaden the Scope of Underwriter Liability
         Should Be Rejected................................................................................................24

i

CONCLUSION..................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 888 F. Supp. 2d 431
(S.D.N.Y. 2012) .............................................................................................14, 17, 23

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, No. 08 Civ. 7508(SAS),
2013 WL 837536 (S.D.N.Y. Mar. 6, 2013) ...............................................................4, 5

*Aerolineas Galapagos, S.A. v. Sundowner Alexandria, LLC*, 74 A.D.3d 652 (1st
Dep't 2010) .................................................................................................................6

*Allen v. Westpoint-Pepperell, Inc.*, 11 F. Supp. 2d 277 (S.D.N.Y. 1997), *aff'd on
other grounds sub nom. Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71 (2d
Cir. 1998) ...................................................................................................................3

*Am. Nat. Ins. Co. v. J.P. Morgan Chase & Co.*, 623 F Supp. 2d 798 (S.D. Tex.
2009) ........................................................................................................................21

*Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758 (S.D.N.Y. 2011) ....................4, 6

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...............................................1, 11

*Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98 (2d Cir. 2012) ...............................7

*Barron Partners, LP v. LAB123, Inc.*, 593 F. Supp. 2d 667 (S.D.N.Y. 2009) ...............6

*Benson v. JPMorgan Chase Bank, N.A.*, No. C-09-5272 EMC, 2010 WL 1526394
(N.D. Cal. Apr. 15, 2010) ...........................................................................................22

*Berger v. Cantor Fitzgerald Sec.*, 967 F. Supp. 91 (S.D.N.Y. 1997) ...............................3

*Billard v. Rockwell Int'l Corp.*, 683 F.2d 51 (2d Cir. 1982) .........................................15

*Brandon v. City of New York*, 705 F. Supp. 2d 261 (S.D.N.Y. 2010) ...........................15

*Byrnes v. Faulkner, Dawkins & Sullivan*, 550 F.2d 1303 (2d Cir. 1977)......................25

*Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967
F. Supp. 2d 756 (S.D.N.Y. 2013)..................................................................................8

*Crawford-El v. Britton*, 523 U.S. 574 (1998) ...............................................................2

*Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775 (2d Cir. 2003)...........................6

*de Abreu v. Bank of Am. Corp.*, 812 F. Supp. 2d 316 (S.D.N.Y. 2011) ...................14, 23

*Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108 (2d Cir. 1988) ............................................................2

*Dodakian v. United States,* No. 14CV01188AJNSN, 2015 WL 11144511
(S.D.N.Y. Aug. 14, 2015), *report and recommendation adopted*, No. 14-CV-
1188 (AJN)(SN), 2016 WL 3866581 (S.D.N.Y. July 12, 2016) .........................................3, 10

*Dowd v. I.R.S.*, 776 F.2d 1083 (2d Cir. 1985) ..............................................................17

*Eichenholtz v. Brennan*, 52 F.3d 478 (3d Cir. 1995) ...................................................25

*Eternity Global Master Fund Ltd. v. Morgan Guar. Tr. Co.*, 375 F.3d 168 (2d Cir.
2004) ......................................................................................................4, 5, 9

*Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171 (S.D.N.Y. 2010) ...................................9

*Fromer v. Yogel*, 50 F. Supp. 2d 227 (S.D.N.Y. 1999) ...................................................3

*Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 545 F. Supp. 1314 (S.D.N.Y.
1982) ........................................................................................................20

*Giancarlo v. UBS Fin. Servs., Inc.*, No. 16-20663, 2018 WL 1110419 (5th Cir.
Feb 26, 2018) ................................................................................................5

*Goldstick v. The Hartford, Inc.*, No. 00 Civ. 8577(LAK), 2002 WL 1906029
(S.D.N.Y. Aug. 19, 2002) ....................................................................................2

*Greenlight Reins., Ltd. v. Appalachian Underwriters, Inc.*, 34 F. Supp. 3d 321
(S.D.N.Y. 2014) (Oetken, J.) ................................................................................1

*Greentech Research LLC v. Wissman*, 104 A.D.3d 540 (1st Dep't 2013) .................................4, 5

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) ..................................................14

*Herman & MacLean v. Huddleston*, 459 U.S. 375 (1983) ..............................................25

*Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173 (S.D.N.Y. 2008)....................20

*Hollander v. American Cyanamid Co.*, 172 F.3d 192 (2d Cir. 1999), *abrogated on
other grounds by Schnabel v. Abramson*, 232 F.3d 83 (2d Cir. 2000) ...............................8, 11

*Hubbard v. Gen. Motors Corp.,* No. 95 CIV. 4362, 1996 WL 274018 (S.D.N.Y.
May 22, 1996).................................................................................................9

*In re Allou Distributors, Inc.*, 446 B.R. 32 (Bankr. E.D.N.Y. 2011)....................................23

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. 1446, 2016 WL
4095973 (S.D. Tex. Aug. 2, 2016)..........................................................................6

*In re Enron Corp. Sec., Derivative & ERISA Litig.*, No. CIV.A. G-03-0481, 2010
  WL 9077875 (S.D. Tex. Jan. 19, 2010) .................................................................... 7

*In re Nat'l Century Fin. Enterprises, Inc.*, 846 F. Supp. 2d 828 (S.D. Ohio 2012) ..................... 23

*In re Refco Sec. Litig.*, 759 F. Supp. 2d 301 (S.D.N.Y. 2010) ........................................ 22

*In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004) ........................ 15, 20, 21

*In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) ........................................ 7

*In re Xerox Corp. Sec. Litig.*, 746 F. Supp. 2d 402 (D. Conn. 2010) ................................. 20

*J.P. Morgan Sec. Inc. v. Ader*, 127 A.D.3d 506 (1st Dep't 2015) ..................................... 4

*JD2 Envtl., Inc. v. Endurance Am. Ins. Co.*, No. 14-CV-8888 (JPO), 2017
  WL 751157 (S.D.N.Y. Feb. 27, 2017) ...................................................................... 2

*Johnston v. Norton*, 886 F. Supp. 403 (S.D.N.Y. 1995) ............................................... 3

*JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393 (S.D.N.Y. 2004) ............................... 6

*JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247 (S.D.N.Y. 2005) .............................. 22

*Kulak v. City of N.Y.*, 88 F.3d 63 (2d Cir. 1996) ................................................... 11

*Lang v. Paine, Webber, Jackson & Curtis, Inc.*, 582 F. Supp. 1421 (S.D.N.Y.
  1984) ................................................................................................. 10

*McFarland v. Memorex Corp.*, 493 F. Supp. 631 (N.D. Cal. 1980) ..................................... 25

*Molina v. Faust Goetz Schenker & Blee, LLP*, 230 F. Supp. 3d 279 (S.D.N.Y.
  2017) ............................................................................................... 3, 10

*Neogenix Oncology, Inc. v. Gordon*, 133 F. Supp. 3d 539 (E.D.N.Y. 2015) ............................ 14

*Norddeutsche Landesbank Girozentrale v. Tilton*, 149 A.D.3d 152 (1st Dep't
  2017) ................................................................................................. 7

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ....................................................... 9

*Oster v. Kirschner*, 77 A.D.3d 51 (1st Dept. 2010) .................................................. 22

*Paulus v. Holimont, Inc.*, 315 F.R.D. 13 (W.D.N.Y. 2016) ............................................ 21

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 652
  F. Supp. 2d 495 (S.D.N.Y. 2009) ...................................................................... 23

*Porter v. Reynolds Leasing, Inc.*, No. 92 CIV. 5095 (SS), 1994 WL 24769
(S.D.N.Y. Jan. 24, 1994) (Sotomayor, J.)..................................................................17

*Rodriguez v. Schneider*, No. 95 CIV. 4083 (RPP), 1999 WL 459813 (S.D.N.Y.
June 29, 1999), *aff'd*, 56 F. App'x 27 (2d Cir. 2003) ..............................................2

*S.E.C. v. Kern*, 425 F.3d 143 (2d Cir. 2005)..................................................................24

*Scotto v. Almenas*, 143 F.3d 105 (2d Cir. 1998) ...............................................................1

*S.E.C. v. Lee*, 720 F. Supp. 2d 305 (S.D.N.Y. 2010) .......................................................5

*Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428 (S.D.N.Y. 2017)..........5, 6, 24, 25

*Silvers v. State*, 68 A.D.3d 668 (1st Dep't 2009)..............................................................6

*Smith v. Ameriquest Mortg. Co.*, 60 A.D.3d 1037 (2d Dep't 2009) ..................................5

*Sotheby's Fin. Servs., Inc. v. Baran*, 107 F. App'x 235 (2d Cir. 2004)..............................9

*Steed Fin. LDC. v. Nomura Sec. Int'l, Inc.*, 148 F. App'x 66 (2d Cir. 2005)....................7

*Sterling Fin. Servs. Co., v. Franklin*, 259 F. App'x 367 (2d Cir. 2008) ............................4

*Teamsters Local 282 Pension Tr. Fund v. Angelos*, 762 F.2d 522 (7th Cir. 1985) ............7

*Terrydale Liquidating Tr. v. Barness*, 611 F. Supp. 1006 (S.D.N.Y. 1984)...................14, 23

*United States v. Santoro*, 302 F.3d 76 (2d Cir. 2002)......................................................5

*Villani v. Nat'l Marine Corp.*, 2008 WL 1995121 (W.D.N.Y. May 6, 2008)...................14

*Vona v. Schindler Elevator Corp. Mgmt.*, No. 05-CV-0131(SR), 2009
WL 2152309 (W.D.N.Y. July 14, 2009)...........................................................20, 21

*Watson v. Arts & Entm't Television Network*, No. 04 CIV. 1932 (HBP), 2008
WL 793596 (S.D.N.Y. Mar. 26, 2008), *aff'd*, 352 F. App'x 475 (2d Cir. 2009) ..............10, 13

*White v. Melton*, 757 F. Supp. 267 (S.D.N.Y. 1991) ......................................................23

*Wight v. BankAmerica Corp.*, 219 F.3d 79 (2d Cir. 2000) ...............................................22

*Young-Wolff v. John Wiley & Sons, Inc.*, No. 12-CV-5230 (JPO), 2016
WL 154115 (S.D.N.Y. Jan. 12, 2016) ..............................................................9, 11

**Statutes & Rules**

11 U.S.C. § 1106...........................................................................................................20

Fed. R. Evid. 602 ............................................................................................................18, 19

L. Civ. R. 56.1............................................................................................................ passim

## EXPLANATION OF CITATION FORMS

The following citation forms are used in this memorandum:

**Filings**

- "Br." or "Opening Brief" for references to the Memorandum of Law in Support of Credit Suisse's Motion for Summary Judgment, dated November 10, 2017 (ECF 132).

- "Counterstatement" for references to Plaintiffs' Counterstatement of Disputed Facts (¶¶ 608-1039) (ECF 166).

- "Ex. C__" for references to the exhibits to the Declaration of Richard W. Clary In Support of Credit Suisse's Motion for Summary Judgment (Exhibits C1 though C301) (ECF 148-152) and the Declaration of Winnifred A. Lewis In Further Support of Credit Suisse's Motion for Summary Judgment (Exhibits C302 though C326) (filed herewith).

- "Ex. P-CS__" for references to the exhibits to the Declaration of Scott F. Hessell In Support of Plaintiffs' Response to Credit Suisse's Motion for Summary Judgment (ECF 168-174).

- "ML Opp'n" for references to Silvercreek's Memorandum in Opposition to Merrill Lynch's Motion for Summary Judgment, dated March 15, 2018 (ECF 179).

- "Opp'n" for references to Silvercreek's Corrected Memorandum in Opposition to Credit Suisse's Motion for Summary Judgment, dated April 11, 2018 (ECF 207).

- "Resp. to C'stmt. ¶ __" or "Response" for Credit Suisse's responses to Plaintiffs' Counterstatement of Disputed Facts (¶¶ 608-1039) (filed herewith).

- "Stmt. ¶ __" for references to Credit Suisse's Reply Rule 56.1 Statement (¶¶ 1-607) & Response to Plaintiffs' Counterstatement of Disputed Facts (¶¶ 608-1039) (filed herewith).

- "TAC ¶ __" for references to the Third Amended Complaint, dated August 11, 2011 (ECF 10-115).

**Parties**

- "Credit Suisse":  Credit Suisse First Boston (USA), Inc. (n/k/a Credit Suisse (USA), Inc.), Credit Suisse First Boston LLC (n/k/a Credit Suisse Securities (USA) LLC) and Pershing LLC (f/k/a Donaldson, Lufkin & Jenrette Securities Corporation).  Where appropriate, this memorandum distinguishes between Donaldson, Lufkin & Jenrette Securities Corporation ("DLJ") and the pre-merger Credit Suisse entities; prior to November 3, 2000, DLJ and Credit Suisse were competitors.

- "Silvercreek" or "Plaintiffs":  Silvercreek Management, Inc., Silvercreek Limited Partnership, Silvercreek II Limited, OIP Limited and Pebble Limited Partnership.

**TABLE TRACKING PRIMARY GROUNDS FOR SUMMARY JUDGMENT TO EACH REMAINING CLAIM ASSERTED AGAINST CREDIT SUISSE**

| | No Special Relationship with Credit Suisse | No Reliance on Credit Suisse | No Reliance on Enron | No Actual Knowledge by Credit Suisse | Not a Statutory Underwriter |
|---|---|---|---|---|---|
| Aiding and Abetting Fraud (Count One) | | | X | X | |
| Conspiracy to Commit Fraud (Count Two) | | | X | X | |
| Aiding and Abetting Negligent Misrepresentation (Count Three) | | | X | X | |
| Negligent Misrepresentation (Count Five) | X | X | | | |
| Section 11 (Count Six) | | | | | X |
| Texas Securities Act—Aiding and Abetting (Count Nine) | | | | X | |

**ARGUMENT**

Nothing in Plaintiffs' Opposition raises a genuine issue of material fact as to the grounds for summary judgment raised in Credit Suisse's Opening Brief.  Instead, Plaintiffs distort the law, make unsupported assertions, and cut and paste "facts" from a summary judgment opposition brief filed over 11 years ago by the lead plaintiff in *Newby*.  Judge Harmon dismissed *Newby* at summary judgment.  This Court should do the same.

**I.**    **PLAINTIFFS FAIL TO MEET THE LEGAL STANDARDS GOVERNING SUMMARY JUDGMENT AND VIOLATE LOCAL RULE 56.1.**

Plaintiffs lack evidence to dispute the facts presented in Credit Suisse's Opening Brief.  Instead, they focus on Credit Suisse's "burden" as movant and rely on cases that pre-date the mid-1980s expansion of summary judgment.  (*See* Opp'n 7-8.)  Credit Suisse has met its burden.  The burden now shifts to Plaintiffs to identify "specific facts creating a genuine issue for trial."  *Greenlight Reins., Ltd. v. Appalachian Underwriters, Inc.*, 34 F. Supp. 3d 321, 326 (S.D.N.Y. 2014) (Oetken, J.) ("The facts must be truly specific"; "speculat[ion] [and] vague[] assert[ions]" are insufficient).  As explained below, Plaintiffs cannot.  Plaintiffs distort the record and rely on allegations, speculation and inadmissible evidence—all of which are improper.

At summary judgment, a plaintiff must come forward with concrete, admissible evidence "from which a reasonable juror could return a verdict in his favor".  L. Civ. R. 56.1(d); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  A plaintiff "may not rely on conclusory allegations or unsubstantiated speculation".  *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).  Moreover, any admissible evidence must create a "*genuine* issue of *material* fact".  *Anderson*, 477 U.S. at 248.  A dispute is not genuine "[i]f the evidence is merely colorable or is not significantly probative"; "the mere existence of *some* alleged factual dispute" cannot defeat summary judgment.  *Id.* at 247, 249.  A plaintiff "is not entitled to a trial simply because

the determinative issue focuses upon the defendant's state of mind".  *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988).  Nor may a plaintiff "respond simply with general attacks upon the defendant's credibility".  *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).  Plaintiffs fail to meet these standards.

Plaintiffs also violate Local Rule 56.1.  Plaintiffs' Response to Credit Suisse's Local Rule 56.1 Statement is replete with unsupported assertions, improper argument and narrative that attempts to "'spin' the impact of the admissions that [Plaintiffs have] been compelled to make".  *Goldstick v. The Hartford, Inc.*, No. 00 Civ. 8577(LAK), 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002).  Such "responses" are improper and the facts to which they "respond" should be deemed undisputed.  L. Civ. R. 56.1; *see JD2 Envtl., Inc. v. Endurance Am. Ins. Co.*, No. 14-CV-8888 (JPO), 2017 WL 751157, at *1 n.1 (S.D.N.Y. Feb. 27, 2017).  Credit Suisse has submitted a reply statement identifying each such deficiency.

Plaintiffs' Rule 56.1 Counterstatement similarly is laden with unsupported assertions and improper argument—all of which likewise should be disregarded.  But the Counterstatement has deeper problems.  Nearly half of Plaintiffs' 321 "disputed facts" regarding Enron's transactions were copied essentially verbatim from legal arguments in a summary judgment opposition *brief* filed by the lead plaintiff in *Newby*.  (*See* Stmt. ¶¶ 710-1030; Ex. C302 (redline comparison).)  Plaintiffs' "cut-and-paste" submission is improper, regardless of who wrote the source brief:

> "*Rule 56.1 statements are not argument*.  They should contain factual assertions, with citation to the record.  They should not contain conclusions, and they should be neither the source nor the result of 'cut-and-paste' efforts with the memorandum of law.  *A rule 56.1 statement that contains the same turns of phrase, if not the identical whole paragraphs, as the memorandum of law is improper*."  *Rodriguez v. Schneider*, No. 95 CIV. 4083 (RPP), 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999), *aff'd*, 56

F. App'x 27 (2d Cir. 2003) (second emphasis added).

Credit Suisse's response identifies all such improper "facts". They should be disregarded. *Id.*

## II.   PLAINTIFFS CANNOT SHOW A SPECIAL RELATIONSHIP BETWEEN SILVERCREEK AND CREDIT SUISSE (COUNT FIVE).

Plaintiffs' negligent misrepresentation claim must be dismissed because no reasonable jury could find that Plaintiffs had a special relationship with Credit Suisse.[1]

*First*, Plaintiffs merely assert, without citation or explanation, that "[t]he relationship that forms the basis of Silvercreek's claim . . . relies in part upon the acts of . . . the analysts touting Enron securities". (Opp'n 32.) That is insufficient. *See Molina v. Faust Goetz Schenker & Blee, LLP*, 230 F. Supp. 3d 279, 287 n.39 (S.D.N.Y. 2017) (plaintiff's single-sentence argument was so underdeveloped that it was waived); *Dodakian v. United States,* No. 14CV01188AJNSN, 2015 WL 11144511, at *11 (S.D.N.Y. Aug. 14, 2015) (same), *report and recommendation adopted*, No. 14-CV-1188 (AJN)(SN), 2016 WL 3866581 (S.D.N.Y. July 12, 2016). Plaintiffs offer no evidence that any Credit Suisse analyst contacted Silvercreek directly—indeed, they have dropped those unsubstantiated allegations—and mere publication of analyst reports to the investing public is insufficient to show a special relationship. (*See* Br. 12, 16.)

*Second*, Plaintiffs cannot establish a special relationship between Silvercreek and broker Ms. Randell. (*See* Opp'n 33-34.) Critically, Plaintiffs do not dispute that Ms. Randell had no special expertise and that Silvercreek had the same or better expertise that Ms. Randell

---

[1] Plaintiffs cite *Johnston v. Norton*, 886 F. Supp. 403, 404 (S.D.N.Y. 1995), for the proposition that negligent misrepresentation claims need only be proven by a preponderance of the evidence. (Opp'n 9 n.5.) That is wrong. *Johnston* cites a Second Circuit case that groups "misrepresentation" with larceny, theft and conversion, and differentiates those causes of action from fraud. However, under New York law, negligent misrepresentation is a "species of fraud" and "thus, New York's high standard of 'clear and convincing' proof applies. *Allen v. Westpoint-Pepperell, Inc.*, 11 F. Supp. 2d 277, 284 (S.D.N.Y. 1997) (citing cases on constructive fraud, which also does not require scienter), *aff'd on other grounds sub nom. Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71 (2d Cir. 1998); *Fromer v. Yogel*, 50 F. Supp. 2d 227, 243 (S.D.N.Y. 1999); *Berger v. Cantor Fitzgerald Sec.*, 967 F. Supp. 91, 93 (S.D.N.Y. 1997); (Br. 9).

purportedly had.  (*See* Opp'n 32-33.)  That is fatal to their claim.  (*See* Br. 14-15); *Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 782 (S.D.N.Y. 2011) (no special relationship where "no allegations at all supporting . . . whether the defendants had 'unique or special expertise.'"); *Greentech Research LLC v. Wissman*, 104 A.D.3d 540, 540-41 (1st Dep't 2013) (no special relationship where no unique expertise alleged and arm's-length business relationship); *Eternity Global Master Fund Ltd. v. Morgan Guar. Tr. Co.*, 375 F.3d 168, 189 (2d Cir. 2004).

Plaintiffs attempt to manufacture a dispute, but the "facts" they dispute are immaterial.  Plaintiffs assert that Credit Suisse's broker relationship with Silvercreek lasted two years (rather than 1.5 years, as Credit Suisse contends).  (Opp'n 33.)  This extra six months, even if true, does nothing for Plaintiffs.[2]  (*See* Br. 15.)  Nor would evidence of Ms. Randell's purported knowledge of  Ms. Morwick's trading strategy establish a special relationship. (Br. 13-14.)  The evidence merely shows that, as Ms. Morwick's broker, Ms. Randell was aware that Ms. Morwick traded in convertible debt.  (Stmt. ¶ 74.)  Plaintiffs have not pointed to any communications between Silvercreek and Ms. Randell that address anything other than typical broker subjects, such as pricing and executing trades.  (*See* Opp'n 33-34.)  Plaintiffs "dispute" that Ms. Morwick and Ms. Randell only communicated via Bloomberg message and contend that they also spoke by phone (Opp'n 33), but Plaintiffs cite no evidence regarding the content of these purported phone calls.  Plaintiffs merely assert Ms. Randell's purported one-time recommendation of the Zero Notes on October 18.  (*See* Opp'n 33.)  That simply is insufficient to create a special relationship.  *See Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,

---

[2] Plaintiffs also contend that they completed "over 1,000 trades and [paid] over $1 million in commissions . . . to Credit Suisse in 2001".  (Opp'n 33.)  Despite the specificity and verifiability of these numbers, Plaintiffs do not bother to cite any evidence for this purported fact—instead relying on a statement by Ms. Morwick 17 years after the fact.  (*See* Opp'n 33 (citing Morwick Supp. Decl. ¶ 10).)  This is inappropriate.  *See Sterling Fin. Servs. Co., v. Franklin*, 259 F. App'x 367, 370 (2d Cir. 2008) (giving "no weight" to declaration because it was "conclusory with no original documentary corroboration").  In any event, these contentions are consistent with typical brokerage services and raise no inference of a special relationship.  *J.P. Morgan Sec. Inc. v. Ader*, 127 A.D.3d 506, 507 (1st Dep't 2015).

No. 08 Civ. 7508(SAS), 2013 WL 837536, at *6 & n.77 (S.D.N.Y. Mar. 6, 2013) (granting summary judgment to defendant where plaintiff showed only that it was contacted with marketing materials); *Eternity*, 375 F.3d at 189.[3]

Unable to establish a special relationship based on either the analyst reports or Ms. Randell, Plaintiffs concoct a different theory:  that Silvercreek had a special relationship with Credit Suisse because Credit Suisse's *investment banking division* purportedly had "superior knowledge" of Enron's transactions.  (*See* Opp'n 32.)  *First*, "alleged superior knowledge of . . . alleged wrongdoing and . . . admitted wrongdoing is not the type of unique or specialized expertise that would support a cause of action for negligent misrepresentation".  *Greentech*, 104 A.D.3d at 540-41.  *Second*, this Court already rejected such an "entanglement" theory at the motion to dismiss stage.  *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 440-41 (S.D.N.Y. 2017) ("Silvercreek does not sufficiently connect any of these individuals to *both* knowledge of Enron's wrongdoing and the dissemination of the misstatements at issue.").  The Fifth Circuit recently reached a similar conclusion, affirming dismissal of a claim against UBS based on purported statements regarding Enron made by a UBS broker who was "separated . . . by 'Chinese Walls'" from the rest of the business.  *See Giancarlo v. UBS Fin. Servs., Inc.*, No. 16-20663, 2018 WL 1110419, at *5 (5th Cir. Feb 26, 2018) ("The only defendant alleged to have 'communicated' with Plaintiffs is [the broker], and Plaintiffs have not sufficiently alleged

---

[3] Nor is there evidence of the type of specific, tailored and repeated recommendations discussed in the cases that Plaintiffs cite.  (*See* Opp'n 33 (citing *S.E.C. v. Lee*, 720 F. Supp. 2d 305, 329 (S.D.N.Y. 2010) (denying motion to dismiss special relationship where broker provided valuation services)); Opp'n 34 (citing *United States v. Santoro*, 302 F.3d 76, 81 (2d Cir. 2002) (affirming conviction for fraud in promotion of public stock); *Abu Dhabi*, 2013 WL 837536, at *6 (denying summary judgment where defendant placement agent held itself out as having special knowledge and provided individualized memoranda; *Smith v. Ameriquest Mortg. Co.*, 60 A.D.3d 1037, 1040 (2d Dep't 2009) (denying summary judgment where defendant "personally solicited the plaintiff to refinance her mortgage with Ameriquest, and came to her home twice to provide her with information about the transaction in an effort to convince her that the transaction was in her best interests")).)  Plaintiffs' Section 10(b) case law is irrelevant.  (*See* Opp'n 34.)  The standard for a duty to disclose under Section 10(b) is unrelated to whether a special relationship exists under New York law for purposes of a negligent misrepresentation claim.

that any person [on the brokerage side] had knowledge concerning Enron's financial manipulations."); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. 1446, 2016 WL 4095973, at *28 (S.D. Tex. Aug. 2, 2016). Plaintiffs provide no reason why their discredited entanglement theory should be revived. Plaintiffs do not contend that analysts who wrote reports (whom they do not even name) had access to nonpublic information, let alone information regarding Enron's alleged fraud. (*See* Opp'n 30-34.) Plaintiffs admit that they have no basis to believe that Ms. Randell was acting anything other than honestly (*see* Opp'n 32; Stmt. ¶ 238), and Plaintiffs' own expert admitted that the Credit Suisse analysts "were issuing their recommendations without the knowledge that the financial statements were not correctly represented" (Ex. C308 (Purcell Dep.) 442:6-23, 443:18-444:7).[4] It cannot be the rule that a bank's research and sales divisions, acting honestly on public information, act negligently if they fail to seek out inside information "known" only to the investment bankers.

Finally, Plaintiffs' purported "dispute" over whether Credit Suisse transacted with Silvercreek as principal or as agent is immaterial. (*See* Opp'n 31; Stmt. ¶¶ 125, 126, 130.) Mere contractual privity is insufficient to establish a special relationship, and New York courts regularly dismiss claims of special relationship between direct buyers and sellers.[5] As Plaintiffs' own case states, "the duty attendant to that special relationship must spring from circumstances extraneous to, and not constituting elements of the contract". *JP Morgan Chase Bank v.*

---

[4] Although Plaintiffs "expressly disclaim[ed] 'any allegation of scienter or recklessness' in [their] theory of negligent misrepresentation", *Silvercreek*, 248 F. Supp. 3d at 453, they continue to rely on scienter-based arguments.

[5] *E.g.*, *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003) (special relationship requires "a closer degree of trust . . . than that of the ordinary buyer and seller"); *Barron Partners, LP v. LAB123, Inc.*, 593 F. Supp. 2d 667, 674 (S.D.N.Y. 2009) (no special relationship between "buyer and seller of corporate stock"); *Amusement*, 786 F. Supp. 2d at 779 ("The transaction between the defendants and Amusement is alleged to have been nothing more than an arm's length business arrangement between sophisticated and experienced parties" (citing *Aerolineas Galapagos, S.A. v. Sundowner Alexandria, LLC*, 74 A.D.3d 652, 653 (1st Dep't 2010) ("[T]he parties to the agreements dealt at arm's length, so the close relationship required to support the negligent misrepresentation claim was lacking." (citations omitted)); *Silvers v. State*, 68 A.D.3d 668, 669 (1st Dep't 2009) ("[T]he arm's-length business relationship . . . is not generally considered to be of the sort of a confidential or fiduciary nature that would support a cause of action for negligent misrepresentation" (citation omitted))).

*Winnick*, 350 F. Supp. 2d 393, 400-01, 404 (S.D.N.Y. 2004) (quotation marks omitted).  Here, the evidence shows nothing more than an ordinary arm's-length transaction.  (*See* Opp'n 31.)  Ms. Morwick herself viewed the agent/principal designation as immaterial, testifying that she never checks whether the broker was functioning as agent or principal.  (Stmt. ¶¶ 122-123.)  Plaintiffs' negligent misrepresentation claim must be dismissed.[6]

## III.   PLAINTIFFS CANNOT SHOW THAT SILVERCREEK REASONABLY RELIED ON STATEMENTS BY CREDIT SUISSE (COUNT FIVE).

Silvercreek's negligent misrepresentation claim must be dismissed for the separate but equally sufficient reason that Plaintiffs cannot show that they reasonably relied on statements made by Credit Suisse.  Plaintiffs do not even try to defend their unsubstantiated claims that Enron's offering documents can somehow be the basis for a negligent misrepresentation claim against Credit Suisse, nor do they defend that claim to the extent it was based on statements purportedly made by Credit Suisse analysts outside of analyst reports or on statements allegedly made by Ms. Randell regarding Silvercreek's purchase of the 7% Notes.  (*See* Opp'n 26-34.)  Plaintiffs' claim must also be dismissed as to what remains:  purported statements by Ms. Randell regarding the Zero Notes purchases (*see* Section A), and Credit Suisse analyst reports (*see* Section B).

---

[6] Plaintiffs also assert that they had a special relationship *with Enron* for purposes of their aiding and abetting negligent misrepresentation claim against Credit Suisse (Count Three).  (Opp'n 31 n.15.)  That is incorrect.  (*See* Br. 17 n.8.)  Rather than analyze the special relationship test under New York law, Plaintiffs refer to their opposition brief against Merrill Lynch, which cites a series of unrelated cases.  (*See* Opp'n 31 n.15 (citing ML Opp'n 33, which cites *Teamsters Local 282 Pension Tr. Fund v. Angelos*, 762 F.2d 522, 532 (7th Cir. 1985) (discussing federal securities laws and negligent misrepresentation under Illinois law); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, No. CIV.A. G-03-0481, 2010 WL 9077875, at *41 (S.D. Tex. Jan. 19, 2010) (discussing fraud under Texas law); *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 258 (2d Cir. 2016) (discussing federal securities laws)).)  Under New York law, the mere fact that Plaintiffs were investors or potential investors in Enron does not create a special relationship.  *See Norddeutsche Landesbank Girozentrale v. Tilton*, 149 A.D.3d 152, 162 (1st Dep't 2017) (no special relationship between purchaser of notes and collateral manager); *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 115 (2d Cir. 2012) (no special relationship between investor and rating agencies); *Steed Fin. LDC. v. Nomura Sec. Int'l, Inc.*, 148 F. App'x 66, 69 (2d Cir. 2005) (no special relationship between investor and offeror of mortgage backed securities).  Plaintiffs offer no evidence that they had any relationship with Enron beyond their investments.

**A.    Silvercreek Did Not Rely on Purported Statements by Ms. Randell About the Zero Notes.**

Plaintiffs have not raised a genuine issue of material fact as to their reliance on statements by Ms. Randell.  (*See* Opp'n 26-30.)  Plaintiffs do not dispute that, as a sophisticated investor, they face a higher burden to show reliance.  (*See* Br. 9; Opp'n 30.)  Plaintiffs have not met that burden here.

Plaintiffs do not dispute that Silvercreek was already aware of and tracking the Zero Notes as a potential investment as early as February 2001 (Stmt. ¶¶ 215, 218-221); that Ms. Morwick cannot identify a particular statement by Ms. Randell beyond a purported general positive recommendation (*id.* ¶¶ 233-236); that Ms. Morwick did not understand Ms. Randell to be giving an opinion on Enron's credit (*id.* ¶ 237); that Ms. Randell sent Silvercreek an Egan Jones Report lowering Enron's debt to below investment grade (*id.* ¶¶ 272-275); or that Ms. Morwick was a sophisticated money manager who specialized in convertible debt (*id.* ¶¶ 8-9, 74-76).  Those undisputed facts disprove Plaintiffs' allegations of reliance.  (Br. 9-11.)

Even if, as Plaintiffs now assert, Ms. Morwick spoke daily by phone with Ms. Randell (and numerous other brokers from other companies), Plaintiffs have not offered any evidence of what allegedly was said on these purported calls.  (Opp'n 27 & n.13.)  Plaintiffs offer only speculation, but "speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact." *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 761 (S.D.N.Y. 2013).  Nor can the conclusory statements of reliance by Ms. Morwick create a genuine issue of material fact.  (Opp'n 27 (citing Ex. P-CS 18 and Stmt. ¶ 681)); *see Hollander v. American Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999) ("A court may . . . strike portions of an affidavit that . . . make generalized and conclusory statements."), *abrogated on other grounds by Schnabel v. Abramson*, 232 F.3d 83 (2d Cir. 2000);

*Young-Wolff v. John Wiley & Sons, Inc.*, No. 12-CV-5230 (JPO), 2016 WL 154115, at *7

(S.D.N.Y. Jan. 12, 2016) ("When . . . legal conclusions appear in an affidavit, such extraneous

material should be disregarded by the court." (citation omitted)).

   Regardless, any purported reliance by Ms. Morwick would have been

unreasonable as a matter of law.  Generalized statements that a company is "good" or "strong"

and statements of "opinion[] as to value, or future expectations" cannot support a claim for

negligent misrepresentation.  *Sotheby's Fin. Servs., Inc. v. Baran*, 107 F. App'x 235, 238 (2d Cir.

2004); *Hubbard v. Gen. Motors Corp.,* No. 95 CIV. 4362, 1996 WL 274018, at *7 (S.D.N.Y.

May 22, 1996) (dismissing "Plaintiff's claims for fraud and negligent misrepresentation . . .

based on defendant's advertisement that Suburbans are 'like a rock', 'popular' and

'dependable'").[7]  Ms. Randell's purported statement was nothing more than that:  a

forward-looking recommendation, expressing her opinion.  (*See* Stmt. ¶¶ 233-37.)  It was not a

"misrepresent[ation of] existing facts".  (Opp'n 29.)  Ms. Morwick herself viewed this type of

statement merely as a "pitch".  (Stmt. ¶ 106.)  Plaintiffs cannot have reasonably relied upon it.

   Plaintiffs only halfheartedly dispute this, asserting that Ms. Randell's statements

"contributed" to the "mix of information that Silvercreek considered"—apparently referring to

the legal standard for materiality in federal securities law claims.  (*See* Opp'n 30.)  That standard

might have been relevant in *Newby*, but it is not here.  No reasonable sophisticated investor

specializing in the business of analyzing debt securities would have relied on a generalized say-

so of one of its many brokers.  *See Eternity*, 375 F.3d at 189; (Br. 11.)  Plaintiffs offer no law or

---

[7] The federal securities case law that Plaintiffs cite involved much more detailed statements than the vague and conclusory one at issue here.  (*See* Opp'n 29 (citing *Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000) (denying motion to dismiss Section 10(b) claim where defendant made specific statement about its inventory but was allegedly overstating its financial condition by failing to markdown obsolete inventory); *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 190 (S.D.N.Y. 2010) (denying motion to dismiss where defendant allegedly misrepresented specific credit characteristics, including its FICO scores and loan-to-value ratios).)

facts to dispute that.

      **B.**      **Silvercreek Did Not Rely on Credit Suisse Analyst Reports.**

      Plaintiffs do not dispute that, as a sophisticated investor, they face a higher burden to show reliance on Credit Suisse analyst reports.  (*See* Br. 9; Opp'n 30.)  Plaintiffs have not met that burden here.  (*See* Opp'n 28.)

      Plaintiffs spend less than one page of their brief arguing that Silvercreek relied on Credit Suisse analyst reports—and spend the bulk of that argument describing the content of analyst reports.  (*See* Opp'n 28.)  Plaintiffs' brief contains exactly two sentences regarding their purported reliance on Credit Suisse analyst reports, both of which make the conclusory statement that "Silvercreek relied upon Credit Suisse analyst reports".  (*Id.*)  This "argument" should be disregarded.  *See Molina*, 230 F. Supp. 3d at 287 n.39 (conclusory single-sentence argument was waived); *Dodakian*, 2015 WL 11144511, at *11.  In any event, the paragraphs that Plaintiffs cite at the end of those two sentences fail to create any issue of fact.

      *First*, Ms. Morwick's testimony that she purportedly read analyst reports in October *2000* is irrelevant.  Those analyst reports are not at issue with respect to Silvercreek's purchases in October *2001*.  (*See* Opp'n 28 (citing Stmt. ¶¶ 205, 641).)

      *Second*, the conclusory statements of reliance by Ms. Morwick cannot defeat summary judgment.  (*See* Opp'n 28 (citing Stmt. ¶¶ 641, 704, 706, PCS-18 ¶¶ 8, 12).)  "[F]ormal denials or general allegations which do not show the facts in detail and with precision are insufficient to prevent the award of summary judgment."  *Watson v. Arts & Entm't Television Network*, No. 04 CIV. 1932 (HBP), 2008 WL 793596, at *14 (S.D.N.Y. Mar. 26, 2008) (quotation mark omitted), *aff'd*, 352 F. App'x 475 (2d Cir. 2009); *see Lang v. Paine, Webber, Jackson & Curtis, Inc.*, 582 F. Supp. 1421, 1422 (S.D.N.Y. 1984) ("In making [the summary judgment] determination, the Court will consider affidavits, depositions, interrogatory answers,

and admissions, but will not give any effect to mere conclusory allegations or denials or to unsubstantiated assertions."); *Hollander*, 172 F.3d at 198; *Young-Wolff*, 2016 WL 154115, at *7.

*Finally*, Plaintiffs cannot establish reliance on Credit Suisse analyst reports by pointing to "evidence" that Ms. Morwick read analyst reports generally (without specifying which bank wrote them or when) (*see* Opp'n 28 (citing Stmt. ¶¶ 660, 704)), or by asserting that "all" analysts had buy recommendations on the securities (*see* Opp'n 28 (citing Stmt. ¶¶ 665, 704, 705)). Such "evidence" has nothing to do with *Credit Suisse* and is "not significantly probative" of the material facts in this case. *See Anderson*, 477 U.S. at 249. Rather, it is "conjecture" and "speculation", which "will not defeat summary judgment." *Kulak v. City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996). Plaintiffs' negligent misrepresentation claim must be dismissed.

## IV.   PLAINTIFFS CANNOT SHOW THAT SILVERCREEK REASONABLY RELIED ON ENRON'S FINANCIAL STATEMENTS (COUNTS ONE, TWO, THREE).

The evidence is clear that Silvercreek did not reasonably rely on Enron's financial statements. (*See* Opp'n 21-26.) Plaintiffs mix and match testimony on different issues and different time periods, hoping to throw up enough dust to make it appear that a genuine issue of material fact exists. The Court should see through this tactic and dismiss Plaintiffs' common law aiding and abetting and conspiracy claims.

Plaintiffs simply ignore the timeline. They make assertions as to what Silvercreek purportedly relied on, but they do not engage with the reality of what was done and when. They list a series of documents they claim to have reviewed in connection with the purchases in question (Opp'n 24), but the paragraphs that they cite do not support their list. Most of the cited paragraphs either do not discuss the listed items or involve work done in October *2000*. (*See* Stmt. ¶¶ 637-650, 652-658, 683.) The remainder simply reference "news" or vaguely describe

11

sources of information without identifying specific dates or content.  (*See* Stmt. ¶¶ 651, 659, 684.)[8]  The contrast between these vague assertions and the evidence regarding the in-depth analysis that Mr. Kittel performed on October 26, 2001 (and later)—*after* Silvercreek had made its purchases—speaks volumes.  (*See* Stmt. ¶¶ 277-283.)

As explained in Credit Suisse's Opening Brief, the evidence is clear that Silvercreek conducted no analysis of Enron's financial health prior to its purchases.  (Br. 21.) Plaintiffs do not dispute that Mr. Kittel did not recall doing any work whatsoever in connection with Silvercreek's purchases of the Zero Notes (Stmt. ¶ 231), and that he did not recall conducting any analysis with respect to the 7% Notes until October 26—*after* Silvercreek purchased them (Stmt. ¶¶ 262-264, 277-280).  Plaintiffs also do not genuinely dispute that on October 18, 2001, Ms. Morwick looked at the "return on investment" before purchasing the Zero Notes, and that on October 24, Ms. Morwick reviewed the terms in the prospectus before purchasing the 7% Notes.  (*Id.* ¶¶ 225-230, 259, 260.)  Such facts support, at most, that Plaintiffs reviewed the price and mechanics of the bonds—not that they relied on Enron's financials.

What remains is Ms. Morwick's and Mr. Kittel's conclusory testimony that they "read" certain of Enron's regulatory filings in October *2000*.  (Stmt. ¶¶ 202-205, 209-212).  The purchases at issue, however, were made one year later, in October *2001*.  Even if Ms. Morwick and Mr. Kittel read the filings they claim to have read in October 2000, reliance on such stale information would be patently unreasonable for a sophisticated investor like Silvercreek.  The financials they purportedly read were dated at least two years prior to Silvercreek's purchases, with some dating as far back as seven years.  (Stmt. ¶¶ 158-159.)

Plaintiffs' alleged reliance on stale financials is especially problematic given their

---

[8] Plaintiffs confirm that Ms. Morwick saw Enron's press release on October 16, 2001 announcing the $1 billion write-down (Stmt. ¶¶ 659, 684), before Silvercreek made any of its purchases.

contention that they purchased the bonds based solely on Enron's purported lack of "bankruptcy risk".  (Opp'n 1, 20-21.)  Reviewing old financials is not a reasonable way to assess the current risk that a company will go bankrupt—especially given the current news in the marketplace about Enron at the time Silvercreek made its purchases.  (Br. 20-22.)  This news included a $1 billion write-down, an SEC inquiry into Enron's accounting, the departure of the CFO, and negative actions taken by rating agencies.  (Stmt. ¶¶ 169-170, 173, 176, 181.)  From the date that Silvercreek first purchased the Zero Notes (October 18) to the date it first repurchased the 7% Notes (October 24), Enron's market capitalization dropped by nearly half, falling from $20 billion to around $12 billion—*below* the $13 billion of debt Plaintiffs claim that Enron disclosed.  (ML Opp'n 10 (cited at Opp'n 20); Ex. C325 (stock prices); Ex. P-CS 10, at 1 (outstanding shares).)  Enron was visibly and publicly crumbling, but Plaintiffs never bothered to look at any bankruptcy indicators.  (Stmt. ¶¶ 269, 271.)  Plaintiffs' own expert testified that Enron's reported financials from 1997 through 2001 would have yielded an Altman Z score placing Enron's credit was below investment grade.  (Ex. C309 (Saunders Dep.) 169:17-23.)

Plaintiffs cannot avoid these facts by pointing to Ms. Morwick's general assertions of reliance or by vaguely insisting that Silvercreek "looked at" Enron's financials. (*See* Opp'n 22 ("We looked at the fundamentals of this business"); *id.* ("It was our belief in the historical financial information").)  *See Watson*, 2008 WL 793596, at *14, *16 ("[V]ague references . . . are insufficient to withstand a motion for summary judgment.").  Nor do Plaintiffs' post hoc rationalizations of Silvercreek's conduct or their attempted re-characterizations of facts in the market change the analysis.  (*See* Opp'n 24-25.)  What matters is what Silvercreek can prove it relied on at the time of the purchases in October 2001.  Plaintiffs have not raised a genuine issue of material fact as to that, so their common law aiding and

abetting and conspiracy claims (Counts One, Two and Three) must be dismissed.

## V.   PLAINTIFFS CANNOT PROVE CREDIT SUISSE'S ACTUAL KNOWLEDGE (COUNTS ONE, TWO, THREE, NINE).

The record is clear that Credit Suisse did not have actual knowledge of any accounting fraud within Enron.  Unable to dispute those facts, Plaintiffs double down on inadmissible evidence and ask the Court to make inferences based on "mere suspicions" and "red flags".  *Terrydale Liquidating Tr. v. Barness*, 611 F. Supp. 1006, 1027 (S.D.N.Y. 1984); *de Abreu v. Bank of Am. Corp.*, 812 F. Supp. 2d 316, 325 (S.D.N.Y. 2011).  Such "evidence" cannot support a finding of actual knowledge and cannot defeat summary judgment.  *Id.*; L. Civ. R. 56.1(d).  Plaintiffs' secondary liability claims therefore all must be dismissed.[9]

### A.    The Material Facts Are Undisputed.

The essential facts and points of law presented in support of Credit Suisse's Opening Brief remain undisputed.  Plaintiffs must prove that Credit Suisse had actual knowledge of the alleged accounting fraud within Enron, by clear and convincing evidence.[10]  There is no dispute that Credit Suisse played no role in Enron's accounting or financial disclosures and certainly never advised Enron on those matters.  And there is no genuine dispute that Andrew Fastow concealed the alleged fraud from Credit Suisse and that Credit Suisse sustained large

---

[9] Plaintiffs contend that their claim for conspiracy to commit fraud (Count Two) is not duplicative of their aiding and abetting fraud claim (Count I) because the legal proof requirements for those two claims are not "entirely duplicative", referring to arguments made in their opposition brief against Merrill Lynch.  (Opp'n 20 n.7 (citing ML Opp'n 34-35).)  The law Plaintiffs cite is entirely off-base.  (*See id.* (citing *Neogenix Oncology, Inc. v. Gordon*, 133 F. Supp. 3d 539, 553 (E.D.N.Y. 2015) (not discussing conspiracy or aiding and abetting fraud); *Halberstam v. Welch*, 705 F.2d 472, 485 (D.C. Cir. 1983) (not discussing duplicative claims and not discussing New York law)).)  In any event, Plaintiffs' contention cannot be correct:  if the comparison were purely a legal one, such claims would never be dismissed as duplicative.  Plaintiffs provide no factual basis to distinguish their claims.  Plaintiffs' conspiracy claim therefore is duplicative and should be dismissed.  (*See* Br. 18 n.9.)

[10] Plaintiffs assert that the clear and convincing standard does not apply at summary judgment.  (Opp'n 9 n.5.)  As Plaintiffs' own cases make clear, that is not the law.  *See Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 888 F. Supp. 2d 431, 444 (S.D.N.Y. 2012) ("[T]he appropriate summary judgment question is whether the evidence on the record could support a reasonable jury finding that the plaintiff has shown each element of either a fraud or an aiding and abetting claim by clear and convincing evidence."); *cf. Villani v. Nat'l Marine Corp.*, 2008 WL 1995121, at \*5 (W.D.N.Y. May 6, 2008) (holding that there was sufficient evidence that a reasonable jury could find that the plaintiff met the clear and convincing standard).

losses on its Enron-related financings and investments.  (*See* Br. 24-25; Stmt. ¶¶ 302, 504-05.)

Notably, Plaintiffs now have withdrawn a number of their key allegations. Plaintiffs finally admit that the allegations taken from the *Financial Times* article are baseless. (Opp'n 18; *see* Br. 26.)  Plaintiffs likewise offer no evidence that the "statements" attributed to various unnamed "CSFB bankers" and "managers" ever were made.  (Br. 25.)  Plaintiffs also offer no evidence to support their allegations regarding various Enron-related entities and transactions, including LJM2, the Raptors transactions, NewPower, Portland General Electric, and the alleged "sale of international assets".  These allegations now fall out of the case.

With respect to the allegations that remain,[11] Plaintiffs do not even attempt to address the undisputed material facts.  Instead, Plaintiffs make vague reference to the "factual record" and point to the opinions of their "experts" regarding Credit Suisse's purported state of mind—opinions which plainly are inadmissible.  (Opp'n 17); *see In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004) ("Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony").  With respect to the share trust and FAS 125/140 transactions, Plaintiffs' brief is silent regarding the undisputed facts that:

- The share trust transactions were approved by Enron's Board, its outside counsel and its outside accountants.  (Br. 29.)

- Arthur Andersen and its witnesses have continued to stand by the accounting for the share trust transactions.  (*Id.*)

- The non-consolidation of the share trust structures—along with the "stock triggers"—was disclosed in SEC filings and to the rating agencies.  (*Id.* at 29-30.)

---

[11] Plaintiffs attempt to assert new allegations regarding a "minority interest" transaction called "Rawhide"—a transaction for which the TAC pleads no wrongdoing as to Credit Suisse.  (*See* Opp'n 5-6, 9; Stmt. ¶¶ 974-96; TAC ¶¶ 286, 571, 690; *see also* Stmt. ¶¶ 784-92 (asserting "facts" regarding non-pled "Cuiaba" transaction).)  That is improper.  Plaintiffs wrote the TAC with the full benefit of discovery.  Plaintiffs may not amend their pleadings by way of their summary judgment opposition papers.  *See Brandon v. City of New York*, 705 F. Supp. 2d 261, 278 (S.D.N.Y. 2010) ("It is black letter law that a party may not raise new claims for the first time in opposition to summary judgment."); *see also Billard v. Rockwell Int'l Corp.*, 683 F.2d 51, 57 (2d Cir. 1982) (leave to amend properly denied where complaint was filed with benefit of "full discovery").  The vast majority of Plaintiffs' "facts" regarding Rawhide were copied from lead plaintiff's *Newby* brief.  (*See* Ex. C302 (redline comparison) ¶¶ 974-96.)

- Plaintiffs' own experts do not dispute the accounting for the share trust transactions.  (*Id.* at 29.)

- The agreements governing the FAS 125/140 transactions provided that the equity was subject to a put option at fair market value, and thus was "at risk" for purposes of the accounting rules.  (*Id.* at 30-31.)

- Credit Suisse had no knowledge of any "side agreement" that would have rendered the equity in the FAS 125/140 transactions not "at risk".  (*Id.* at 31.)

- Plaintiffs' own experts do not dispute the accounting for the FAS 125/140 transactions.  (*Id.* at 30.)

Plaintiffs assert, without explanation, that the equity in the share trust and FAS 125/140 transactions was not "at risk", referring vaguely to "structural features" and "oral assurances". (Opp'n 6.)  But there is no dispute that the agreements governing those transactions provided that the equity *was* at risk, and the undisputed evidence shows that Credit Suisse had no knowledge of any facts to the contrary.[12]  Plaintiffs' unsubstantiated assertions simply are false.

Nor do Plaintiffs rebut the evidence showing that Credit Suisse took active steps to ensure that Enron *was not* misstating its accounting and that Enron's outside advisors had approved its transactions with LJM1 and in the oil swaps.  There is no dispute that:

- Credit Suisse employees spoke at length with Enron's management to ensure that Enron's Board, its outside accountants and its outside counsel had all given their informed approval of LJM1 and the Rhythms hedge—the details of which were disclosed in Enron's SEC filings.  (Br. 32-33.)

- Credit Suisse took steps to ensure that Enron had obtained the informed approval of Arthur Andersen, and that Enron had not relied on Credit Suisse, with respect to the accounting treatment of the oil swaps.  (*Id.* at 34-35.)

- Arthur Andersen and its witnesses have continued to stand by the accounting for the oil swaps.  (*Id.* at 34.)

- Plaintiffs' experts do not dispute the accounting for the oil swaps.  (*Id.* at 34.)

---

[12] *See* Resp. to C'stmt. ¶¶ 941-65 (Marlin), ¶¶ 966-73 (Firefly), ¶¶ 899-940 (Osprey), ¶¶ 853-62 (Iguana), ¶¶ 863-75 (Nile), ¶¶ 876-92 (Nikita).  Only in the Nikita transaction, which allegedly involved an oral side agreement between Enron and *Barclays*, was the equity arguably not "at risk".  (*See* Stmt. ¶¶ 488-92.)  Credit Suisse, however, was not aware of any such side agreement, and had no knowledge that the Nikita equity was not at risk.  (*Id.*)

These facts flatly contradict "actual knowledge" of fraud.[13]  Plaintiffs attempt to dodge the

undisputed facts by asserting that Arthur Andersen "did not know Credit Suisse believed the

prepay was a loan with no commodity risk".  (Opp'n 18.)  But even if that were true (and it is

not), the record is clear that such "facts" would not have changed Arthur Andersen's

conclusions.  Even after Enron's collapse, Arthur Andersen and its witnesses continued to stand

by the accounting.[14]  (Stmt. ¶ 451.)  Again, Plaintiffs' own experts do not dispute that

accounting.  (*Id.* ¶¶ 456-57.)  No reasonable jury could conclude from these undisputed facts that

Credit Suisse had actual knowledge that Enron was committing accounting fraud.

> ### B.      Unable To Dispute the Material Facts, Plaintiffs Double Down on Inadmissible Evidence.

Plaintiffs attempt to wish away the unrebutted testimony of the percipient

witnesses as "post hoc" and "self-serving".  (Opp'n 8.)  In its place, they seek to insert

"testimony" manufactured by class counsel and the inadmissible "opinions" of untimely

disclosed "experts".[15]  Plaintiffs' sleight of hand is contrary to law and should be rejected.[16]  L.

Civ. R. 56.1(d); *see Dowd v. I.R.S.*, 776 F.2d 1083, 1084 (2d Cir. 1985) (affirming summary

judgment where plaintiff "had deposed every employee with firsthand knowledge . . . and all

uniformly denied" the allegations); *Porter v. Reynolds Leasing, Inc.*, No. 92 CIV. 5095 (SS),

1994 WL 24769, at *4 (S.D.N.Y. Jan. 24, 1994) (Sotomayor, J.) ("[Plaintiff] can not conjure up

material fact on the bare hope that a jury may not find [the defense witnesses] credible.").

---

[13] Plaintiffs' arguments regarding "misgivings" miss the mark.  (Opp'n 11.)  The "misgivings" in *Abu Dhabi* were privately expressed.  888 F. Supp. 2d at 477 & n.306.  Here, Credit Suisse took its concerns directly to Enron and sought to ensure that Enron's transactions were vetted by Enron's outside auditors, its outside counsel and its Board.

[14] The same is true as to Marlin, Firefly, Osprey, Iguana and Nile.  (*See* Stmt. ¶¶ 335-36, 349, 372-73, 463, 478.)

[15] Plaintiffs also continue to rely on inadmissible congressional materials, which they attempt to justify by pointing to an out-of-circuit district court case.  (Opp'n 19.)  The law of this jurisdiction is clear.  (*See* Br. 27 n.13.)

[16] Plaintiffs cannot circumvent Local Rule 56.1 by arguing that it is "premature" to address the admissibility of their purported "evidence".  At summary judgment, a plaintiff must come forward with *admissible evidence* to support its claims.  L. Civ. R. 56.1(d).

### 1.    The Manufactured "Testimony" of Andrew Fastow Is Inadmissible.

Plaintiffs ignore the undisputed evidence that Mr. Fastow lacks relevant personal knowledge and instead attempt to frame the issue as one of "credibility".  (Opp'n 13.)  Although Mr. Fastow plainly does lack credibility, his "testimony" should be excluded on this motion because he lacks personal knowledge regarding Credit Suisse's involvement in the transactions that remain at issue in this case.  *See* Fed. R. Evid. 602.

The circumstances under which Mr. Fastow's "testimony" was obtained speak for themselves.  Mr. Fastow, while in prison, was fed pre-packaged information by *Newby* class counsel—including documents and testimony he had never seen before—and regurgitated it as "testimony".  (Stmt. ¶¶ 555-72.)  In exchange, Mr. Fastow obtained dismissal from the class action and assistance in his criminal sentencing.  (*Id.* ¶¶ 564-68.)  One month after Defendants filed their motions for summary judgment here, Mr. Fastow likewise obtained dismissal of all claims against him in this case and waived any jurisdictional objection to appear at trial as a witness for Silvercreek.  (ECF 157.)  Were Mr. Fastow permitted to testify here, there is no reason to believe that he would give anything other than the same manufactured "testimony" he gave in *Newby*.

Importantly for this motion, even with class counsel's packaging, Mr. Fastow admitted that he lacks personal knowledge regarding Credit Suisse's involvement in nearly all of the transactions that remain at issue in this case.  (*See* Stmt. ¶¶ 572-78 (share trust transactions), ¶¶ 579-80 (FAS 125/140 transactions), ¶ 581 (oil swaps).)  Plaintiffs nonetheless reference Mr. Fastow's purported "testimony" regarding Laurence Nath and continue to attribute Enron's share trust structures to Mr. Nath.[17]  (Opp'n 12.)  Mr. Fastow, however, admitted that he had no

---

[17] Plaintiffs also assert that Mr. Nath "was the architect" of the "LJM/Rhythms transactions".  (Opp'n 12.)  None of the "facts" or evidence that Plaintiffs cite supports that false assertion.  (*See id.*)  The LJM1/Rhythms transaction

personal knowledge of who designed those structures.  (Stmt. ¶¶ 573-74.)  Mr. Fastow also

admitted that Mr. Nath worked at Citibank—not DLJ or Credit Suisse—both at the time

Mr. Fastow initially communicated with Mr. Nath and at the time that Enron purportedly was

asked to enter "confidentiality agreements".  (Resp. to C'stmt. ¶¶ 731, 739, 899.)  Due to his

admitted lack of personal knowledge, there is no basis on which to admit Mr. Fastow's

"testimony" regarding any of the Credit Suisse transactions at issue.[18]  Fed. R. Evid. 602.

## 2.    The "Expert Opinions" of Neal Batson Are Inadmissible.

As explained in the Opening Brief, the reports of the Enron Bankruptcy

Examiner, Neal Batson, are inadmissible because he lacks personal knowledge.  (Br. 27.)

Conceding this, Silvercreek now purports to offer Mr. Batson's "opinions" as an expert.

(Opp'n 18-19.)  That is improper.  Mr. Batson was never disclosed as an expert in this case,[19]

and Mr. Batson's reports do not contain admissible "expert opinion".

This is not the first time that Plaintiffs have tried to insert a new expert into this

case, in violation of the discovery orders.  In September 2017, Plaintiffs attempted to designate

Robert Reilly and Craig Shenkman as experts—over 10 years after the deadline to disclose

experts had passed.  (ECF 105; *see* Exs. C305, C306 (setting December 15, 2006 deadline).)

Defendants opposed the designation as (among other things) untimely, and this Court denied

Plaintiffs' request.  (ECF 105, 109.)  Plaintiffs now ignore this Court's ruling and attempt, once

---

was executed in 1999—before the Credit Suisse/DLJ merger in 2000.  (Stmt. ¶¶ 23, 381.)  At that time, Mr. Nath worked at DLJ, which had no involvement with LJM1.  (*See id.* ¶¶ 376-79; Ex. C291 at 3.)

[18] Evidence regarding Mr. Fastow's communication with Robert Jeffe concerning Enron's on- and off-balance sheet debt cannot support an inference of actual knowledge by Credit Suisse.  (*See* Br. 36.)  That evidence instead shows that Credit Suisse did not understand Enron's full financial picture, sought further information from Enron, but was stonewalled by Enron, which is the opposite of "actual knowledge".  (*Id.*)

[19] In their opposition brief filed March 9, 2018, Plaintiffs asserted that they "disclosed" Mr. Batson as an expert by letter dated September 5, 2017.  (ECF 165 at 19 n.7.)  Plaintiffs subsequently admitted to defense counsel that this assertion was false and that such letter did not exist.  On April 11, 2018, Plaintiffs filed a corrected brief, removing all reference to the letter.  (ECF 207.)  Even if the fictional letter did exist, it still would be over 10 years too late.

again, to circumvent the federal rules and the MDL orders.  The Court should reject that

maneuver and disregard the "opinions" of Mr. Batson.  *See Vona v. Schindler Elevator Corp.*

*Mgmt.*, No. 05-CV-0131(SR), 2009 WL 2152309, at *8 (W.D.N.Y. July 14, 2009) ("[P]laintiffs'

counsel simply filed an expert affidavit in an effort to defeat a motion for summary judgment

nearly eight months after the deadline for expert disclosure had passed.  Such a flagrant disregard

for the deadlines set forth in this Court's Case Management Orders will not be tolerated.").

      Mr. Batson's "opinions" also must be disregarded because he is not an expert, and

his reports do not contain admissible expert opinion.  In his role as Bankruptcy Examiner,

Mr. Batson simply was a lawyer conducting a legal analysis:  he was appointed to investigate

whether the Enron Trustee might be able to allege legal claims against various entities—

essentially applying a motion to dismiss standard.[20]  Experts may not be used as a vehicle to

assert legal arguments that should be made by counsel.  *In re Rezulin*, 309 F. Supp. 2d at 551

(excluding expert who "does no more than counsel for plaintiff will do in argument, *i.e.*,

propound a particular interpretation of defendant's conduct" (quotation and alteration

omitted)).[21]  Nor may an expert offer opinions regarding a defendant's state of mind.  *Id.*

at 547.[22]  Yet Plaintiffs try to use Mr. Batson to do just that.  (*See* Opp'n 17 ("Batson . . .

concluded that Credit Suisse had '*detailed knowledge*' of Enron's operations . . . and *knew* that

Enron's balance sheet did not reflect billions of dollars in debt" (emphases added)).)  In any

---

[20] Stmt. ¶ 548; *see* Ex. C303 (limiting examiner's powers to those "under section 1106(b) of the Bankruptcy Code");
11 U.S.C. § 1106(a)(4)(A), (b) (requiring examiner to identify "any fact . . . pertaining . . . to a cause of action
available to the estate").

[21] Plaintiffs' own case agrees that an "expert" may not "invade the jury's function by telling the jury what result to
reach".  *See Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 545 F. Supp. 1314, 1372 (S.D.N.Y. 1982).

[22] Courts have prevented Silvercreek's actual experts from giving similar testimony.  *See Highland Capital Mgmt.,
L.P. v. Schneider*, 551 F. Supp. 2d 173, 187 (S.D.N.Y. 2008) (holding that William "Purcell cannot provide a factual
narrative or opine on a party's state of mind"); *In re Xerox Corp. Sec. Litig.*, 746 F. Supp. 2d 402, 415 (D. Conn.
2010) (stating that Anthony Saunders "would not be allowed to give testimony at trial as to what management knew
or should have known").

event, Mr. Batson's "opinions" were specifically protected by court order from any

cross-examination or other discovery. (Ex. C304.) They therefore would be inadmissible here

even if they were otherwise proper.[23] *See Paulus v. Holimont, Inc.*, 315 F.R.D. 13, 17-18

(W.D.N.Y. 2016). The Court must disregard them. L. Civ. R. 56.1(d).

### 3.    The "Expert Opinions" of Saul Solomon Are Inadmissible.

Plaintiffs also purport to designate Saul Solomon as an expert by way of their

summary judgment opposition. (Opp'n 5 n.3.) As with Mr. Batson (as well as Mr. Reilly and

Mr. Shenkman), Plaintiffs' purported "disclosure" of Mr. Solomon comes over 11 years too late

and must be rejected. *Vona*, 2009 WL 2152309, at *8.

Plaintiffs appear to rely on Mr. Solomon because they cut and paste his opinions

from the lead plaintiff's *Newby* brief. (*See supra* Part I.) Mr. Solomon was an accounting expert

for the plaintiff class in *Newby*. Silvercreek never disclosed Mr. Solomon as an expert in the

MDL, much less prior to the December 15, 2006 deadline.[24] Rather, Silvercreek's disclosed

accounting experts are Moshe Levitin and D. Paul Regan. (*See* Ex. C307 (Levitin Rpt.) at i n.1,

Exh. E; Ex. P-CS 13 (Regan Rpt.) at 1, Exh. A.) In their losing effort to avoid summary

judgment, the *Newby* lead plaintiff relied heavily on Mr. Solomon's opinions.[25] Having copied

large swaths of the *Newby* brief, Silvercreek now purports to do the same. That is improper but

understandable, given that Silvercreek's actual accounting experts—Mr. Levitin and

Mr. Regan—do not support their case. (*See* Stmt. ¶¶ 338-39, 350, 374-75, 406, 456-57, 464-65,

---

[23] To the extent Judge Harmon held Mr. Batson's reports admissible, she did so in error, for all of the reasons explained above. In addition, Judge Harmon found only that Mr. Batson was an "expert" in bankruptcy law, *see Am. Nat. Ins. Co. v. J.P. Morgan Chase & Co.*, 623 F Supp. 2d 798, 823 n.21 (S.D. Tex. 2009), which is both irrelevant and not a proper subject of expert testimony, *see In re Rezulin*, 309 F. Supp. at 551.

[24] It is not even clear that Silvercreek has retained Mr. Solomon as an expert now. (*See* Opp'n 5 n.3 (stating only that Silvercreek "cites to and relies on" Mr. Solomon's reports); Stmt. ¶¶ 1031-37 (identifying only D. Paul Regan, William Purcell and Moshe Levitin as having been "retained" by Silvercreek).)

[25] *See, e.g.*, Ex. C302 at ¶¶ 786-89, 846, 850, 864-65, 893, 896, 899, 903-06, 912-13, 917, 920, 927-28, 930, 939, 944, 946-49, 952, 957-58, 960, 962, 966, 969, 977, 980, 991.

479-80, 493.)  Mr. Solomon's untimely "disclosed" opinions are inadmissible and must be

disregarded.  L. Civ. R. 56.1(d).[26]

C.     **Plaintiffs Mischaracterize the Law and the Evidence.**

As demonstrated in Credit Suisse's Opening Brief, discovery has disproven

Plaintiffs' various theories of how Credit Suisse "knew" about the alleged accounting fraud

within Enron.  Plaintiffs' Opposition offers no response to the undisputed facts disproving that

Credit Suisse "knew" the extent of Enron's "on- and off-balance sheet debt", that Enron was a

"house of cards", that Osprey was a "parking lot" for Enron assets[27], that analysts were

"muzzled", or that a junior analyst "warn[ed]" about Enron.  (Opp'n 14-16; *see* Br. 14-16, 29

n.15, 36-37.)  Plaintiffs instead repeat the same discredited arguments from the pleadings stage

and cite cases decided on motions to dismiss, where mere allegations suffice.  (*See* Opp'n 9-10,

14-16.)[28]  At summary judgment, Plaintiffs must come forward with admissible *evidence*.

Plaintiffs have not.

Unable to respond to the evidence recited in Credit Suisse's Opening Brief,

Plaintiffs offer a scattershot list of selective quotations from other documents.  This "evidence",

however, is just more of the same:  assertions divorced from context and the witnesses'

unrebutted testimony.  Plaintiffs mainly quote Credit Suisse emails regarding LJM1 and the oil

swaps.  (Opp'n 6-7, 14-16.)  These emails merely confirm why Credit Suisse sought to ensure

---

[26] Plaintiffs are wrong that Credit Suisse would not be "prejudiced" if Mr. Solomon's opinions were admitted. (Opp'n 5 n.3.)  As with Mr. Reilly and Mr. Shenkman, Credit Suisse had no opportunity to cross-examine Mr. Solomon on issues specific to this case, and had no notice that it might be required to do so.  (*See* ECF 105 at 4.)

[27] Plaintiffs continue to misrepresent that email, going so far as to delete "CSFB" and erroneously insert "DLJ" when copying "facts" from the *Newby* brief, to try to mask the fact that the email was written by a CSFB person speculating about a *DLJ* deal as to which CSFB had no involvement and no knowledge.  (*See* Ex. C302 at ¶ 908.) Osprey I was a DLJ deal as to which the cited CSFB employees had no actual knowledge.  (Stmt. ¶¶ 353-55, 363.)

[28] Citing *Oster v. Kirschner*, 77 A.D.3d 51 (1st Dept. 2010); *Wight v. BankAmerica Corp.*, 219 F.3d 79 (2d Cir. 2000); *In re Refco Sec. Litig.*, 759 F. Supp. 2d 301 (S.D.N.Y. 2010); *Winnick*, 406 F. Supp. 2d 247; *Benson v. JPMorgan Chase Bank, N.A.*, No. C-09-5272 EMC, 2010 WL 1526394 (N.D. Cal. Apr. 15, 2010).

that those transactions were vetted by Enron's Board and outside accountants.  Plaintiffs offer

nothing to dispute that.  At most, the evidence supports that Credit Suisse knew that certain

transactions were not reported as debt on Enron's balance sheet—a fact which was disclosed in

Enron's SEC filings, to rating agencies and to Enron's outside advisors.[29]  That is insufficient.

*de Abreu*, 812 F. Supp. 2d at 325; *White v. Melton*, 757 F. Supp. 267, 272 (S.D.N.Y. 1991).

Nor do Plaintiffs' mischaracterizations of the law save their case.  Contrary to

Plaintiffs' assertions, evidence of mere "participati[on]" in a transaction—even one that raised

"red flags"—is not enough at summary judgment.  *de Abreu*, 812 F. Supp. 2d at 325; *see*

Opp'n 16-17.  Evidence of "conscious avoidance" or "motive and opportunity" also is

insufficient.  *Terrydale*, 611 F. Supp. at 1027 ("mere suspicion or even recklessness as to the

existence of a breach is insufficient"); *de Abreu*, 812 F. Supp. 2d at 324 n.4; *see* Opp'n 10-11.

Although the *Newby* lead plaintiff argued for a recklessness standard on its Section 10(b) claims,

Silvercreek for its common law claims must adduce evidence of actual knowledge.  Plaintiffs'

own cases recognize this.[30]  Yet Plaintiffs repeatedly refer to Enron's "complex" and

"convoluted" transactions, its view of Credit Suisse as a "Tier One Bank" and its payment of

fees to Credit Suisse, as though such assertions can substitute for evidence of actual knowledge.

(Opp'n 5, 11-12, 17.)  They cannot.  Plaintiffs' secondary liability claims all must be dismissed.

---

[29] Plaintiffs also quote, but never explain the relevance of, an offhand comment in an email about wanting to "take a shower".  (Opp'n 7, 15.)  That is because the email concerns SAILS—a transaction which had no effect on Enron's reported profits or operating results, and which Plaintiffs' own accounting experts do not challenge (*see* Stmt. ¶¶ 405-06; Resp. to C'stmt. ¶ 796)—and LJM2, which is not even discussed in the Opposition (*see supra* Part V.A).

[30] *See In re Allou Distributors, Inc.*, 446 B.R. 32, 51 (Bankr. E.D.N.Y. 2011) ("[E]vidence of recklessness, conscious avoidance, or willful blindness as to whether the primary actor is engaged in fraud is not sufficient to satisfy the knowledge element"); *Abu Dhabi*, 888 F. Supp. 2d at 477 ("[E]ven ignorance of 'red flags' or obvious warning signs of fraudulent activity cannot establish a [defendant]'s actual knowledge" (quotation marks omitted)); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 652 F. Supp. 2d 495, 502-03 (S.D.N.Y. 2009) ("[E]vidence that [defendant] merely ignored obvious warning signs of fraud will not suffice."). The Ohio court in *In re Nat'l Century Fin. Enterprises, Inc.*, 846 F. Supp. 2d 828 (S.D. Ohio 2012), also recognized that "[e]vidence of constructive knowledge is not enough; the plaintiff must demonstrate actual knowledge of the fraud." *Id.* at 892.

## VI.   PLAINTIFFS CANNOT SHOW THAT CREDIT SUISSE WAS A STATUTORY UNDERWRITER (COUNT SIX).

### A.   Credit Suisse Was Not "Essential" in the Distribution of the Zero Notes.

Plaintiffs contend that Credit Suisse was a statutory underwriter of the Zero Notes because "[i]t acquired the Zeros in the stage one private placement for the purpose of reselling them to the public in stage two."  (Opp'n 36.)  That is false.  Credit Suisse did not acquire the notes in the private placement; it acquired them on the secondary market.  (Stmt. ¶¶ 583, 586-87.)  Plaintiffs' "conduit" theory of underwriter liability thus falls apart.  (Opp'n 36.)

Far from functioning as a "conduit", Credit Suisse merely was one of many entities who purchased the Zero Notes on the secondary market following the initial private placement, and later resold in the public offering.  (Stmt. ¶ 602.)  That group included various institutional investors like the JMG and Triton entities, which moved to be appointed lead *plaintiffs* of a debt securities class in *Newby*.  (*See id.* ¶¶ 602, 604.)  It therefore is not surprising that Silvercreek's President and corporate representative did not consider Credit Suisse to be an underwriter of the Zero Notes.  (*Id.* ¶¶ 605-07.)[31]  No one would have.  The statute simply was not intended to capture secondary sellers like Credit Suisse, who were not "essential" to the distribution of securities to the public.  *Silvercreek*, 248 F. Supp. 3d at 450.

### B.   Plaintiffs' Attempts To Broaden the Scope of Underwriter Liability Should Be Rejected.

As this Court has observed, Credit Suisse can only be deemed an underwriter of the Zero Notes if it was "essential" to their distribution.  Plaintiffs concede that this means that Credit Suisse must have "engaged in steps necessary to the distribution of" the notes.  (Opp'n 36 (citing *S.E.C. v. Kern*, 425 F.3d 143, 152 (2d Cir. 2005).)  Yet Plaintiffs attempt to distort that clear principle by distinguishing between Credit Suisse and Credit Suisse's "role" in the offering.

---

[31] Plaintiffs attempt to rewrite Ms. Morwick's testimony, but her testimony speaks for itself.  (Stmt. ¶¶ 605-07.)

(Opp'n 38-39.)  That distinction does not make a difference.  Nothing that Credit Suisse did—by itself or by virtue of its "role" as a secondary seller—was "necessary to the distribution of" the Zero Notes.  The initial purchasers of the Zero Notes themselves were listed as sellers in the secondary offering.  (Stmt. ¶¶ 583, 602.)  Credit Suisse merely was one of dozens of minor holders from secondary market purchases who sold in parallel with the initial purchasers.  (*Id.*)  Credit Suisse thus did not serve as an "intermediary" between the initial purchasers and the public.

Nor is Credit Suisse advocating for a "de minimis" exception.  The question is whether entities who did not participate in initial private placements and bought on the secondary market—like Credit Suisse, JMG and Triton—become underwriters simply because they later act as "selling securityholders".  The cases that Plaintiffs cite do not support such a broad rule.[32]  Instead, as Plaintiffs note, the securities laws "should be construed not technically and restrictively, but flexibly to effectuate their remedial purposes."  *Herman & MacLean v. Huddleston*, 459 U.S. 375, 386-87 (1983) (quotation marks and alterations omitted).  Section 11 should not be construed to assign underwriter liability to selling securityholders who were not essential to the distribution of securities to the public.  *Silvercreek*, 248 F. Supp. 3d at 450.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Credit Suisse's Opening Brief, the Court should grant Credit Suisse's motion for summary judgment in its entirety.

---

[32] Plaintiffs rely primarily on *Eichenholtz v. Brennan*, 52 F.3d 478 (3d Cir. 1995), which concerned indemnification, not underwriter status.  *Id.* at 483-84.  Plaintiffs also cite *Byrnes v. Faulkner, Dawkins & Sullivan*, 550 F.2d 1303 (2d Cir. 1977), which interpreted Section 5 and has not been extended to Section 11.  *Id.* at 1306; *see McFarland v. Memorex Corp.*, 493 F. Supp. 631, 646-47 (N.D. Cal. 1980).  Plaintiffs' other cases concern a "conduit" for "distribut[ing]" securities from the issuer to the public (Opp'n 39), which as discussed above Credit Suisse was not.

New York, New York

May 10, 2018

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP,

by

_____/s/ Richard W. Clary_____
Richard W. Clary
Member of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
rclary@cravath.com

*Attorney for Defendants Credit Suisse First Boston (USA), Inc. (n/k/a Credit Suisse (USA), Inc.), Credit Suisse First Boston LLC (n/k/a Credit Suisse Securities (USA) LLC) and Pershing LLC (f/k/a Donaldson, Lufkin & Jenrette Securities Corp.)*